IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |  |
|---|---|---|
| **JOSHUA CACHO**, a Florida resident, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | 6:23-cv-737-PGB-EJK |
| v. | § | |
| | § | |
| **USHEALTH ADVISORS, LLC,** a Texas | § | |
| Limited Liability Company, and **JENNIFER** | § | |
| **MASER**, a Florida resident, | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.      The Plaintiff is JOSHUA CACHO ("Plaintiff") a natural person, resident of the Middle

District of Florida, and was present in Florida for all text messages, in this case in Seminole

County, Florida.

2.      Defendant USHEALTH ADVISORS ("USHEALTH") is a Limited Liability Company

organized and existing under the laws of Texas with its principal address at 300 Burnett Street

Suite 200 Fort Worth, Texas 76102, United States, and can be served via registered agent, C T

Corporation System at 1200 South Pine Island Road Plantation, Fl 33324, United States.

3.      Defendant JENNIFER MASER ("JENNIFER") a natural person, resident of Florida, and

agent of USHEALTH and can be served at 500 East Broward Blvd Suite 900 Fort Lauderdale,

Florida 33394, United States.

### JURISDICTION AND VENUE

1

4.    Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

### PERSONAL JURISDICTION

5.    This Court has general personal jurisdiction over the defendants because they have

repeatedly placed text messages to Florida residents, and derive revenue from Florida residents,

and they sell goods and services to Florida residents, including the Plaintiff.

6.    This Court has supplemental subject matter jurisdiction over Plaintiff's claims arising

under Florida Statutes § 501.059 and § 501.601 because the claims arise from the same nucleus

of operative fact, i.e., Defendant USHEALTH's telemarketing robotexts to Plaintiff, and adds

little complexity to the case.

### VENUE

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a

substantial part of the events giving rise to the claims—the text messages and sale of goods and

services directed at Florida residents, including the Plaintiff—occurred in this District and

because the Plaintiff resides in this District.

8.    This Court has venue over Defendant USHEALTH because the text messages at issue

were sent by or on behalf of the above-named Defendant to Plaintiff, a Florida resident.

9.    This Court has venue over Defendant JENNIFER because she is employed through

Defendant US HEALTH, and she is also a Florida resident.

### THE TELEPHONE CONSUMER PROTECTION ACT

### OF 1991, 47 U.S.C. § 227

2

10.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated there under. 47 U.S.C. § 227(c)(5).

---

[1]*See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

16.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

17.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

19.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter*

*of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21.    Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

22.    The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential umber generator; and (B) to dial such numbers. *Id.* at § 227(a)(1)

23.    As to what type of dialing equipment constitutes an ATDS, the TCPA vests to the Federal Communication Commission ("FCC") the responsibility to promulgate regulations implementing the TCPA's requirements. *Id.* at § 227(a)(1).

24.    Over the last nineteen years, the FCC has repeatedly recognized that a predictive dialer is an ATDS that is subject to regulation by the TCPA. In its 2003 Order, the FCC also defined a "predictive dialer" holding:

[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call.[1]

25.    In 2008, the FCC affirmed "that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[2]

26.    A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist.

LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

actors can be individually liable for violating the TCPA where they had direct, personal

participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D.

Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability,

the TCPA would lose much of its force.").

### FLORIDA STATUTES § 501.059

**27.**      Florida Statutes § 501.059 makes it a violation to "make or knowingly allow a telephone

sales call to be made if such call involves an automated system for the selection or dialing of

telephone numbers or the playing of a recorded message when a connection to a number called

without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

**28.**      A "telephone sales call" is defined as a 'telephone call, text message, voicemail

transmission to a consumer for the purpose of soliciting a sale of any consumer goods or

services, soliciting an extension of credit for consumer goods or services, or obtaining

information that will or may be used for the direct solicitation of a sale of consumer goods or

services or an extension of credit for such purposes." Fla. Stat. § 501.059(j).

**29.**      "Prior express written consent" means an agreement in writing that: Fla. Stat. §

501.0059(g).

> 1.   Bears the signature of the called party;
>
> 2.   Clearly authorizes the person making or allowing the placement of a telephonic sales
>
>      calls by telephone call, text message, or voicemail transmission to deliver or cause to
>
>      be delivered to the called party a telephone sales call using an automated system for

the selection or dialing of telephone numbers, the playing of a recorded message

when a connection is completed to a number called, or the transmission of a

prerecorded voicemail;

3. Includes the telephone number to which the signatory authorizes a telephonic sales

call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that;

   a. By executing the agreement, the called party authorizes the person making or

   allowing the placement of a telephonic sales call to deliver or cause to be

   delivered a telephonic sales call to the called party using an automated system

   for the selection or dialing of telephone numbers or playing of a recorded

   message when a connection is completed to a number called; and

   b. He or she is not required to directly or indirectly sign the written agreement or

   to agree to enter into such agreement as a condition of purchasing any

   property, goods, or services.

**30.**    A person aggrieved by a violation of this section may bring an action to recover actual

damages or $500, whichever is greater.  Fla. Stat. § 501.059(10)(a)(2).

**31.**    If the court finds that the defendant willfully or knowingly violated this section or rules

adopted pursuant to this section, the court may, in its discretion, increase the amount of the

award to an amount equal to not more than three times the amount available under paragraph (a).

Fla. Stat. § 501.059(10)(a)(2)(b).

## FLORIDA TELEMARKETING ACT

**32.**    A commercial telephone seller or salesperson making a commercial telephone solicitation

7

call may not use technology that deliberately displays a different caller identification number than the number the call is originating from to conceal the true identity of the caller. Fla. Stat. § 501.616(7)(b).

33.     A commercial telephone seller or salesperson may not transmit more than three commercial telephone solicitation phone calls from any number to a person over a 24-hour period on the same subject matter or issue, regardless of the phone number used to make the call. Fla. Stat. § 501.616(6)(b).

34.     In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or punitive damages, including costs, court costs, and attorney's fees. No provision of this part shall be construed to limit any right or remedy provided under law. Fla. Stat. § 501.625.

### FACTUAL ALLEGATIONS

35.     Plaintiff's personal cell phone (407) 780-9810 has been registered on the National Do-Not-Call Registry for more than thirty-one (31) days prior to the first text message received from Defendant USHEALTH.

36.     Plaintiff personally registered the cell phone at issue in this case on the National-Do-Not-Call Registry.

37.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

38.     Defendant USHEALTH operates as an insurance broker for multiple insurance companies.

8

**39.**    Defendant JENNIFER is a licensed insurance agent and telemarketer of Defendant USHEALTH.

**40.**    Defendant JENNIFER benefits from the illegal telemarketing of USHEALTH.

**41.**    As part of its marketing Defendant USHEALTH hires and authorizes telemarketers to make unauthorized text messages to consumers *en masse*.

**42.**    Defendant USHEALTH entered into contracts authorizing telemarketers to solicit on their behalf.

**43.**    Defendant USHEALTH pays the telemarketers out of bank accounts they control.

**44.**    Defendant USHEALTH approves of the messages their telemarketers use when sending texts messages.

**45.**    **Texts #1-3** *See Table A,* Plaintiff received a series text messages soliciting health coverage.

**46.**    Plaintiff received at least three (3) unauthorized text messages to his personal cell phone from telemarketers messaging on behalf of Defendant USHEALTH within a one week period ("the texts"). The texts Plaintiff received from or on behalf of Defendant USHEALTH solicited Plaintiff for health insurance plans.

**47.**    With information and belief, Plaintiff has received more texts from, or on behalf of Defendant USHEALTH within the past two years.  These texts are currently unknown to Plaintiff but will be revealed during discovery

**48.**    On February 28, 2023 Plaintiff attempted to call the number that had been messaging him for multiple days for the sole purpose of identifying the party responsible for the annoyance.

**49.**    Plaintiff learned the number was not valid, meaning the Defendant's telemarketer was messaging him from an Automated Telephone Dialing System (ATDS) which is equipment

which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential umber generator; and (B) to dial such numbers.

**50.**     After messaging the number he was then called by Defendant USHEALTH's telemarketer "Robert" from a different number then the number displayed through text messages.

**51.**     Plaintiff was asked a few questions and then transferred to Defendant Jennifer whom is a licensed insured agent through Defendant USHEALTH.

**52.**     Jennifer informed Plaintiff her company was called USHEALTH ADVISORS and provided the website ushealthgroup.com

**53.**     Plaintiff received an email from Defendant JENNIFER detailing her personal credentials and the insurance company in which she was trying to sell a policy to Plaintiff. *See Exhibit A.*

**54.**     Table A below displays the calls Plaintiff received from Defendant USHEALTH.

TABLE A

| No. | Date | Time | CallerID | Notes |
|-----|------|------|----------|-------|
| 1 | Feb 25, 2023 | 10:20 AM | (305) 901-7618 | Automated Text message from USHEALTH |
| 2 | Feb 26, 2023 | 4:17 PM | (305) 901-7618 | Automated Text message from USHEALTH |
| 3 | Feb 28, 2023 | 10:25 AM | (305) 901-7618 | Automated Text message from USHEALTH |

**55.**     Plaintiff sent an internal do-not-call policy request to Defendant USHEALTH to emails info@ushadvisors.com, and info@ushealthgroup.com on March 3, 2023. Which are emails listed on their websites.

**56.**     Despite these emails, Defendant USHEALTH failed and/or refused to send Plaintiff a do-not-call policy.

**57.**     Upon information and belief, Defendant USHEALTH did not have a written do-not-call policy while it was sending Plaintiff the texts.

**58.**     Upon information and belief, Defendant USHEALTH did not train their agents who

engaged in telemarketing on the existence and use of any do-not-call list.

59.    Such conduct violates the TCPA and its implementing regulations, 47 CFR §

64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

60.    Plaintiff has limited data storage capacity on his cellular telephone. Incoming texts

consumed part of this capacity.

61.    No emergency necessitated these texts.


## VICARIOUS LIABILITY OF DEFENDANT USHEALTH

62.    Defendant USHEALTH is vicariously liable for the telemarketing text messages that

generated the leads on their behalf.

63.    The FCC is tasked with promulgating rules and orders related to the enforcement of the

TCPA. 47 U.S.C. § 227(b)(2).

64.    The FCC has explained that it's "rules generally establish that the party on whose behalf

a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13

(1995).

65.    The FCC reiterated that a company on whose behalf a telephone call is made bears the

responsibility for any violations. *In re Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf

of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a

third party on another entity's behalf under 47 U.S.C. § 227(b)).

66.    The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post

may not avoid liability by outsourcing telemarketing:

11

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

67.    More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

68.    The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at6587 ¶ 36 & n.107.

69.    To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

70.    Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

**71.**    Defendant USHEALTH is legally responsible for ensuring that the affiliates that make telemarketing text messages or calls on its behalf comply with the TCPA when so doing.

**72.**    Defendant USHEALTH knowingly and actively attempted to accept business that originated through illegal telemarketing.

**73.**    Defendant USHEALTH knew (or reasonably should have known) that their telemarketers were violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketers to cease that conduct.

**74.**    By hiring a company to make calls on their behalf, Defendant USHEALTH "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

**75.**    Moreover, Defendant USHEALTH maintained interim control over the actions of their telemarketers.

**76.**    For example, Defendant USHEALTH had absolute control over whether, and under what circumstances, they would accept a customer from their telemarketers.

**77.**    Furthermore, Defendant USHEALTH had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant USHEALTH and the ability to require them to respect the National Do Not Call Registry.

**78.**    Defendant USHEALTH also gave interim instructions to their telemarketers by providing lead-qualifying instructions and lead volume limits.

**79.**    Defendant USHEALTH donned their telemarketers with apparent authority to make the texts at issue. Thus, the telemarketers pitched "health insurance " policies in the abstract.

80.    Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

81.    "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

82.    A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

83.    Defendant USHEALTH's telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendant USHEALTH. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

84.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

85.    Defendant USHEALTH is the liable party as the direct beneficiary of the illegal telemarketing as they stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff for "health insurance" policies on their behalf.

14

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE TEXTS

**86.** Defendant USHEALTH's texts harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

**87.** Defendant USHEALTH's texts harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

**88.** Defendant USHEALTH's texts harmed Plaintiff by intruding upon Plaintiff's seclusion.

**89.** Plaintiff has been harmed, injured, and damaged by the texts including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of Plaintiff's cell phone.

## PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

**90.** The texts were to Plaintiff's cellular phone (407) 780-9810 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## CAUSES OF ACTION:

## COUNT ONE:

## Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

15

91.     Plaintiff re-alleges and re-adopts paragraphs 1 through 90 of the Complaint as if fully set forth herein.

92.     Defendant USHEALTH and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least three (3) times by placing non-emergency telemarketing automated texts to Plaintiff's cellular telephone number using an automatic telephone dialing system without prior express written consent.

93.     Plaintiff was statutorily damaged at least three (3) times under 47 U.S.C. § 227(b)(3)(B) by Defendant by the texts described above, in the amount of $500.00 per call.

94.     Plaintiff was further statutorily damaged because Defendant USHEALTH willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

95.     Plaintiff is also entitled to and does seek an injunction prohibiting Defendant USHEALTH and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing automated text messages to any cellular telephone number using an ATDS without prior express written consent.

## COUNT TWO:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

96.     Plaintiff re-alleges and re-adopts paragraphs 1 through 90 of the Complaint as if fully set forth herein.

16

97.    Defendant USHEALTH called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the texts for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

98.    Plaintiff was statutorily damaged at least three (3) times under 47 U.S.C. § 227(c)(3)(F) by Defendant USHEALTH by the telemarketing texts described above, in the amount of $500.00 per text.

99.    Plaintiff was further statutorily damaged because Defendant USHEALTH willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

100.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).


### COUNT THREE:

### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

### (Against all Defendants)

101.    Plaintiff re-alleges and re-adopts paragraphs 1 through 90 of the Complaint as if fully set forth herein.

102.    The foregoing acts and omissions of Defendant USHEALTH and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

103.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

104.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR

### (Violations of Florida Statutes § 501.059)

105.    Plaintiff re-alleges and re-adopts paragraphs 1 through 90 of the Complaint as if fully set forth herein.

106.    Defendant USHEALTH and/or their affiliates and authorized representatives texted Plaintiff using automated means without Plaintiff's express written consent. Fla. Stat. § 501.059(8)(a).

107.    Defendant USHEALTH did not have Plaintiff's prior express written consent when making the telephonic solicitation texts. Fla. Stat. § 501.059(1)(g).

---

[2]*Seeid.* at 425 (codifying a June 26, 2003 FCC order).
[3]*Seeid.* at 425 (codifying a June 26, 2003 FCC order).
[4]*Seeid.* at 425 (codifying a June 26, 2003 FCC order

108.    Plaintiff is entitled to an award of at least $500 in damages for each such violation of Fla. Stat. § 501.059(8)a) pursuant to Fla. Stat. § 501.059(10)(a)(2).

109.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation.  Fla. Stat. § 501.059(10)(a)(b).

**COUNT FIVE**

**(Violations of Florida TELEMARKETING ACT)**

110.    Plaintiff re-alleges and re-adopts paragraphs 1 through 90 of this Complaint as if fully set forth herein.

111.    Defendant USHEALTH and/or their affiliates and authorized representatives called Plaintiff using automated dialing equipment that intentionally transmitted false caller identification information.  Fla. Stat. 501.616(7)(b).

112.    In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or penalties and/or punitive damages, including costs, court costs, attorney's fees. No provision of this part shall be construed to limit any right or remedy provided under law.  Fla. Stat. 501.625.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against Defendants as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violates the TCPA and Fla. Stat. 501.059 and Florida Telemarketing Act;

C.      An award of $1500 per call in statutory damages arising from the TCPA 47 U.S.C §227(b) intentional violations jointly and severally against the corporations for 3 texts.

D.      An award of $1500 per call in statutory damages arising from the TCPA 47 U.S.C §227(c) intentional violations jointly and severally against the corporations for 3 texts.

E.      An award of $1500 per call in statutory damages arising from the TCPA 47 U.S.C § 227(c)(5) intentional violations jointly and severally against the corporations for 3 texts.

F.      An award of $1,500 per call in statutory damages arising from 501.059(8)(a) intentional violations, pursuant to Fla. Stat. § 501.059(10)(a)(b) for 3 texts.

G.      An award of $25,000 in punitive damages arising from intentional violations of Fla. Stat. 501.616(7)(b) for all texts made.

H.      An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity.

I.      Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

April 21, 2023,                          Respectfully submitted,

*Josh Cacho*

Joshua Cacho
Plaintiff, Pro Se
164 Estella Road
Lake Mary, Florida 32746

20