**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| **JOSHUA CACHO,** a Florida resident,<br><br>**Plaintiff,**<br><br>v.<br><br>**USHEALTH ADVISORS, LLC,** a Texas Limited Liability Company, and **USHEALTH GROUP, INC.,** a Delaware corporation<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **6:23-CV-00737-CEM-EJK** |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

COMES NOW Plaintiff Joshua Cacho with this Second Amended Complaint and will allege and show as follows:

**PARTIES**

**1.** The Plaintiff is JOSHUA CACHO ("Plaintiff") a natural person, resident of the Middle District of Florida, and was present in Florida for all text messages, in this case in Seminole County, Florida.

**2.** Defendant USHEALTH ADVISORS, LLC ("ADVISORS") is a Limited Liability Company organized and existing under the laws of Texas with its principal address at 300 Burnett Street Suite 200 Fort Worth, Texas 76102, United States, and can be served via registered agent, C T Corporation System at 1200 South Pine Island Road Plantation, Fl 33324, United States.

**3.** Defendant USHEALTH GROUP, INC. ("GROUP") a corporation organized and existing under the laws of Delaware and can be served via registered agent The Corporation Trust Company, at Corporation Trust Center 1209 Orange St Wilmington, Delaware 19801, United States.

**4.** Defendants ADVISORS and GROUP will hereinafter be collectively known as ("Defendants").

**JURISDICTION AND VENUE**

**5.** Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

**PERSONAL JURISDICTION**

**6.** This Court has general personal jurisdiction over the Defendants because they have repeatedly placed text messages to Florida residents, and derive revenue from Florida residents, and they sell goods and services to Florida residents, including the Plaintiff.

**7.** This Court has supplemental subject matter jurisdiction over Plaintiff's claims arising under Florida Statutes § 501.059 and § 501.601 because the claims arise from the same nucleus of operative fact, i.e., Defendants ADVISORS and GROUP's telemarketing texts to Plaintiff, and adds little complexity to the case.

**VENUE**

**8.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the text messages and sale of goods and services directed at Florida residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.

**9.** This Court has venue over Defendants ADVISORS and GROUP because the text messages at issue were sent by or on behalf of the above-named Defendants to Plaintiff, a Florida resident.

**THE TELEPHONE CONSUMER PROTECTION ACT**

**OF 1991, 47 U.S.C. § 227**

**10.** In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

**11.** The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

**12.** The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

**13.** The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

**14.** Separately, the TCPA bans telemarketing calls without a do-not-call policy available

upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

**15.** The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated there under. 47 U.S.C. § 227(c)(5).

**16.** According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

**17.** The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

**18.** The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

**19.** *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears

---

[1]*See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

**20.** The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

**21.** Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

**22.** The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential umber generator; and (B) to dial such numbers. *Id*. at § 227(a)(1)

**23.** As to what type of dialing equipment constitutes an ATDS, the TCPA vests to the Federal Communication Commission ("FCC") the responsibility to promulgate regulations implementing the TCPA's requirements. *Id.* at § 227(a)(1).

**24.** In 2008, the FCC affirmed "that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[2]

**25.** A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability,

the TCPA would lose much of its force.”).

## FLORIDA STATUTES § 501.059

**26.** Florida Statutes § 501.059 makes it a violation to “make or knowingly allow a telephone sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection to a number called without the prior express written consent of the called party.” Fla. Stat. § 501.059(8)(a).

**27.** A “telephone sales call” is defined as a ‘telephone call, text message, voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes.” Fla. Stat. § 501.059(j).

**28.** “Prior express written consent” means an agreement in writing that: Fla. Stat. § 501.0059(g).

1. Bears the signature of the called party;
2. Clearly authorizes the person making or allowing the placement of a telephonic sales calls by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephone sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;
3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and
4. Includes a clear and conspicuous disclosure informing the called party that;

a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or playing of a recorded message when a connection is completed to a number called; and

b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such agreement as a condition of purchasing any property, goods, or services.

**29.** A person aggrieved by a violation of this section may bring an action to recover actual damages or $500, whichever is greater. Fla. Stat. § 501.059(10)(a)(2).

**30.** If the court finds that the Defendants willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a). Fla. Stat. § 501.059(10)(a)(2)(b).

## FLORIDA TELEMARKETING ACT

**31.** A commercial telephone seller or salesperson making a commercial telephone solicitation call may not use technology that deliberately displays a different caller identification number than the number the call is originating from to conceal the true identity of the caller. Fla. Stat. § 501.616(7)(b).

**32.** A commercial telephone seller or salesperson may not transmit more than three commercial telephone solicitation phone calls from any number to a person over a 24-hour period on the same subject matter or issue, regardless of the phone number used to make the call. Fla. Stat. § 501.616(6)(b).

**33.** In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or punitive damages, including costs, court costs, and attorney's fees. No provision of this part shall be construed to limit any right or remedy provided under law. Fla. Stat. § 501.625.

**FACTUAL ALLEGATIONS**

**34.** Plaintiff's personal cell phone (407) 780-9810 has been registered on the National Do-Not-Call Registry for more than thirty-one (31) days prior to the first text message received from Defendants ADVISORS and GROUP.

**35.** Plaintiff personally registered the cell phone at issue in this case on the National-Do-Not-Call Registry on May 21, 2021.

**36.** Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

**37.** Defendants ADVISORS and GROUP operate as insurance brokers for multiple insurance companies.

**38.** Defendants ADVISORS and GROUP's authorized agents sent numerous unsolicited and unwanted text messages to Plaintiff marketing their health insurance plans.

**39.** Defendants ADVISORS and GROUP are serial TCPA violators and have been sued multiple times prior to the lawsuit, examples are *Reynolds v. USHealth Advisors, LLC et al No. 0:17cv61125-MGC (S.D.FL., Jun. 03, 2017), Jacobi v. USHealth Group, Inc. 1:19-cv-20653-JLK (S.D.FL., Feb. 20, 2019), Jones v. USHealth Group, Inc. et al No. 2:19-cv-0534-HLT-JPO (D.KS., Sept. 04, 2019), Odom v. USHEALTH Advisors, LLC et al No. 4:19-cv-00631-P*

*(N.D.TX., Aug. 09, 2019), Reginald McLucas v. USHealth Group, Inc. et al No. 5:21-cv-02091-JWH-SP (C.D.CA., Dec. 15, 2021), Tierfenthaler v. UShealth Advisors, LLC No. 4:2022cv00780 (N.D.TX. Sept. 01, 2022), 4:2023cv00124 (E.D.MO., Feb. 02, 2023)* and continue to violate the law because doing so benefits both Defendants ADVISORS and GROUP.

**40.** Both Defendants are aware of the requirements of the TCPA and FTSA and the National Do Not Call registry, however, continue to willfully ignore these requirements.

**41.** Defendants sent Plaintiff a series of unauthorized text messages to his personal cell phone from June 24, 2022, to February 28, 2023, soliciting health insurance coverage ("the text messages"). *See Table A*.

**42.** **Texts #1-7,** *See Table A*, from June 24, 2022 – July 8, 2022, Defendants sent Plaintiff a series of unauthorized text messages from 954-716-8575 to his personal cell phone soliciting health insurance coverage.

**43.** On July 25, 2022, at 6:57 PM, for the sole purpose of identifying the company responsible for the text messages, Plaintiff replied to one of the text messages from Defendants asking their representative "Brandon" to email Plaintiff his company website.

**44.** Shortly after "Brandon" responded to Plaintiff with a link to Brandon Martinez's agent website on Defendant Group's website at https://www.ushagent.com/BrandonMartinez. *See Exhibit A.*

**45.** **Texts # 8-15**, See Table A, From August 02, 2023, to Feb. 28, 2023, Defendants sent eight (8) additional unauthorized text messages, soliciting new health care coverage to Plaintiff. *See Table A.*

**46.** On February 28, 2023, Plaintiff attempted to call the number that had been messaging him most recently for multiple days for the sole purpose of identifying additional party(s)

responsible for the annoyance.

**47.** Plaintiff then attempted to message the number and still received no response, yet he received a phone call immediately after by Defendants' telemarketer "Robert".

**48.** "Robert" informed Plaintiff he received the message but was not able to call from the system.

**49.** Defendants' agent "Robert" then gathered some information from Plaintiff such as name, address, health conditions, and so forth.

**50.** Robert transferred Plaintiff to "Jennifer" after completing the questionnaire.

**51.** Jennifer informed Plaintiff her company was called USHealth Advisors and provided the website to plaintiff ushealthgroup.com.

**52.** Plaintiff received an email from Jennifer from email address JENNIFER.MASER@ushadvisors.com, along with her license information, was the name of the company, and attached was a copy of the policy details listing both Defendants ADVISORS and GROUP, as the responsible parties for the additional messages. *See Exhibit B.*

**53.** Jennifer provided Plaintiff the phone number 561-827-0261. Plaintiff searched this phone number in Google. Google revealed this phone number belongs to Jennifer Maser and is listed on Defendant Group's website at https://ushagent.com/jennifermaser, *See Exhibit C*. This connection further shows Defendant Group is a responsible party for the text messages.

**54.** Jennifer Maser uses an email address that belongs to Defendant Advisors but has a website hosted by Defendant Group.

**55.** -On March 02, 2023, at 11:11 AM Plaintiff sent Jennifer a message at (561) 827-0261, which is the number she provided to him. The message stated, "Please cancel everything. I don't want to be charged. Please Don't contact me again about this. Thank you.".

**56.** **Texts #16-21**, *See Table A*, Plaintiff received six (6) additional unauthorized messages from Defendants' telemarketer Jennifer Masser. Plaintiff kept asking to "Stop messaging me" continuously, yet she continued.

**57.** Table A below displays the text messages received from Defendants ADVISORS and GROUP.

| **NO.** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1 | Jun 24, 2022 | 7:29 PM | 954-716-8575 | Unauthorized solicitation text message |
| 2 | Jun 25, 2022 | 10:21 AM | 954-716-8575 | Unauthorized solicitation text message |
| 3 | Jun 26, 2022 | 10:19 AM | 954-716-8575 | Unauthorized solicitation text message |
| 4 | Jun 29, 2022 | 12:18 PM | (954) 716-8575 | Unauthorized solicitation text message |
| 5 | Jul 01, 2022 | 12:22 PM | (954) 716-8575 | Unauthorized solicitation text message |
| 6 | Jul 04, 2022 | 2:19 PM | (954) 716-8575 | Unauthorized solicitation text message |
| 7 | Jul 08, 2022 | 3:20 PM | (954) 716-8575 | Unauthorized solicitation text message |
| 8 | Aug 02, 2022 | 10:05 AM | (754) 253-3608 | Unauthorized solicitation text message |
| 9 | Aug 03, 2022 | 1:03 PM | (754) 253-3608 | Unauthorized solicitation text message |
| 10 | Aug 05, 2022 | 10:04 AM | (754) 253-3608 | Unauthorized solicitation text message |
| 11 | Aug 07, 2022 | 6:02 PM | (754) 253-3608 | Unauthorized solicitation text message |
| 12 | Aug 15, 2022 | 10:03 PM | (754) 253-3608 | Unauthorized solicitation text message |
| 13 | Feb 25, 2023 | 10:20 AM | (305) 901-7618 | Unauthorized solicitation text message |
| 14 | Feb 26, 2023 | 4:17 PM | (305) 901-7618 | Unauthorized solicitation text message |
| 15 | Feb 28, 2023 | 10:25 AM | (305) 901-7618 | Unauthorized solicitation text message |
| | Mar 02, 2023 | 11:11 AM | (561) 827-0261 | Plaintiff sent a DNC request |
| 16 | Mar 02, 2023 | 11:12 AM | (561) 827-0261 | Unauthorized message directly from Jennifer Masser |

| NO. | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| | Mar 02, 2023 | 11:13 AM | (561) 827-0261 | Plaintiff sent a second DNC Request |
| 17 | Mar 02, 2023 | 11:13 AM | (561) 827-0261 | Unauthorized message directly from Jennifer Masser |
| | Mar 02, 2023 | 11:14 AM | (561) 827-0261 | Plaintiff sent a third DNC request |
| 18 | Mar 02, 2023 | 11:14 AM | (561) 827-0261 | Unauthorized message directly from Jennifer Masser |
| 19 | Mar 02, 2023 | 11:15 AM | (561) 827-0261 | Unauthorized message directly from Jennifer Masser |
| 20 | Mar 02, 2023 | 11:15 AM | (561) 827-0261 | Unauthorized message directly from Jennifer Masser |
| | Mar 02, 2023 | 11:16 AM | (561) 827-0261 | Plaintiff sent a fourth DNC request |
| 21 | Mar 02, 2023 | 11:16 AM | (561) 827-0261 | Unauthorized message directly from Jennifer Masser |

**58.** Plaintiff did not have an established business relationship with Defendants, nor did Plaintiff consent to any of the text messages sent to his cell phone.

**59.** Plaintiff did not provide his phone number to Defendants at any point.

**60.** Plaintiff sent an internal Do-Not-Call policy request to Defendants ADVISORS and GROUP to email info@ushealthgroup.com and media@ushealthgroup.com on August 5, 2022 which are emails listed on their website ushealthgroup.com. Plaintiff again sent an internal Do-Not-Call policy request to Defendants ADVISORS and GROUP to emails info@ushadvisors.com, and info@ushealthgroup.com on March 3, 2023.

**61.** Despite these multiple requests, Defendants ADVISORS and GROUP failed and/or refused to send Plaintiff a Do- Not-Call policy request.

**62.** Upon information and belief, Defendants ADVISORS and GROUP did not have a

written do-not-call policies while it was sending Plaintiff the text messages.

**63.** Upon information and belief, Defendants ADVISORS and GROUP did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

**64.** Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3) (requiring telemarketers to honor and record DNC requests when made).

**65.** Defendants knew or should have known that its conduct would violate the TCPA and its regulations because ADVISORS AND GROUP operate in a highly regulated telephone solicitation industry.

**66.** Defendants knew or should have known the requirements for making TCPA compliant telemarketing text messages and thus knew or should have known that the text messages complained of herein violated the TCPA and its regulations.

**67.** No emergency necessitated these text messages.

**DEFENDANTS GROUP AND ADVISORS ARE A COMMON ENTERPRISE**

**68.** Defendant Group is the parent company of Defendant Advisors.

**69.** Defendant Groups' website, https://www.ushealthgroup.com, states it has, "A family of companies providing a better level of innovative health coverage for people just like you." Defendant Advisors is part of that "family of companies." *See Exhibit D.*

**70.** Defendant Advisors' agents are de facto agents of Defendant Group because Defendant Group also pays Defendant Advisors through stock compensation.

**71.** Defendant Advisors' agents can be paid earned commissions through either cash payments or stock in Defendant Group. *See Exhibit E.*

**72.** Defendant Group's website states, "Begin your career with USHEALTH Advisors," and contains a link for prospective agents to apply to become an agent with Defendant Advisors.

**73.** Defendant Group and Defendant Advisors employ nearly identical logos that are nearly indistinguishable without close inspection.

**74.** Defendant Group and Defendant Advisors share common ownership and common management.

**75.** Defendant Group and Defendant Advisors market their services on each other's websites and do so in a manner that makes it confusing for the average consumer to distinguish between where Defendant Group ends, and Defendant Advisors begins.

**76.** Defendant Advisors' agents use a website that is owned and operated by Defendant Group. This website displays the logo and trademarks of Defendant Group.

**77.** Defendant Advisors operates a website at, https://www.ushacareers.com. Clicking the "Terms of Use" hyperlink, https://www.usacareers.com/terms-of-use/ takes the user to Defendant Advisors' terms of use page. The first paragraph of the Agreement and Terms states:

> These website Terms of Use ("Terms") describe the rules for using this website. These Terms constitute a legally binding agreement between you and the person using this website, and USHEALTH Group, Inc. If you are helping another person use this website, these terms constitute a legally binding agreement between both the helper and the person being helped and USHEALTH Group, Inc. Terms such as "we" or "our" and "company" refer to USHEALTH Group, Inc. and its affiliate entities.
>
> https://www.ushacareers.com/terms-of-use/

**78.** Defendant Advisor's website clearly states using the website constitutes an agreement between Defendant Group and the website user further blurring the line between where the Defendants begin and end with respect to operation and ownership.

**79.** Defendant Group and Defendant Advisors share agents and each of them provides a platform to further the solicitation efforts of those agents. Defendant Group provides the website

platform and hosts the agents' websites, while Defendant Advisors provides the email platform and hosts the agents' email addresses.

**DEFENDANTS ARE LIABLE FOR THE ACTIONS OF THEIR AGENTS**

**80.** A Defendant may be liable for the acts of an agent where the agent has been authorized to make representations on behalf of the defendant, and acts as an express or apparent agent:

> Apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Dish Network*, at para. 46

**81.** Defendants' agents are in fact agents because:

a) Defendants engage the agents by written agreement to make telemarketing calls/texts on their behalf to sell their health insurance products.

b) Defendants pay agents when agents are successful in calling/texting consumers and selling Defendants' insurance policy (USHealth Advisory by compensation or reimbursement, and USHealth Group by paying shares);

c) Defendants consent to their agents using USHealth Group and USHealth Advisory trademarks and logos, which the agents use; *See Exhibits A and C.*

d) Agents have access to Defendants' pricing of insurance products, which is not available to the public;

e) Agents can obtain consumer telemarketing leads from Defendants' data systems (and pay for them), which is not available to the public;

f) Agents input consumer information into Defendants' data systems regarding their identity and health information, which is not available to the public.

**82.** Through these agents, Defendants knowingly made these telemarketing text messages without the prior express consent of Plaintiff and continued to make these text messages after repeated requests for the text messages to stop.

**83.** Defendants, through their agents, repeatedly invaded Plaintiff's privacy by refusing to cease texting Plaintiff after multiple requests for the text messages to stop.

**84.** Defendants' agents' websites represent they are in fact operating as one and the same company.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE TEXT MESSAGES

**85.** Defendants ADVISORS AND GROUP's text messages harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy".

**86.** Defendants ADVISORS AND GROUP's text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

**87.** Defendants ADVISORS AND GROUP's text messages harmed Plaintiff by intruding upon Plaintiff's seclusion.

**88.** Plaintiff has been harmed, injured, and damaged by the text messages including, but not

limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of Plaintiff's cell phone.

## PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

**89.** The text messages were to Plaintiff's cellular phone (407) 780-9810 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phones registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## CAUSES OF ACTION:

## COUNT ONE:

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

**90.** Plaintiff re-alleges and re-adopts paragraphs 1 through 89 of the Complaint as if fully set forth herein.

**91.** Defendants ADVISORS AND GROUP called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the text messages for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

**92.** Plaintiff was statutorily damaged at least twenty-one (21) times under 47 U.S.C. §

227(c)(3)(F) by Defendants ADVISORS AND GROUP by the telemarketing text messages described above, in the amount of $500.00 per call.

**93.** Plaintiff was further statutorily damaged because Defendants ADVISORS AND GROUP willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

**94.** Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

**COUNT TWO:**

**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**

**(AGAINST ALL DEFENDANTS)**

**95.** Plaintiff re-alleges and re-adopts paragraphs 1 through 89 of the Complaint as if fully set forth herein.

**96.** The foregoing acts and omissions of Defendants ADVISORS and GROUP and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2]

b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

c. In the solicitations, the name of the individual caller and the name of the person

[2] *Seeid.* at 425 (codifying a June 26, 2003 FCC order).
[3] *Seeid.* at 425 (codifying a June 26, 2003 FCC order).

or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

**97.** Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

**98.** Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

**COUNT THREE**

**(Violations of Florida Statutes § 501.059)**

**99.** Plaintiff re-alleges and re-adopts paragraphs 1 through 89 of the Complaint as if fully set forth herein.

**100.** Defendants ADVISORS AND GROUP did not have Plaintiff's prior express written consent when making the telephonic solicitation text messages. Fla. Stat. § 501.059(1)(g).

**101.** Plaintiff is entitled to an award of at least $500 in damages for each such violation of Fla. Stat. § 501.059(1)(g) pursuant to Fla. Stat. § 501.059(10)(a)(2).

**102.** Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Fla. Stat. § 501.059(10)(a)(b).

**COUNT FOUR**

**(Violations of Florida TELEMARKETING ACT)**

**103.** Plaintiff re-alleges and re-adopts paragraphs 1 through 89 of this Complaint as if fully set forth herein.

[4] *Seeid.* at 425 (codifying a June 26, 2003 FCC order).

**104.** Defendants ADVISORS and GROUP called/texted Plaintiff more than three times within a 24-hour period. Fla. Stat. 501.616(6)(b).

**105.** In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or penalties and/or punitive damages, including costs, court costs, attorney's fees. No provision of this part shall be construed to limit any right or remedy provided under law. Fla. Stat. 501.625.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against Defendants ADVISORS and GROUP as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violates the TCPA and Fla. Stat. 501.059 and Florida Telemarketing Act.

C. An award of $1500 per call in statutory damages arising from the TCPA 47 U.S.C §227(c) intentional violations jointly and severally against the corporations for 21 text messages

D. An award of $1500 per call in statutory damages arising from the TCPA 47 U.S.C § 227(c)(5) intentional violations jointly and severally against the corporations for 21 text messages.

E. An award of $1,500 per call in statutory damages arising from 501.059(1)(g) intentional violations, pursuant to Fla. Stat. § 501.059(10)(a)(b) for 21 text messages.

F. An award of $50,000 in punitive damages arising from intentional violations of Fla. Stat. 501.616(6)(b).

G. An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity.

H. Such further relief as the Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

July 24, 2023,

Respectfully,

Joshua Cacho
Plaintiff, Pro Se
164 Estella Road
Lake Mary, Florida 32746
407-577-3881

# EXHIBIT A

USHEALTH® GROUP
A UnitedHealthcare Company

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

(/)

# Brandon Martinez

Choosing the right health insurance can be confusing and lead to many questions. I am your licensed health insurance advisor, here yo answer those questions and help you navigate into the right direction. When you are ready, I will be here to help you select the best plan for your unique needs so you feel confident in your choice.

Call : (954) 305-8877 (tel:(954) 305-8877) (or) Email (mailto:BRANDON.MARTINEZ@USHAdvisors.com)

# Customize your package tailored for you

Flexibility and reliability are the hallmarks of our product portfolio.
Checkout our highlights & benefits.

**Health**

Any Doctor, Any Hospital!

24 hour coverage, on or off the job

Portable coverage

Quality coverage available for periods of critical illness

Wellness & Health Screening Benefits Available

USHEALTH® GROUP
A UnitedHealthcare Company

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

Dental

Vision



## Apply for your health coverage in 3 simple steps

**Step 1**
Call or fill out the form

**Step 2**
Talk to me

**Step 3**
Apply

USHEALTH GROUP
A UnitedHealthcare Company
(/)

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

(https(/https(/https(/https:

# Let us help you customize your health coverage today.

About Us

(http://ushagent.com/BrandonMartinez/aboutushg/)

PPO Networks

(http://ushagent.com/BrandonMartinez/ppo-networks/)

Contact Home Office

(https://www.ushealthgroup.com/contact-us/)

Privacy Policy

(https://www.ushealthgroup.com/privacy-policy/)

Products

(http://ushagent.com/BrandonMartinez/our-health-products/)

Mission of HOPE

USHEALTH GROUP® A UnitedHealthcare Company (/)

Insurance underwritten by
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

(http://ushagent.com/BrandonMartinez/hope/)

Terms of Use (https://www.ushealthgroup.com/terms-of-service/)

**Legal Notice :** All products are underwritten and issued by Freedom Life Insurance Company of America, National Foundation Life Insurance Company and Enterprise Life Insurance Company, wholly owned subsidiaries of USHEALTH Group, Inc. All products not available in all states. Contact a Licensed Insurance Agent for additional information.

300 Burnett Street, Suite 200 Fort Worth, TX 76102-2734 (https://goo.gl/maps/mzoTsvRbABeNs7tR7)

1-866-722-8744 (tel:+18667228744)

info@ushealthgroup.com (mailto:info@ushealthgroup.com)

7:00 AM - 7:00 PM CT Monday - Friday
8:00 AM - 1:00 PM CT Saturday

Media Inquiries : media@ushealthgroup.com (mailto:media@ushealthgroup.com)

---

Copyright 2020 © USHEALTH GROUP All rights reserved

# EXHIBIT B

Gmail

josh cacho <jcacho1848@gmail.com>

# Summary of Benefits

1 message

**JENNIFER MASER** <JENNIFER.MASER@ushadvisors.com> Tue, Feb 28, 2023 at 3:25 PM
To: "jcacho1848@gmail.com" <jcacho1848@gmail.com>

Joshua,

Thanks for taking the time to speak with me. Attached is the copy of policy details we went over.

**Jennifer Maser**
US Health Advisors
Licensed Insurance Agent #W529407
Jennifer.maser@ushadvisors.com
C. 561-827-0261
O. 561-231-6218

This transmission is intended only for the person(s) named above. The information contained in this transmission may contain privileged and confidential information. It is intended only for review and/or use by the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**2 attachments**

**Florida license.pdf**
384K

**Joshua Cacho.pdf**
179K

# FLORIDA DEPARTMENT OF FINANCIAL SERVICES

## *JENNIFER AMELIA MASER*

### *License Number : W529407*

**Resident Insurance License**

- 0215 - LIFE INCL VAR ANNUITY & HEALTH

**Issue Date**

11/07/2018

**Please Note:** A licensee may only transact insurance with an active appointment by an eligible insurer or employer. If you are acting as a surplus lines agent, public adjuster, or reinsurance intermediary manager/broker, you should have an appointment recorded in your own name on file with the Department. If you are unsure of your license status you should contact the Florida Department of Financial Services immediately. This license will expire if more than 48 months elapse without an appointment for each class of insurance listed. If such expiration occurs, the individual will be required to re-qualify as a first-time applicant. If this license was obtained by passing a licensure examination offered by the Florida Department of Financial Services, the licensee is required to comply with continuing education requirements contained in 626.2815 or 648.385, Florida Statutes. A licensee may track their continuing education requirements completed or needed in their MyProfile account at https://dice.fldfs.com. To validate the accuracy of this license you may review the individual license record under "Licensee Search" on the Florida Department of Financial Services website at http://www.MyFloridaCFO.com/Division/Agents

Jimmy Patronis
Chief Financial Officer
State of Florida

Southern Consumers Alliance

UnitedHealthcare® Choice Plus Network

FREEDOM LIFE® INSURANCE COMPANY OF AMERICA
A UnitedHealthcare Company

# Health Coverage Summary

Members of the Southern Consumers Alliance have the option of applying for coverage under the following association group insurance plans issued to the association by Freedom Life Insurance Company of America, a USHEALTH Group® company.

**Your total estimated monthly cost for the association membership and all of the plans listed below is $244.64**

## PremierAdvantage

The PremierAdvantage Fixed Indemnity Plans provide **first dollar payments for covered healthcare services without a calendar year deductible having to be first satisfied.** These plans utilize the nationwide **UnitedHealthcare Choice Plus Network** and pay the stated benefit amount, regardless of expenses incurred. Plus, you can buy more coverage if you need it through PremierMed, the catastrophic safety net, without additional underwriting! Ask your Agent how!

Coverage Selected:
Primary Insured: Plan 1

**For more detailed information - click below:**

Popular Plan Features

PremierAdvantage Brochure

## PremierMed

The PremierMed Plan provides comprehensive outpatient and inpatient short term medical expense coverage and also utilizes the nationwide **UnitedHealthcare Choice Plus Network**. After a $3,000 deductible is met, which is less than the typical deductible available on either an ACA bronze or silver plan in the federally facilitated marketplace, 100% of incurred expenses for covered sickness and bodily injury is paid.

***But, why pay for comprehensive medical expense coverage until you need it?***

With the PremierAdvantage Plan and the Well-GIST Rider providing each insured with the guaranteed right to upgrade to the comprehensive medical coverage of PremierMed, you don't have to buy comprehensive coverage until you need it.

**For more detailed information - click below:**

Popular Plan Features

PremierMed Brochure

## SecureDental

The SecureDental PPO plans can help your family maintain a healthy smile. The plans utilize your selected network and pay the expenses charged for covered services after the PPO discount up to the stated maximum, subject to the required deductible. Plus, preventive dental care from a participating dentist is not subject to a deductible.

Network: Careington Dental PPO

Coverage Selected:
Primary Insured: Saver

**For more detailed information - click below:**

Popular Plan Features

SecureDental Brochure

*The above description is intended only as a general information and only provides a brief overview of some of the standard benefits of the product(s) shown above. Please click the links for more details on each plan including any limitations or exclusions.*

*These plans are exempt from the requirements of the Affordable Care Act ("ACA"), do not qualify as "minimum essential coverage" under the ACA, and they do not provide coverage for all ten (10) "essential health benefits" under the ACA. Benefits under these plans may be subject to a Pre-existing Condition limitation, among other limitations and exclusions.*

## Association Membership - *Additional Health Protection and More*

Members of the Southern Consumers Alliance automatically receive many privileges, discounts and benefits, all at no additional cost, including some of the more popular ones listed below:

- Unlimited non-emergency telemedicine consultations through the physicians group, including prescriptions sent to the Member's pharmacy. Online dermatology and behavioral health consultations are also available to Members at reduced rates.
- Hospital Confinement Room & Board Daily Benefits underwritten by Freedom Life Insurance Company of America, also a USHEALTH Group® company ("FLIC").
- Accidental Bodily Injury Excess Medical Expense Benefits, also underwritten by FLIC.
- Accidental Death & Dismemberment Benefits, also underwritten by FLIC.

***Membership Level Selected: Diamond***

**For more detailed information - click below:**

Popular Plan Features

Diamond Brochure

**Your total estimated monthly cost for the association membership and all of the plans listed above is $244.64**

**Jennifer Maser**
**(561) 827-0261**
**JENNIFER.MASER@USHAdvisors.com**
**www.ushagent.com/JenniferMaser**
USHEALTH ADVISORS™

*The above description is intended only as a general information and only provides a brief overview of some of the standard benefits of the product(s) shown above. Please click the links for more details on each plan including any limitations or exclusions.*

*These plans are exempt from the requirements of the Affordable Care Act ("ACA"), do not qualify as "minimum essential coverage" under the ACA, and they do not provide coverage for all ten (10) "essential health benefits" under the ACA. Benefits under these plans may be subject to a Pre-existing Condition limitation, among other limitations and exclusions.*

# EXHIBIT C

USHEALTH® GROUP | Insurance underwritten by: Freedom Life Insurance Company of America National Foundation Life Insurance Company Enterprise Life Insurance Company

A UnitedHealthcare Company (/)

# Jennifer Maser

I am your benefits specialists. When you have questions I have Answers! I am here to HELP you and your family anyway I can. When all things are going hectic in the marketplace you can know you are protected by one of the Best companies out there and tip top products available. When everyone else is taking choices away USHEALTH Group is Giving more than ever. When you are ready I will be here for you.

Call : (561) 827-0261 (tel:(561) 827-0261) (or) Email (mailto:JENNIFER.MASER@USHAdvisors.com)

# Customize your package tailored for you

Flexibility and reliability are the hallmarks of our product portfolio.
Checkout our highlights & benefits.

**Health**

Any Doctor, Any Hospital!

24 hour coverage, on or off the job

Portable coverage

Quality coverage available for periods of critical illness

Wellness & Health Screening Benefits Available

USHEALTH® GROUP
A UnitedHealthcare Company
(/)

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

| |
|---|
| Dental |
| Vision |




## Apply for your health coverage in 3 simple steps

**Step 1**
Call or fill out the form

**Step 2**
Talk to me

**Step 3**
Apply

USHEALTH® GROUP
A UnitedHealthcare Company
(/)

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

**Let us help you customize your health coverage today.**

About Us (http://ushagent.com/jennifermaser/aboutushg/)

PPO Networks (http://ushagent.com/jennifermaser/ppo-networks/)

Contact Home Office (https://www.ushealthgroup.com/contact-us/)

Privacy Policy (https://www.ushealthgroup.com/privacy-policy/)

Products (http://ushagent.com/jennifermaser/our-health-products/)

Mission of HOPE (http://ushagent.com/jennifermaser/hope/)

Terms of Use (https://www.ushealthgroup.com/terms-of-service/)

USHEALTH GROUP A UnitedHealthcare Company
(/)

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

**Legal Notice :** All products are underwritten and issued by Freedom Life Insurance Company of America, National Foundation Life Insurance Company and Enterprise Life Insurance Company, wholly owned subsidiaries of USHEALTH Group, Inc. All products not available in all states. Contact a Licensed Insurance Agent for additional information.

300 Burnett Street, Suite 200 Fort Worth, TX 76102-2734
(https://goo.gl/maps/mzoTsvRbABeNs7tR7)

1-866-722-8744
(tel:+18667228744)

info@ushealthgroup.com
(mailto:info@ushealthgroup.com)

7:00 AM - 7:00 PM CT Monday - Friday
8:00 AM - 1:00 PM CT Saturday

Media Inquiries : media@ushealthgroup.com
(mailto:media@ushealthgroup.com)

Copyright 2020 © USHEALTH GROUP All rights reserved

# EXHIBIT D

USHEALTH® GROUP | Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

A UnitedHealthcare Company

(/)

# Innovative Health Coverage tailored to your individual needs

Apply anytime of the year.

Get Started Now (/get-a-quote/)

Watch Video

# Stellar Service Reputation

**15 million+**

members covered so far

**100+ years**

of industry experience

of industry experience

USHEALTH GROUP
A UnitedHealthcare Company
(/)

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company

**4 years**
insurance company of the year

**3,600 + agents**
around the country across 31 states

## A family of companies providing a better level of innovative health coverage for people just like you.

We understand two fundamental truths: Every customer is unique, and a 'one size fits all' approach is not always the answer.

USHEALTH Group, Inc., with our family of companies, offers a full portfolio of plans that let you tailor health coverage to YOUR specific needs. With over 50 collective years of insurance experience, we provide a broad choice of flexible solutions and secure insurance plans. All you need to do is contact an agent to find the health coverage that best suits you and your family's individual needs!

Learn more about us (/about/)

## Customize your package

Our insurance plans offer an array of options for customers on a limited budget, as well as, those who are looking for additional benefits. No matter the type of plan you

# EXHIBIT E

# Innovative Compensation Plans

Among the many rewards of a sales career with USHEALTH Advisors, the opportunity to earn unlimited income for today and build long-term wealth for tomorrow consistently ranks high with our career agents and field leaders.

## Income for Today

Our innovative compensation plans give you the power to control how much money you will earn this year, next year and every year of your USHA career, because we do not place a limit on your earning capacity. As your annualized premium production increases, so does your income.

In addition, USHA's unique performance bonus plans give you even more opportunities to earn what you are worth.

## Wealth for Tomorrow

USHA career agents also enjoy the opportunity to build significant wealth for themselves by participating in our unique stock ownership program.

We believe it is important for our Agents to have ownership in the company you are helping to build. Therefore, we have designed our stock ownership program to help you quickly join the ranks of "Agent Owners" of USHEALTH Group.

Agent ownership is just one of the many ways we work to ensure you have the opportunity to reap the rewards of your efforts and your success.

Search

Apply Today

Legal Notice

COPYRIGHT © USHEALTH GROUP ALL RIGHTS RESERVED. USHEALTH GROUP IS THE BRAND NAME FOR PRODUCTS UNDERWRITTEN AND ISSUED BY FREEDOM LIFE INSURANCE COMPANY OF AMERICA AND NATIONAL FOUNDATION LIFE INSURANCE COMPANY.

BBB ACCREDITED BUSINESS
Click for Review

USHEALTH Advisors|Copyright © 2023 All rights reserved.