UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JOSHUA CACHO,**

               **Plaintiff,**

**v.**                                      **Case No: 6:23-cv-737-CEM-EJK**

**USHEALTH ADVISORS, LLC and
USHEALTH GROUP, INC,**

               **Defendants.**

**REPORT AND RECOMMENDATION**

This cause comes before the Court on Defendant USHEALTH Advisors, LLC's[1] ("USHA") Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion") (Doc. 33), filed August 31, 2023. Plaintiff, proceeding *pro se*, responded in opposition on September 26, 2023. (Doc. 37.) The Motion has been referred to the undersigned for the issuance of a Report & Recommendation. Upon consideration, I respectfully recommend that the Motion be granted in part and denied in part.

---

[1] USHEALTH Group, Inc. ("USHG") has not appeared in this case, as it is unclear whether Plaintiff has served that entity.

I.    **BACKGROUND**[2]

A. **Factual Background**

This case involves twenty-one unwanted text messages. (Doc. 31 ¶ 57.) Plaintiff registered his cell phone on the National Do-Not-Call Registry on May 21, 2023. (*Id.* ¶¶ 34, 35.) From June 24, 2022, to February 28, 2023, Defendants, which operate as insurance brokers,[3] sent Plaintiff the unsolicited and unwanted text messages marketing their health insurance plans. (*Id.* ¶¶ 37, 38, 41.) On August 5, 2022, and again on March 2, 2023, Plaintiff sent an internal Do-Not-Call policy request to Defendants' email addresses, to which Defendants did not respond. (*Id.* ¶¶ 57, 60, 61.) Thus, Plaintiff alleges that Defendants did not have a written do-not-call policy in place during the relevant time period. (*Id.* ¶ 62.)

Plaintiff's Second Amended Complaint asserts four causes of action. (Doc. 31.) Under Counts I and II, Plaintiff asserts claims pursuant to the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, and the regulations promulgated thereunder, 47 C.F.R. § 64.1200. Count I alleges a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(C), asserting that Defendant violated the TCPA because Defendants sent text messages to Plaintiff, a consumer who had placed his phone number on the national Do-Not-Call Registry. Count II alleges a violation of 47

---

[2] The facts are derived from the Second Amended Complaint (Doc. 31), the well-pleaded allegations of which the Court must accept as true in ruling on the Motion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[3] Plaintiff alleges Defendant USHG is the parent company of USHA. (*Id.* ¶ 68.)

C.F.R. § 64.1200(d), asserting that Defendants failed to maintain an internal do-not-call list for individuals who request that the caller stop sending text messages to their telephone number. Count III alleges a violation of the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059(1)(g). Finally, Count IV alleges a violation of the Florida Telemarketing Act ("FTA"), Fla. Stat. § 501.616(6)(b).

### B. Procedural History

Plaintiff commenced this litigation against USHA and Jennifer Maser on April 21, 2023. (Doc. 1.) Plaintiff then filed an Amended Complaint against USHA and a new Defendant, USHealth Group, Inc. ("USHG"), dropping Defendant Maser, on June 2, 2023. (Doc. 13.) While the filing of the Amended Complaint was technically past the timeframe for Plaintiff to amend as a matter of course, Fed. R. Civ. P. 15(a)(1), the Court did not strike it. Thus, USHA filed a motion to dismiss the Amended Complaint on June 20, 2023. (Doc. 19.) Plaintiff did not respond. Instead, Plaintiff filed a Second Amended Complaint on July 10, 2022. (Doc. 22.) The Court *sua sponte* struck that filing because Plaintiff was not entitled to further amend his pleading as a matter of course. (Doc. 23.) Plaintiff then filed a motion for leave to amend his Amended Complaint, which USHA opposed. (Docs. 25, 26.) On August 17, 2023, the undersigned granted Plaintiff's motion to amend (Doc. 30), and the Second Amended Complaint was docketed that day (Doc. 31). On August 31, 2023, USHA filed the instant Motion, seeking dismissal of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 21(b)(6). (Doc. 33.)

## II.    STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions are also insufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* In addition, all reasonable inferences should be drawn in favor of the plaintiff. *See Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam).

## III.    DISCUSSION

### A. USHA and USHG

Plaintiff alleges that Defendants (along with their affiliates or agents as to Count II), sent Plaintiff the unwanted text messages. (Doc. 31 ¶¶ 91, 96, 100, 104.) USHA, which is the only party to appear in this case, moves to dismiss the entirety of the Second Amended Complaint, arguing Plaintiff has failed to plausibly allege USHA's

specific role in sending the offending text messages. (Doc. 33 at 5.) Thus, USHA argues that Plaintiff's allegations, which consistently group USHA and USHG together, fail to give USHA proper notice of the claims and grounds for liability against it. (*Id.*)

The TCPA prohibits the use of automatic telephone dialing systems to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). A text message to a cell phone qualifies as a "call" under the TCPA. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA]"); *Salcedo v. Hanna*, 936 F.3d 1162, 1166 (11th Cir. 2019) ("[T]he FCC has applied the [TCPA's] regulations of voice calls to text messages.").

USHA is correct that "[f]or a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-cv-03315-PJH, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018). It is well established that "under federal common law principles of agency, a party may be vicariously liable for TCPA violations even if that party did not initiate or make the calls at issue." *Worsham v. TSS Consulting Grp., LLC*, No. 6:18-CV-1692-LHP, 2023 WL 2664203, at *6 (M.D. Fla. Mar. 28, 2023) (citing cases). Plaintiff's basis for liability against USHG is that it is a common enterprise with USHA. (Doc. 31 ¶¶ 68–79.) Plaintiff also asserts

that Defendants are liable for the actions of their agents. (*Id.* ¶¶ 80–84.)

Here, Plaintiff asserts that Defendants, together, sent him a total of 21 offending text messages. (Doc. 31 ¶ 57.) Text messages 1–7 were sent from a telephone number ending in 8575. (*Id.*) Text messages 8–15 were sent from a telephone number ending in 7618. (*Id.*) And text messages 16–21 were sent from a telephone number ending in 0261. (*Id.*) Because USHA is the only Defendant who has appeared in this case, the undersigned will focus on whether Plaintiff has adequately pleaded liability against it for each batch of text messages.[4]

Regarding Texts 1–7, Plaintiff alleges that he replied to one of the text messages asking the representative, Brandon Martinez, to email Plaintiff his company's website. (Doc. 31 ¶ 42, 43.) The representative responded to Plaintiff with a link to his agent's website, at https://www.ushagent.com/BrandonMartinez. (*Id.* ¶ 44; Doc. 31, Ex. A.) Exhibit A contains USHG's company name at the top of the webpage, with a USHA email address. (Doc. 31, Ex. A.) Moreover, numerous links are included directing a party to both USHA and USHG. (*Id.*)

"Direct liability under the TCPA . . . applies only to entities that 'initiate' the telemarking calls." *Hossfeld v. Am. Fin. Sec. Life Ins. Co.*, 544 F. Supp. 3d 1323, 1331 (S.D. Fla. 2021) (quoting *Grant v. Regal Auto. Grp., Inc.*, No. 8:19-CV-363-T-23JSS,

---

[4] Consequently, since USHG has not appeared in this case, the undersigned does not reach USHA's argument for dismissal as it relates to Plaintiff's "common enterprise" liability theory between USHA and USHG. (Doc. 33 at 7–10.) This is without prejudice to this argument being re-asserted by USHG if it ultimately does appear in this case.

2020 WL 8254283, at *7 (M.D. Fla. July 30, 2020)), *report and recommendation adopted*, 2020 WL 8224838 (M.D. Fla. Sept. 29, 2020), *vacated on other grounds by* 2022 WL 20447296 (M.D. Fla. Oct. 17, 2022). Here, the representative directed Plaintiff to a USHA-affiliated website, and the representative's email address is linked to USHA. At this stage of the litigation, the undersigned concludes that this is enough to establish TCPA liability on USHA's part for Texts 1–7. *See Spiess v. CHW Grp., Inc.*, No. 8:19-cv-153-T-30CPT, 2019 WL 2183076, at *1 (M.D. Fla. May 20, 2019) (concluding, at the motion to dismiss stage, that defendant had fair notice of the claim, where plaintiff alleged defendant placed violative TCPA phone calls to him and plaintiff spoke to defendant's agents, which the court interpreted as individuals who worked for defendant).

Regarding Texts 8–15, Plaintiff alleges he attempted to call and message the number that had been messaging him for the purpose of determining the responsible party. (Doc. 31 ¶¶ 46, 47.) Plaintiff received a phone call from a telemarketer who then transferred him to a woman named Jennifer Maser. (*Id.* ¶¶ 47, 50.) Ms. Maser informed Plaintiff that "her company was called USHealth Advisors" and provided the website to Plaintiff as ushealthgroup.com. Ms. Maser's email address was also associated with USHA. (*Id.* ¶¶ 51, 52; Doc. 31, Ex. B.) Plaintiff further alleges he received Texts 16–21 from Ms. Maser. (Doc. 31 ¶ 56.) Thus, similar to Texts 1–7, Ms. Maser told Plaintiff she worked for USHA, and the representative's email address is affiliated with USHA. So once again, at this stage of the litigation, the undersigned finds that Plaintiff has alleged enough to establish TCPA liability on USHA's part for

Texts 8–21. Thus, I respectfully recommend that the Court deny the motion to dismiss all Counts related to this argument.

### B. Count III – Plaintiff's Claim Under the FTSA

In Count III, Plaintiff alleges that Defendant did not have Plaintiff's prior express written consent when making telephonic solicitation text messages, in violation of Florida Statute § 501.059(1)(g). (Doc. 31 ¶ 100.) This statute merely defines "[p]rior express written consent." Fla. Stat. § 501.059(1)(g). It does not provide a cause of action for a violation of the FTSA. As Count III does not contain the statutory provision USHA allegedly violated, I respectfully recommend that USHA's Motion to Dismiss be granted as to Count III.

### C. Count IV – Plaintiff's Claim under the FTA

In Count IV, Plaintiff alleges that Defendants "called/texted" Plaintiff more than three times within a twenty-four hour period, in violation of Florida Statute § 501.616(6)(b). (Doc. 31 ¶ 104.) Florida Statute § 501.616(6)(b) provides:

> (6)   A commercial telephone seller or salesperson may not make any of the following types of phone calls, including calls made through automated dialing or recorded messages:
>
> (a)   A commercial telephone solicitation phone call before 8 a.m. or after 8 p.m. local time in the called person's time zone.
>
> (b)   More than three **commercial telephone solicitation phone calls** from any number to a person over a 24-hour period on the same subject matter or issue, regardless of the phone number used to make the call.

Fla. Stat. § 501.616(6)(b) (emphasis added).

First, USHA argues that § 501.616(6)(b) does not apply to text messages. (Doc. 33 at 16.) USHA does not cite a specific case for its proposition[5]; rather, USHA relies on the plain language of the statute, which refers only to "telephone solicitation phone calls." (*Id.* (citing Fla. Stat. § 501.616(6)(b).) This is contrasted with the FTSA, which explicitly includes text messages, as it was fashioned after its federal counterpart, the TCPA. *See Soto Leique v. Everglades Coll., Inc.*, No. 22-cv-22307-BLOOM/Otazo-Reyes, 2022 WL 11770137, at *4 (S.D. Fla. Oct. 20, 2022). The FTSA defines a telephonic sales call, in pertinent part, as "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services[.]" Fla. Stat. § 501.059(1)(j).

However, upon review of the FTA, the undersigned concludes that it extends to text messages. Section 501.603 contains the FTA's definitions. Therein, a "[c]ommerical telephone solicitation" is defined as "[a]n unsolicited telephone call" or

> (b)   Other communication with a person where:
>
> 1.   A gift, award, or prize is offered; or
> 2.   A telephone call response is invited; and
> 3.   The salesperson intends to complete a sale or enter into an agreement to purchase or invest in consumer goods or services during the course of the telephone call; or
>
> (c)   Other communication with a person which represents a price, quality, or availability of consumer goods or services and which invites a response by telephone or which

---

[5] The Court agrees with USHA's statement that case law on the FTA's application to text messages is indeed sparse. (Doc. 33 at 17.)

is followed by a call to the person by a salesperson.

Fla. Stat. § 501.603(1)(a), (b). The statute goes on to state that, for purposes of the FTA, "'other communication' **means a written or oral notification or advertisement transmitted through any means**. Also, for purposes of this section, 'invites a response by telephone' does not mean the mere listing or including of a telephone number in a notification or advertisement." Fla. Stat. § 501.603(1) (emphasis added). As the FTA defines commercial telephone solicitation to include written notifications or advertisements transmitted through any means, the Court concludes that this is broad enough to extend to text messages.

Next, Defendant argues that Count IV should be dismissed because former Defendant Maser, rather than USHA, is the only person Plaintiff alleges sent him three text messages in a twenty-four hour period, on March 2, 2023, and this was only in response to Plaintiff's do-not-call requests. (Docs. 33 at 17–18; 31 ¶ 57.) But as the undersigned concluded *supra*, Plaintiff has alleged enough at this stage of the proceedings to establish that Ms. Maser was acting on USHA's behalf in placing these text messages and that Plaintiff received a total of 6 text messages from a number belonging to Ms. Maser on March 2, 2023. (Doc. 31 ¶ 57.) Regardless of Plaintiff's admission that he sent Ms. Maser's number several do-not-call requests on that same date, Plaintiff has alleged enough to demonstrate that more than three texts from the same number were sent to Plaintiff within a 24-hour period from a person acting as a telemarketer for USHA's health insurance plans. (*Id.*; *see also* Doc. 31 ¶¶ 38, 41, 56.)

Therefore, I respectfully recommend the Court deny the Motion as to Count IV.

IV. **RECOMMENDATION**

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT IN PART and DENY IN PART** Defendant USHEALTH Advisors, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 33) as follows:

    a. **GRANT** the Motion as to Count III of the Second Amended Complaint and **DISMISS** Count III **WITHOUT PREJUDICE**; and

    b. **DENY** the Motion in all other respects.

2. **ALLOW** Plaintiff leave to file a Third Amended Complaint to correct the identified pleading deficiency in Count III only, in a timeframe established by the district judge.

Recommended in Orlando, Florida on January 5, 2024.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

The party has **fourteen days** from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives

that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).