# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**JOSHUA CACHO,**

        **Plaintiff,**

v.                                                            Case No: 6:23-cv-737-CEM-EJK

**USHEALTH ADVISORS, LLC and**
**USHEALTH GROUP, INC,**

        **Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the Court on Defendant USHEALTH Group, Inc.'s ("USHG") Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 45), filed February 2, 2024. Plaintiff, proceeding *pro se*, responded in opposition on February 24, 2024. (Doc. 51.) The Motion has been referred to the undersigned for the issuance of a Report & Recommendation. Upon consideration, I respectfully recommend that the Motion be denied.

### I.   BACKGROUND

This case involves twenty-one unwanted text messages. (Doc. 31 ¶ 57.) Plaintiff, a resident of Seminole County, Florida, received all relevant text messages in Florida. (*Id.* ¶ 1.) Defendant USHG, which is the subject of the instant Motion, is the parent company of USHealth Advisors, LLC ("USHA"), but Plaintiff alleges that the two companies are nearly indistinguishable from a public-facing perspective. (*Id.* ¶¶ 68–79.)

Plaintiff registered his cell phone on the National Do-Not-Call Registry on May 21, 2023. (*Id.* ¶¶ 34, 35.) From June 24, 2022, to February 28, 2023, Defendants, which operate as insurance brokers, sent Plaintiff the unsolicited and unwanted text messages marketing their health insurance plans. (*Id.* ¶¶ 37, 38, 41.) On August 5, 2022, and again on March 2, 2023, Plaintiff sent an internal Do-Not-Call policy request to Defendants' email addresses, to which Defendants did not respond. (*Id.* ¶¶ 57, 60, 61.) Thus, Plaintiff alleges that Defendants did not have a written do-not-call policy in place during the relevant time period. (*Id.* ¶ 62.)

Plaintiff's Second Amended Complaint asserts two causes of action. (Doc. 31.) Under Counts I and II, Plaintiff asserts claims pursuant to the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, and the regulations promulgated thereunder, 47 C.F.R. § 64.1200. Count I alleges a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(C), asserting that Defendants violated the TCPA because Defendants sent text messages to Plaintiff, a consumer who had placed his phone number on the national Do-Not-Call Registry. Count II alleges a violation of 47 C.F.R. § 64.1200(d), asserting that Defendants failed to maintain an internal do-not-call list for individuals who request that the caller stop sending text messages to their telephone number. The presiding District Judge dismissed Counts III and IV without prejudice, with leave to amend, but Plaintiff chose not to do so. (Doc. 52.)

## II.     STANDARD AND DISCUSSION

USHG moves to dismiss Plaintiff's Second Amended Complaint (Doc. 31) against it in its entirety for improper service, lack of personal jurisdiction, and failure

to state a claim. (Doc. 45.)

### A. Service of Process – 12(b)(5)

First, USHG argues it was never timely served. (Doc. 45 at 5.) Plaintiff named USHG as a Defendant on June 2, 2023, when Plaintiff filed his First Amended Complaint. (Doc. 13.) The presiding District Judge entered an order to show cause ("OTSC") on January 19, 2024, why Plaintiff's claims against USHG should not be dismissed for failure to timely serve it. (Doc. 44.) Plaintiff filed a response to the OTSC stating he served USHG on January 19, 2024. (Docs. 48; 48-1.) The Court discharged its OTSC via Endorsed Order based on Plaintiff's response. (Doc. 50.)

Federal Rule of Civil Procedure 4(m) states that a plaintiff has 90 days to serve a defendant, but that the time may be extended for good cause shown. Here, because USHG has been served (Doc. 48-1), albeit untimely, the undersigned will not recommend dismissal of the claims in the Second Amended Complaint against USHG solely on that basis, as the Court favors resolving disputes on their merits. *See Microsoft Corp. v. Gunther*, No. 3:07-cv-596-J-32TEM, 2007 WL 4287607, at *1 (M.D. Fla. Dec. 5, 2007) ("Judgments by default are generally not favored and any doubt should be resolved in favor of permitting a hearing on the merits.").

### B. Personal Jurisdiction – 12(b)(2)

Next, USHG, a Delaware corporation, argues the Court does not have personal jurisdiction over it. "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556

F.3d 1260, 1270 (11th Cir. 2009). If the defendant provides an affidavit contesting the factual basis for plaintiff's jurisdictional allegations, then the burden shifts back to plaintiff to show "'by affidavit the basis upon which jurisdiction may be obtained.'" *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (quoting *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989)).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). Here, Plaintiff's claims are based on the TCPA, which is "silent regarding service of process"; therefore, "state law informs whether the Court has personal jurisdiction over" USHG. *Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1367 (S.D. Fla. 2016); *see also Tickling Keys, Inc. v. Transamerica Fin. Adv., Inc.*, 305 F. Supp. 3d 1342, 1348 (M.D. Fla. 2018) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626–27 (11th Cir. 1996)). The Court, therefore, employs a two-part inquiry to determine whether it has personal jurisdiction over nonresident Defendant USHG: (1) whether the forum state's long-arm statute authorizes an exercise of personal jurisdiction; and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment. *Louis Vuitton Mallatier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

1. **Long-arm statute**

Under Florida's long-arm statute, Florida state courts may exercise personal jurisdiction over a defendant if that defendant commits any one of a list of nine

enumerated acts. *See* Fla. Stat. § 48.193(1)(a). Florida's long-arm statute authorizes an exercise of specific personal jurisdiction where a claim arises from a defendant's commission of "a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2).[1] Courts have held that TCPA violations are tortious acts for purposes of the long-arm statute. *See, e.g.*, *Keim*, 199 F. Supp. 3d at 1367 (holding that sending text messages in violation of the TCPA can give rise to personal jurisdiction under Florida's long-arm statute); *Bagg v. USHealth Grp., Inc.,* No. 6:15-cv-1666-Orl-37GJK, 2016 WL 1588666, at *3 (M.D. Fla. Apr. 20, 2016) (holding, in a case involving USHG, that "[s]ending a fax in violation of the TCPA constitutes a tort" and that the Court had personal jurisdiction over it in Florida). Under Florida law, a defendant commits a tortious act "by making telephonic, electronic, or written communications into [Florida], provided that the tort alleged arises from such communications." *Wendt v. Horowitz*, 822 So. 2d

---

[1] Florida's long-arm statute "provides for both general and specific jurisdiction." *Louis Vuitton*, 736 F.3d at 1352 (citing Fla. Stat. § 48.193(1)–(2)). Defendant addresses both types of jurisdiction in its Motion. "General personal jurisdiction exists when a defendant 'is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity.'" *Id.* (quoting Fla. Stat. § 48.193(2)). Specific jurisdiction, on the other hand, "authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Id.*

It appears that the parties agree that USHG does not engage in substantial activity in Florida. Despite Plaintiff's reference to "general personal jurisdiction" in the operative complaint (Doc. 31 ¶ 6), Plaintiff's allegations on the whole are premised on USHG's allegedly TCPA-violating actions in *this* case), so jurisdiction here cannot be based on general personal jurisdiction. (*See* Doc. 51 (arguing the Court has specific jurisdiction over USHG).) Therefore, the undersigned will address only specific personal jurisdiction.

1252, 1253 (Fla. 2002); *see also Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (interpreting Florida long-arm statute regarding commission of a tort to permit jurisdiction over nonresident defendant who commits a tort outside of the state that causes injury inside the state). Moreover, a text message to a cell phone qualifies as a "call" under the TCPA. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA]"); *Salcedo v. Hanna*, 936 F.3d 1162, 1166 (11th Cir. 2019) ("[T]he FCC has applied the [TCPA's] regulations of voice calls to text messages.").

Thus, Florida's long-arm statute is satisfied on a TCPA claim that arises from a non-resident defendant sending a text message into Florida. *See, e.g., Keim*, 199 F. Supp. 3d at 1367. Plaintiff alleges that USHG and USHA repeatedly placed text messages to Florida residents, including Plaintiff, in violation of the TCPA. (Doc. 31 ¶ 6.) This is enough to establish a prima facie case for the exercise of specific personal jurisdiction over USHG. *See Tickling Keys,* 305 F. Supp. 3d at 1349 (finding that the Court could exercise specific personal jurisdiction over a nonresident defendant for sending a fax injuring Plaintiff in Florida); *Bagg*, 2016 WL 1588666, at *3–4 (same).

Thus, the burden shifts to USHG to rebut Plaintiff's jurisdictional allegations by declaration or affidavit. USHG attempts to refute that evidence through the Declaration of Konrad H. Kober, the Chief Administrative Officer of USHG. (Doc. 45-1 ¶ 2.) USHG asserts that it is an insurance holding company and does no business in Florida that would support a finding of personal jurisdiction over it. (*Id.* ¶¶ 3–8.) USHG is a Delaware corporation with its principal place of business in Texas. (*Id.* ¶¶

3, 4.) He avers that USHG has never been registered to do business in Florida, never had a mailing address in Florida, and never had an office in Florida. (*Id.* ¶¶ 5–7.) USHG does not market, sell, or underwrite any insurance or other products or services in Florida. (*Id.* ¶ 8.) He states that USHG never authorized, initiated, made, placed, or directed the making of any calls or text messages to Plaintiff. (*Id.* ¶ 9.) Moreover, USHG never hired, contracted, or authorized anyone to make telemarketing calls or text messages in Florida. (*Id.* ¶ 10.) These allegations are sufficient to contest the factual basis for plaintiff's jurisdictional allegations, in that it contradicts Plaintiff's allegations that it committed a tort in Florida.

Therefore, the burden returns to Plaintiff. The undersigned notes that Plaintiff did not file an affidavit or declaration in support of his response. Nevertheless, the Court will consider the relevant arguments made in Plaintiff's response brief to the extent it points the Court to relevant allegations in the Second Amended Complaint. The Court agrees with Plaintiff that the Kober Declaration does not sufficiently rebut Plaintiff's allegations that the persons who sent him text messages were acting on behalf of USHG. (Doc. 51 at 4.) The persons who sent Plaintiff the text messages had websites that reference both USHA and USHG. For example, Exhibit A contains USHG's company name at the top of the webpage, with a USHA email address. (Doc. 31, Ex. A.) Moreover, links are included directing a party to both USHA and USHG. (*Id.*) The Kober Declaration does nothing to directly address this issue.

Courts in this district have established that "under federal common law principles of agency, a party may be vicariously liable for TCPA violations even if that

party did not initiate or make the calls at issue." *Worsham v. TSS Consulting Grp., LLC*, No. 6:18-CV-1692-LHP, 2023 WL 2664203, at *6 (M.D. Fla. Mar. 28, 2023) (citing cases); *Keim*, 199 F. Supp. 3d at 1368 (finding that text messages sent on behalf of an agent is enough to establish personal jurisdiction under the TCPA). Drawing the inferences in Plaintiff's favor, as the court must, the undersigned concludes that Plaintiff has alleged enough to demonstrate that USHG had a hand in the alleged TCPA violations.

Therefore, the undersigned concludes that the Court may exercise specific jurisdiction over USHG under Florida Statute § 48.193(1)(a)(2).

### 2. Due Process

To determine whether exercising specific personal jurisdiction comports with due process, courts employ a three-part test, which examines:

> whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum [("Relatedness Prong")]; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws [("Purposeful Availment Prong")]; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice [("Fair Play Prong")].

*Louis Vuitton*, 736 F.3d at 1355 (internal quotation marks omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted).

Based on the Complaint, the Relatedness Prong is met. This requires a "direct causal relationship among the defendant, the forum, and the litigation," *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (internal quotation marks omitted), which Plaintiff shows here by alleging that his TCPA claim arises out of Defendants sending the text messages to him in Florida (*see* Doc. 31 ¶¶ 6, 38).

Regarding the Purposeful Availment Prong, because this case involves an intentional tort, there are two applicable tests to determine whether purposeful availment has occurred: (1) the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783 (1984); or (2) a traditional purposeful availment analysis. *See Louis Vuitton*, 736 F.3d at 1356–57. Under the *Calder* effects test, a nonresident defendant's tort must have been: "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Lovelady*, 544 F.3d at 1286. Here, the allegations provide that Defendants intentionally sent the text messages to Plaintiff in Florida. (*See* Doc. 31 ¶¶ 6, 38.) By sending the text messages to Plaintiff, USHG aimed its tortious conduct at Florida, so it should have anticipated that any resulting injuries would occur in this state. The Court therefore finds that, under the effects test, Plaintiff has satisfied the Purposeful Availment Prong.

Finally, the Court concludes that the Fair Play Prong is also satisfied. "Relevant factors include the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Lovelady*, 544 F.3d at 1288. First, USHG has not asserted that exercising personal jurisdiction over it would offend the

traditional notions of fair play and substantial justice. (*See generally* Doc. 45.) There is no indication that adjudicating this case in Florida would be unconstitutionally burdensome for it. Second, "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Lovelady*, 544 F.3d at 1288. Third, Plaintiff has an interest in obtaining relief in Florida, where his alleged injuries occurred. *See id.* (explaining that a "plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy"). Last, the Court cannot conceive of any interest of the judicial system which would be thwarted by this decision. With this, the undersigned respectfully recommends that that it may exercise personal jurisdiction over USHG.

### C. Failure to State a Claim – 12(b)(6)

Lastly, USHG argues that Plaintiff has failed to state a claim against it. (Doc. 45 at 20.) USHG's arguments for dismissal of Counts III and IV are moot, as the presiding District Judge has dismissed those claims. (Doc. 52 at 9.) Therefore, the Court looks to USHG's arguments as to Counts I and II of the Second Amended Complaint.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007)). Mere naked assertions are also insufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* In addition, all reasonable inferences should be drawn in favor of the plaintiff. S*ee Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam).

USHG attempts to incorporate by reference the same arguments it made for dismissal of Counts I and II against USHA in a prior Motion to Dismiss. (Doc. 45 at 21.) This practice is not permitted, in part because this would violate page limitations for motions. The only argument Defendant has asserted in the instant Motion—separate from this incorporation by reference—is that the Second Amended Complaint fails to plausibly allege that USHG was acting as an agent for the persons who texted Plaintiff. (*Id.* at 22.) The undersigned concludes differently.

The Second Amended Complaint states that the persons who texted Plaintiff appear to be affiliated with USHG in some way. Regarding Texts 1–7, Plaintiff alleges that he replied to one of the text messages asking the representative, Brandon Martinez, to email Plaintiff his company's website. (Doc. 31 ¶¶ 42, 43.) The representative responded to Plaintiff with a link to his agent's website, at https://www.ushagent.com/BrandonMartinez. (*Id.* ¶ 44; Doc. 31, Ex. A.) Exhibit A

contains USHG's company name at the top of the webpage, with a USHA email address. (Doc. 31, Ex. A.) Moreover, links are included directing a party to both USHA and USHG. (*Id.*)

Regarding Texts 8–15, Plaintiff alleges he attempted to call and message the number that had been messaging him for the purpose of determining the responsible party. (Doc. 31 ¶¶ 46, 47.) Plaintiff received a phone call from a telemarketer who then transferred him to a woman named Jennifer Maser. (*Id.* ¶¶ 47, 50.) Ms. Maser informed Plaintiff that "her company was called USHealth Advisors" and provided the website to Plaintiff as ushealthgroup.com. Ms. Maser's email address was also associated with USHA. (*Id.* ¶¶ 51, 52; Doc. 31, Ex. B.) Plaintiff further alleges he received Texts 16–21 from Ms. Maser. (Doc. 31 ¶ 56.)

Here, the representative directed Plaintiff to a USHG-affiliated website. As before, at this stage of the litigation, the undersigned concludes that this is enough to establish TCPA liability of USHG. *See Spiess v. CHW Grp., Inc.*, No. 8:19-cv-153-T-30CPT, 2019 WL 2183076, at *1 (M.D. Fla. May 20, 2019) (concluding, at the motion to dismiss stage, that defendant had fair notice of the claim, where plaintiff alleged defendant placed violative TCPA phone calls to him and plaintiff spoke to defendant's agents, which the court interpreted as individuals who worked for defendant).

### III. RECOMMENDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court **DENY** Defendant USHEALTH Group, Inc.'s Motion to Dismiss

Plaintiff's Second Amended Complaint (Doc. 45).

## NOTICE TO PARTIES

The party has **fourteen days** from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on July 24, 2024.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE