# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JOSHUA CACHO,                          **CASE NO.:** 6:23-cv-737-CEM-UAM

     Plaintiff,

    v.

USHEALTH ADVISORS, LLC and
USHEALTH GROUP, INC.,

     Defendants.

_____/

### DEFENDANTS' MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWER AND INCORPORATED MEMORANDUM OF LAW

Defendants USHEALTH Advisors, LLC ("USHA") and USHEALTH, Inc. ("USHG"), by and through undersigned counsel, hereby file this motion, pursuant to 28 U.S.C. § 1927 and the Court's inherent power, for entry of an order imposing sanctions jointly and severally against Andrew Thomasson, Zachary Zermay, Thomasson PLLC, Zermay Law, P.A, and Plaintiff Joshua Cacho in the amount of Defendants' attorneys' fees and costs incurred in dealing with and responding to Plaintiff's dilatory conduct, including but not limited to, Plaintiff's Motion to Stay Proceedings and Compel Arbitration, (Dkt. No. 92), Motion to Stay based on that Motion to Compel Arbitration, (Dkt. No. 93), the activity resulting from and related to those filings, and in connection with this Motion for Sanctions.

## PRELIMINARY STATEMENT

They say that imitation is the sincerest form of flattery.  But Plaintiff's

imitation of a motion to compel arbitration previously filed by Defendant's counsel is reckless, frivolous, done in bad faith, and thus merits sanctions. Plaintiff's Motion to Compel Arbitration, (Dkt. No. 92) (the "Motion to Compel Arbitration"), and the follow-on Motion to Stay based thereon, (Dkt. No. 93), was filed in a desperate and spurious attempt to avoid the position Plaintiff and his counsel placed themselves in at the close of discovery, having been sanctioned once, subject to sanctions under a pending motion, and still in disobedience of the discovery order that resulted in the first sanctions award (resulting in yet another motion for sanctions). Against this background of self-created peril, and apparently because of the hastiness in which they sought to extricate themselves from further proceedings before this Court, Plaintiff and his counsel filed a Motion to Compel Arbitration that is built on falsehoods and borrows heavily from a motion that counsel for Defendants filed for another client – not either of the Defendants – in the Northern District of Ohio.[1] Indeed, ***virtually all*** of the legal argument in Plaintiff's Motion to Compel Arbitration, except for three paragraphs, was taken from the motion filed in *Davis*. *See* Exs. A and B.[2]

That is why much of the case law from Plaintiff's Motion is oddly enough

---

[1] The case is *Davis v. Clear Health, LLC*, No. 1:24-cv-00187-PAB (N.D. Ohio). That case, unlike this one, involved an actual existing arbitration agreement (that the plaintiff entered into by making a submission on a website). As is obvious to anyone from a preliminary review, there is no arbitration agreement at all in this case, just a "notice" that one *would be included in a subsequent agreement* (an insurance policy) had Plaintiff finished the application process and procured such a policy. Instead, he withdrew and cancelled his application three days later.

[2] The portions of both the *Davis* brief that Plaintiff's counsel copied and pasted with only slight modification and Plaintiff's Motion to Compel that reflect the wholesale lifted text are highlighted in yellow in Exhibits A and B.

from the Sixth Circuit. It also explains the nonsensical assertion that this lawsuit involves telephone calls and "Plaintiff's transfer to Defendants," (Mot. at 11), which actually has nothing to do with this case about text messages but was the factual background in the case from which Plaintiffs lifted the language. In the next sentence, Plaintiff bizarrely relies upon a decision that allegedly refers to "similar language in an arbitration agreement [found to have] encompassed the plaintiff's TCPA claims," but that, too, has no bearing on the purported "Arbitration Agreement" here, and instead was about the language that applied in *Davis*. *Id.* at 11-12. To further highlight the reactive, unconsidered, and slapdash nature of Plaintiff's Motion, his lawyers even copied the footnote that quoted so-called "similar language" that is not similar to anything in the language Plaintiff is relying upon in the insurance application, and how there is no good faith basis for the arguments and assertions made in the Motion to Compel Arbitration, which describe situations and facts that have no application to this case. That is not how a reasonable attorney acts.

But most egregious of all is filing a Motion to Compel Arbitration when ***there is no arbitration agreement***. As this Court observed, "[w]hat Plaintiff has filed with the Court appears to be a document that contains information that tells the applicant for insurance that if insurance is provided to the applicant, then disputes about insurance will be resolved by way of arbitration. Neither the motion, nor the document, seem to suggest a contract." Dkt. No. 97 at 2. Indeed, what Plaintiff relies upon is an application for insurance that Plaintiff submitted –

and immediately withdrew – to an insurance carrier known as Freedom Life Insurance Company of America ("Freedom Life"), and the application provides "notice" that any actually procured insurance coverage plan would include a three-step dispute resolution process ending in arbitration.  No matter how many times Plaintiff and his lawyers write or say it, the language in the application is not, and cannot reasonably be interpreted to be, an "arbitration agreement."

Nonetheless, Plaintiff and his lawyers repeatedly refer to some purported agreement to arbitrate that Plaintiff and Defendants allegedly entered into.  Those statements are all false and contrary to settled law.  Even worse, for some inexplicable reason, Plaintiff's newly-retained counsel have fired off dozens of e-mails and filings that have sought to personalize much of the disputes and proceedings.  But if Plaintiff and his counsel thought that by using Defendants' counsel's work product for a shortcut that could also be used as a rhetorical argument to have Defendants' counsel hoisted by their own petard, they are mistaken.  To begin with, "there is never an excuse for appropriating the work of another lawyer—let alone opposing counsel—and presenting it as one's own." *Stilp v. Borough of W. Chester*, No. CV 21-3989, 2022 WL 10208256, *1 (E.D. Pa. Oct. 17, 2022) (imposing sanctions).  And *Davis* involved an actual arbitration agreement contained in terms and conditions that were agreed to as part of making a submission on a website, not a mere notice in an application for insurance coverage that was very shortly thereafter withdrawn.  Plaintiff's Motion to Compel Arbitration ignores that significant distinction, something a reasonable attorney

would not have done given the lack of any legal or factual basis to the Motion to Compel Arbitration.

Not content to misrepresent the application's *notice* provision, they also mischaracterize it as something Defendants and counsel for Defendants have previously sought to enforce in a TCPA dispute. When Plaintiff's lawyer states under penalty of perjury that Defendants' counsel and Defendants "routinely enforce these same arbitration agreements for these same Defendants," (Dkt. No. 92-1 at ¶ 15), seemingly a lynchpin for Plaintiff's Motion and the bogus attack on Defendants' counsel, that is an objectively false statement. In neither *Davis* nor in the *Robertson* case referred to in counsel's declaration has arbitration been sought based on a notice in an insurance application. Defendants' counsel has never sought to compel arbitration based on the notice. If Plaintiff's counsel is going to make personal attacks on their adversary, they should get their facts straight. The reality is that Plaintiff's Motion is built on falsehoods and legally frivolous arguments. There is no "Arbitration Agreement."

Plaintiff and his lawyers also attack Defendants for producing the application when they did, arguing that it was required to be produced earlier, but never identify any discovery request to which it would have been responsive. There is none. Nor did Defendants' counsel claim they "'inadvertently' forgot to produce" "scores of pages of materially relevant documents and ESI." Mot. at 4. Counsel's language referred only to one, four-page document for a Bates number range that clearly had been skipped in a prior production. Furthermore, the application was

produced only four days after counsel obtained it, and it was not produced to support an arbitration agreement – because there is none – but to reflect evidence of Plaintiff engineering telephone solicitations to later sue over, including filling out an application and spending twenty-four minutes on a "verification call." in which he provides false information.

The Motion to Compel Arbitration does not mention that Plaintiff had the Application that contains the supposed "Arbitration Agreement" since it was submitted – February 28, 2023 – and, ***as reflected in documents Plaintiff himself produced in this lawsuit***, he cancelled and withdrew his application three days later. Moreover, the law does not allow a party under Plaintiff's circumstances to litigate for nearly two years and then decide, after his strategy of defying court orders and numerous rules worked out unfavorably, to seek arbitration instead.

At every single turn, the baselessness of Plaintiff's Motions and the lack of a reasonable inquiry is readily apparent. No attorney acting reasonably under the circumstances would think the "arbitration notice" constitutes an arbitration agreement or that it could require the arbitration of this lawsuit on the eve of the discovery period, especially under the circumstances of this case. At 12:25 p.m. today, Plaintiff withdrew his Motion to Compel Arbitration, something Defendants' counsel had requested on January 27 and 28, 2025 "before we incur additional fees in responding to these baseless motions . . . ." Dkt. No. 99-1, PageID 1396, 1399, 1405, 1406. Rather than promptly withdrew the Motions, or even

respond to the undersigned advising that they were considering doing so, Plaintiff doubled-down by filing an objection with the Magistrate Judge's order denying the Motion to Stay, without addressing the Court's main finding that the assertion of the existence of an arbitration may lack merit, and launched an irrelevant and inaccurate diatribe against Defendants' counsel, arguing these e-mails "are indicative of an improper purpose" and his lawyer wrote they "caused me great concern." Dkt. No. 98 at 1; Dkt. No. 99-1 at ¶ 4. The District Judge found the discussion irrelevant, rejected that characterization, and found "none of the emails appear inappropriate," in part because "[d]efense counsel believes Plaintiff's motions are frivolous . . . ." *See* Dkt. No. 102 at 6 n.3.[3]

Plaintiff and his counsel do not get to avoid sanctions under 28 U.S.C. § 1927 or the inherent power of the Court by later withdrawing the offending filings. The filing of the Motions required the Court to address them, as well as an "emergency" objection, and Defendants were forced to incur attorneys' fees to prepare responses. Plaintiff's and his lawyers' conduct brings to mind a literary quotation: "They were careless people, Tom and Daisy – they smashed up things and creatures and then retreated back into their money or their vast carelessness, or whatever it was that kept them together, and let other people clean up the mess

---

[3] Nor are any of the e-mails consistent with the assertion of "direct[ ] threat[s] in emails to inflict lasting, public damage to [Plaintiff's counsel's] professional reputations unless Plaintiffs agree to dismiss Mr. Cacho's worthy legal claims *with prejudice*." Dkt. No. 98 at 2. Mr. Zermay also fails to mention that he and his colleague stated on a January 13, 2025 telephonic meet and confer that they were finalizing a complaint to be filed by them imminently for Mr. Cacho against Defendants' counsel, individually, and Defendants in the Western District of Texas on wholly frivolous and baseless grounds for breach of contract and fraud, and that a motion for disqualification would be filed in this case on those same grounds.

they had made." F. Scott Fitzgerald, *The Great Gatsby* ch. 9 (1925).

Plaintiff and his lawyers do not have that luxury here, and cannot avoid the mess that they made through their obstructive and frivolous filings, made to avoid adverse discovery and sanctions rulings. Defendants therefore request an award of sanctions, imposed jointly and severally against Andrew Thomasson, Zachary Zermay, Thomasson PLLC, Zermay Law, P.A., and Plaintiff Joshua Cacho, in the amount of Defendants' attorneys' fees and costs incurred in responding to Plaintiff's Motion to Stay Proceedings and Compel Arbitration, (Dkt. No. 92), Motion to Stay based on that Motion to Compel Arbitration, (Dkt. No. 93), and in connection with this Motion for Sanctions.

## STATEMENT OF FACTS

This is Plaintiff's second of three lawsuits against USHA and/or USHG. He filed the first lawsuit in this Court under the caption *Cacho v. USHEALTH Group, Inc.*, No. 6:22-cv-01439-CEM-EJK (M.D. Fla.). Plaintiff had filed three complaints against USHG in that action before the case was dismissed for failure to comply with the Court's Initial Order regarding Case Management and Deadlines. *See id.* at Dkt. No. 24 (Jan. 24, 2023).

This lawsuit was filed on April 23, 2023. *See* Dkt. No. 1. In this case, too, Plaintiff has filed three complaints. *See id.* & Dkt. Nos. 13 & 31. The Second Amended Complaint alleges twenty-one violative text messages from June 24,

2022 through March 2, 2023.[4]  *See* Dkt. No. 31 at ¶ 57. Plaintiff served discovery requests on August 22, 2023 and January 16, 2024, (Exs. C & D), produced numerous documents and served interrogatory responses, and filed a motion to compel discovery.  *See* Dkt. No. 57.  Among other things, he agreed to sit for a deposition in Orlando, Florida and noticed and/or subpoenaed ten depositions (but without bothering to coordinate them). *See generally* Dkt. Nos. 81-83, 88.

Plaintiff's Motion is based on a purported "Arbitration Agreement." *See* Dkt. No. 92-3 at USHA000446.  That is simply a *notice* in an application submitted to Freedom Life that the certificate of coverage for the insurance plan(s) he was applying for contains an arbitration provision over disputes that may arise.  *Id*. The information that Plaintiff provided for the application was "verified" during a twenty-four-minute-long telephone call, which occurred on February 28, 2023. The application and a recording of the telephone call were produced by Defendants in discovery (even though they are not responsive to any of Plaintiff's discovery requests) with a confidentiality designation to protect Plaintiff's personal information.

Plaintiff, of course, knew about the application.   He provided the information for it and participated in a lengthy "verification call" with Freedom Life.  Plaintiff also received a link to a copy of the Application before the call.  *See*

---

[4] This date is important.  The application upon which his Motion is based was submitted on February 28, 2023 and cancelled by Plaintiff on March 3, before Freedom Life took any action on it on March 3, 2023.  Thus, virtually every text message Plaintiff says is at issue in this case occurred before he ever submitted the application.  There is no agreement, so the Court does not need to reach this issue, but it is additional evidence of the baseless nature of the Motion. *See*

Ex. E at USHA000361 ("Your application has been received and is being processed. For your convenience, we have provided links to your application and information brochures for the products you selected with your Agent.").  He discusses part of that process in the Complaint.  *See* Dkt. No. 31 at ¶¶ 49-50.  And, indeed, Plaintiff's own production refers to the fact that the "verification call" with "the underwriter" – *i.e.*, Freedom Life – will be taking place:



Ex. F (filename "Numbers for RFA_s 6.pdf").[5]

With respect to the coverage plans or certificates of coverage referred to in the "arbitration notice," Plaintiff never received any of those plans or certificates of coverage, nor did he ever have insurance coverage with Freedom Life (or USHA or USHG).  Only a few days after the verification call, on March 3, 2023, Plaintiff cancelled his application.  As his own production shows, he texted the following to Jennifer Maser:



---

[5] *Pro Se* Plaintiff's production did not use Bates numbers.

Ex. G (filename "Numbers for RFA_s 9.pdf"). Plaintiff also quotes this text
message in the Complaint. *See* Dkt. No. 31 at ¶ 55. As a result, Plaintiff was sent a
letter confirming that he "decided to withdraw [the] application . . . ." Ex. E at
USHA000357 & USHA000358.

Because Plaintiff persisted in filing a Motion to Compel Arbitration and
refused to immediately withdraw his Motion to Compel Arbitration following
requests from counsel for Defendants, (*see* Dkt. No. 99-1, PageID 1396, 1399, 1405,
1406), Defendants and their counsel spent many hours preparing an opposition
brief to the Motion to Compel Arbitration, which was ready to be filed this
afternoon. A true and correct copy of the finalized draft is attached hereto as
Exhibit H.

## **ARGUMENT**

## I.  **APPLICABLE LEGAL STANDARDS**

The Court has authority to impose sanctions upon an attorney under 28
U.S.C. § 1927. That statute provides, "[a]ny attorney or other person admitted to
conduct cases in any court of the United States or any Territory thereof who so
multiplies the proceedings in any case unreasonably and vexatiously may be
required by the court to satisfy personally the excess costs, expenses, and attorneys'
fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. That
language imposes three essential requirements for an award of sanctions:

> First, the attorney must engage in "unreasonable and vexatious" conduct.
> Second, that "unreasonable and vexatious" conduct must be conduct that
> "multiplies the proceedings." Finally, the dollar amount of the sanction
> must bear a financial nexus to the excess proceedings, *i.e.*, the sanction may

not exceed the "costs, expenses, and attorneys' fees reasonably incurred
because of such conduct."

*Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir.1997).

"[A]n attorney multiplies proceedings 'unreasonably and vexatiously' within
the meaning of the statute . . . when the attorney's conduct is so egregious that it is
'tantamount to bad faith.'" *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d
1230, 1239 (11th Cir. 2007) (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th
Cir. 1991)). This, however, does not require a showing of subjective bad faith, that
is, that the attorney acted with "malicious intent or a bad purpose." *Id.* at 1240.
Instead, "objectively reckless conduct is enough to warrant sanctions even if the
attorney does not act knowingly and malevolently" in multiplying proceedings. *Id.*
at 1241.

Sanctions may also be imposed under the court's inherent power, which are
particularly appropriate "when a party" or attorney or law firm "has acted in bad
faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*,
501 U.S. 32, 45–46 (1991). While sanctions under the court's inherent authority
are generally subject to a requirement of subjective bad faith, the Eleventh Circuit
has clarified that "in the absence of direct evidence of subjective bad faith, this
standard can be met if an attorney's conduct is so egregious that it could only be
committed in bad faith." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851
F.3d 1218, 1224-25 (11th Cir. 2017). This is established by showing a filing was
submitted recklessly and constitutes a "frivolous argument . . . ." *Id.* at 1225.

## II.    PLAINTIFF'S MOTIONS ARE FRIVOLOUS

In his Motion to Compel Arbitration, Plaintiff argues "[t]he Parties entered into a valid agreement requiring them to arbitrate Cacho's TCPA claim against Defendants concerning calls resulting from his application for insurance when he agreed to the terms on the Freedom Life Insurance Company of America, [sic] including the arbitration provision," which Plaintiff argued in that motion and the Motion to Stay required a stay of all proceedings.  Dkt. No. 92 at 8.  *See also* Dkt. No. 93.  Plaintiff expressly premises his Motion to Compel Arbitration, in the Motion and the supporting attorney declaration, on some purported agreement between Plaintiff and Defendants to arbitrate:

- "Defendants' agreement with Mr. Cacho,"

- An "arbitration agreement between the parties,"

- "The Parties entered into a valid agreement requiring them to arbitrate Cacho's TCPA claim against Defendants . . . .,"

- "Defendants have produced a contract . . . which demonstrates that the Parties agreed to arbitration,"

- "One of Defendant's documents produced on January 17, USHA000442-USHA000464, contains an arbitration agreement between Defendants and Mr. Cacho."

Dkt. No. 92 at 3, 4, 8, 10; Dkt. No. 92-1 at ¶ 11.[6]

---

[6] Counsel's assertion that "more than half" of a 108-page production contains "agreements to arbitrate," (Dkt. No. 92-1 at ¶ 7), shows the extremely liberal view Plaintiff's lawyers have as to what constitutes an agreement to arbitrate.  The last of the cited documents is the application, and the other documents cited by Mr. Zermay are simply brochures about various plans or offerings – ***none of which Plaintiff signed up for*** – that merely advise of the mandatory dispute resolution procedures that would apply if he had contracted for them.  *See* Dkt. No 92-3; Ex. I at USHA000386; Ex. J; Ex. K.  This further highlights the lack of good faith in Plaintiff's Motions and arguments about arbitration agreements.

Those are completely frivolous and baseless assertions made in bad faith in a desperate attempt to try to escape a court case that Plaintiff now finds unfavorable, largely as a result of his and his lawyer's contumacious and sanctionable conduct.  No attorney acting reasonably under the circumstances would believe from the "arbitration notice" there is an arbitration agreement. There is simply no basis in fact or law for that argument, and "if the court concludes that [Plaintiff's] motion to compel arbitration was not only unmeritorious, but also frivolous, the court can levy sanctions . . . ."  *Int'l Bhd. of Teamsters Loc. 947 v. Nat'l Lab. Rels. Bd.*, 66 F.4th 1294, 1296 (11th Cir. 2023).  There are a host of reasons to do so here.

### A.    There is No Basis in Fact or Law to Argue the Application's "Notice" Is an "Arbitration Agreement"

The burden of establishing the existence of an agreement to arbitrate rests on the party moving to compel arbitration.  *In re W. Wiand*, No. 8:10-cv-71-T-17MAP, 2011 WL 4532070, *4 & n.13 (M.D. Fla. June 8, 2011).  *See also Compere v. Nusret Miami, LLC*, 396 F. Supp. 3d 1194, 1199 (S.D. Fla. 2019).  What Plaintiff's Motion frivolously contends is an arbitration agreement is merely a *notice* in an *application* for health insurance coverage that the applied-for plan would contain an arbitration provision.  That has no basis in fact or law.  The language Plaintiff relies upon simply puts him on notice that

> [t]he insurance laws in your state allow for Arbitration Provisions in health coverage plans as a more efficient and economical means of resolving a dispute.  Please be advised that the insurance coverage you are applying for contains a provision requiring participation in an

alternative dispute resolution that consists of . . . binding arbitration. Dkt. No. 92-3 at USHA000446.

Plaintiff does not explain in the Motion to Compel Arbitration how that qualifies as an agreement, or provide any support for his seeming argument that mere notice of an arbitration provision in a forthcoming document somehow constitutes an arbitration agreement. Quite simply, there is no agreement presented in this case to arbitrate, period, that can be the subject of a motion to compel arbitration under 9 U.S.C. § 4. *Williams,* 2008 WL 686222 at *4. As the Court observed on its initial review of the document, what Plaintiff relies upon is merely a "notice" of what is to come, (Dkt. No. 97 at 2), something Plaintiff failed to mention never did come because of Plaintiff's own decision to withdraw and cancel that insurance application.

In contriving a supposed arbitration agreement, Plaintiff asserts Mississippi law governs and that the application "demonstrates that the Parties agreed to arbitration" because there was a "meeting of the minds . . . ." Mot. at 10. The conclusory nature of that assertion highlights the frivolousness of Plaintiff's Motion to Compel Arbitration. Plaintiff does not explain how the "arbitration notice" in the application qualifies as an agreement under any body of law. No reasonable attorney would think they could so flippantly satisfy their burden of showing the existence of an arbitration agreement.

Everything Plaintiff's Motion argues is wrong. As an initial matter, it is unclear to what the "Mississippi law" provision applies to, as it refers to a "policy."

Dkt. No. 92-3 at USHA000447. Regardless, any choice of law provision in the purported "contract" is of no moment given Defendants "challenge . . . the very existence of an agreement," because "applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." *Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp. 3d 1252, 1259 (S.D. Fla. 2021) (quoting *Herman v. Seaworld Parks & Ent., Inc.*, No. 8:14-cv-3028-T-35JSS, 2016 WL 7447555, *3 n.2 (M.D. Fla. Aug. 26, 2016)). Since Plaintiff was a Florida resident at the time of the application, Florida choice-of-law rules weigh in favor of applying Florida law. *See id.*

Plaintiff does not bother to establish how the requirements for a contract under Florida law are established through the Application and its "arbitration notice." *See, e.g.*, *Derriman v. Mizzen & Main LLC*, 710 F. Supp. 3d 1129, 1138 (M.D. Fla. 2023); *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). Nowhere does Plaintiff point to or explain as a factual or legal matter how through his application to Freedom Life there was an offer or that anyone assented to an "arbitration agreement" or that the requisite definiteness of terms existed.

In fact, Plaintiff's repeated assertions of an agreement from his application flies in the face of clear Florida law that, "in the absence of express provisions to the contrary, the application of one seeking insurance only constitutes an offer, and a legally enforceable contract is not created until the insurer accepts the offer. ***The application itself is not a contract between parties***." *Campbell v. Household Life Ins. Co.*, 77 So. 3d 772, 775 (Fla. 5th DCA 2011) (emphasis added)

(internal citations omitted).   Here, Freedom Life never accepted Plaintiff's application, in part because Plaintiff cancelled his application.   Ex. E at USHA000357 & USHA000358; Ex. G.  *See* Dkt. No. 31 at ¶ 55.  That is dispositive. Under Florida law, there can be no agreement (to arbitrate or for anything else) from the mere submission of an application, which precludes Plaintiffs' attempt to turn the Application and its "arbitration notice" into some arbitration agreement as a matter of settled law.

Moreover, Plaintiff's papers themselves are inconsistent with any showing of definite terms, as they are not able to keep straight what agreement is being divined from the "arbitration notice" that clearly is not an agreement.  Plaintiff's Motion to Compel Arbitration contends "[t]he Parties entered into a valid agreement requiring them to arbitrate Cacho's TCPA claim against Defendants concerning calls resulting from his application for insurance when he agreed to the terms on the Freedom Life insurance Company of America, [sic] including the arbitration provision."  Mot. at 8.  That would then apply to only the six of the twenty-one text messages identified in the Complaint that occurred after the application was submitted on February 28, 2023.  *See* Dkt. No. 31 at ¶ 57.[7] Plaintiff's Motion to Stay, however, describes a far greater scope to the imagined "Arbitration Agreement," stating, "the Arbitration Motion shows the Parties' [sic] agreed *all* their 'disputes' *must* be resolved by arbitration . . . ."  Dkt. No. 93 at 4.

---

[7] At most, then, under Plaintiff's own Motion to Compel Arbitration, only those six text messages would be subject to the so-called "Arbitration Agreement."  That renders Plaintiff's assertions that the entirety of the case must proceed to arbitration frivolous.

So, which one is it? The answer, of course, is "neither," because it is clear from reading the application and the law that there is no arbitration agreement.

Plaintiff tries to avoid any scrutiny of his frivolous assertion of an "Arbitration Agreement" by referring to case law regarding delegation provisions. That is unavailing, especially since Plaintiff is relying on copied and pasted case law from the Sixth Circuit. This court, however, is located in the Eleventh Circuit, and in the Eleventh Circuit, "notwithstanding an arbitration agreement that incorporates the AAA Rules, it is improper for an arbitrator to decide threshold issues of arbitrability when the parties dispute whether an arbitration agreement exists between them." *Santiago v. Neno Rsch., Inc.*, No. 8:24-CV-01330-WFJ-AAS, 2024 WL 4625783, *3 (M.D. Fla. Oct. 30, 2024). The Court of Appeals for the Eleventh Circuit has rejected Plaintiff's very argument repeatedly. *See Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1118 (11th Cir. 2020); *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 855 (11th Cir. 1992).[8] As in *Lavigne*, a controlling decision issued by the Eleventh Circuit, a delegation clause cannot be given effect where the existence of an arbitration agreement is not established.

### B. Plaintiff's Eleventh-Hour Attempt to Seek Arbitration, Even if Valid, is Also Frivolous Because of Plaintiff's Waiver

There is yet another reason why the Motion to Compel Arbitration is frivolous. Even if there had been an "Arbitration Agreement" regarding any of the

---

[8] *See also, e.g., Oxium LLC v. OXO H2o Sols. Inc.*, No. 6:22-CV-1068-RBD-DCI, 2024 WL 3634917, *3 (M.D. Fla. Mar. 6, 2024); *Calderon v. Sixt Rent a Car, LLC*, No. 19-62408-CIV, 2021 WL 1325868, *4-5 (S.D. Fla. Apr. 9, 2021).

text messages at issue, (something Plaintiff says but never shows or places within the governing legal principles), any attorney acting reasonably would know that Plaintiff had waived any right to compel arbitration.  "Arbitrability waiver should now be evaluated under the same standard set by the applicable state law governing other contract waiver issues." *Adams v. Lashify*, Inc., 689 F. Supp. 3d 1146, 1158 (M.D. Fla. 2023).  "Under Florida law '[a] party's contract right may be waived by actively participating in a lawsuit or taking action inconsistent with that right.'" *Id.* (quoting *Klosters Rederi A/S v. Arison Shipping Co.*, 280 So. 2d 678, 681 (Fla. 1973)).

It is undisputed that Plaintiff applied on February 28, 2023 and received an e-mail that provided him with a link to a copy of the application.  Dkt. No. 92-3 at USHA000447; Ex. E at USHA000361.  Indeed, Plaintiff refers to the process of providing the information for the application in his Complaint and receiving an e-mail with "the policy details."  Dkt. No. 31 at ¶¶ 49-52.  As if completing the application, participating in the verification call, and receiving the e-mail with a copy of the application were not enough, ***Plaintiff of course was well aware of his participation in the application process because he knew enough to cancel and withdraw it just three days later.***  Ex. E at USHA000357 & USHA000358; Ex. G.  *See* Dkt. No. 31 at ¶ 55.  Plaintiff was therefore aware at all times of this application with the "notice" at issue.  Yet, he commenced this lawsuit a month afterwards, after having previously sued USHG and filed another lawsuit against these Defendants in the Western District of Texas

on September 25, 2024. *See Cacho v. US Health Advisors, LLC*, No. 3:24-cv-00350-LS (W.D. Tex.).[9]

The law is clear that "a party must reveal its intent to arbitrate at an early stage of litigation," and "Plaintiffs waive arbitration simply by filing a lawsuit." *Lamonaco v. Experian Info. Sols., Inc.*, No. 6:23-CV-1326-PGB-LHP, 2024 WL 1703112, *9 (M.D. Fla. Apr. 19, 2024) (collecting cases) (internal quotation omitted). A reasonable attorney would have known that Cacho's commencement of litigation under these circumstances creates a waiver of the right to compel arbitration. Plaintiff cannot argue a document that he filled out and received **before even filing the lawsuit** contains an arbitration agreement that he is entitled to enforce *nearly two years into a lawsuit that he himself filed.*

## III.    PLAINTIFF'S COPYING IS ALSO SANCTIONABLE

Sanctions against Plaintiff's counsel are also appropriate for the nearly complete copying of undersigned counsel's motion to compel arbitration in *Davis*. It is no exaggeration that the vast majority – **all but three paragraphs** – of the "Argument" in Plaintiff's Motion to Compel Arbitration was lifted almost verbatim from the motion Defendants' counsel filed in *Davis*. *See* Exs. A & B. That is why Plaintiff repeatedly refers to Sixth Circuit case law, describes telephone calls unlike

---

[9] Plaintiff's counsel advances a false narrative that Defendants were required to produce Plaintiff's insurance application previously even though he identifies no discovery request to which it would be responsive (there are none). *See* Mot. at 4. He also falsely describes Defendants' counsel as claiming they "'inadvertently' forgot to produce" "scores of pages of materially relevant documents and ESI," when that language referred only to one four-page document for a Bates number range that clearly had been skipped in prior productions. *See id.*; Dkt. No. 92-2 at 2 (showing attachment of USHA000327-USHA000330.pdf).

anything alleged in this case, and quotes language from an arbitration agreement that is claimed to be "largely similar" to the language in the purported arbitration agreement Plaintiff seeks to enforce but looks nothing at all like it. *See* Mot. at 7-8, 11-12 & n.3. The copied and pasted text clearly relates to a different case.

Courts have harshly rebuked and sanctioned such "copy-and-paste" lawyering as "objectively unreasonable in light of [an attorney's] ethical obligations . . . ." *Stilp*, 2022 WL 10208256 at *3*; see also Conboy v. United States Small Bus. Admin.*, 992 F.3d 153, 158 (3d Cir. 2021) (imposing damages for frivolous appeal, stating "the copy-and-paste jobs before us reflect a dereliction of duty, not an honest mistake"); *In re Burghoff*, 374 B.R. 681, 684-688 (Bankr. N.D. Iowa 2007) (sanctioning attorney for filing two plagiarized briefs). Plaintiff's counsel should be sanctioned for this misconduct as well, especially when it comes against the false backdrop that Defendants' counsel and Defendants "routinely enforce these same arbitration agreements for these same Defendants." Dkt. No. 92-1 at ¶ 15. Plaintiff's counsel should have read those motions, and the copied and pasted text, much more closely before making false accusations aimed at suggesting hypocrisy.

## IV.    PLAINTIFF AND HIS COUNSEL SHOULD BE SANCTIONED JOINTLY AND SEVERALLY

Sanctions against Plaintiff's counsel and their law firms are appropriate under 28 U.S.C. § 1927 as well as the inherent power of the court for recklessly making and filing frivolous arguments. As the Court observed from just its initial review of the so-called "Arbitration Agreement," the relevant language merely

"tells the applicant for insurance that if insurance is provided to the applicant, then disputes about insurance will be resolved by way of arbitration," suggesting a lack of merit to the Motion to Compel Arbitration. Dkt. No. 97 at 2. The Court noted that it made that preliminary assessment "without a chance yet to review a response from the defendants . . . ." *Id.*

While this is not that response, the additional circumstances presented in this Motion were all known or should have been known to Plaintiff and his lawyers, further confirming the bad faith nature of their conduct. Obviously, the language in the "arbitration notice" is something an attorney should know does not qualify as an arbitration agreement. Even more, Plaintiff not only had the application from before the filing of this lawsuit, he cancelled it a few days later. *See* Dkt. No. 92-3 at USHA000447; Ex. E at USHA000357 & USHA000358; Ex. G. *See* Dkt. No. 31 at ¶ 55. A little more than a month after that, he filed this lawsuit. The attempt to invoke arbitration under those circumstances, only after being sanctioned and facing additional discovery sanctions and looking for any way out, runs afoul of settled law regarding waiver. Moreover, counsel should have known or at least researched the legal principles that preclude an insurance application from giving rise to an agreement. Instead of dealing with those obstacles, they elected to simply copy and paste from opposing counsel's brief in another case involving a wholly different arbitration agreement, set of facts, and controlling law, while at the same time making false attacks against Defendants and their counsel.

None of this conduct was in good faith, and it clearly constitutes the level of

bad faith required for the imposition of sanctions under 28 U.S.C. § 1927 and the inherent power of the Court.  In filing a Motion to Compel based on falsehoods, copied legal arguments that do not apply to this case, and making arguments contrary to numerous settled principles of law, including the need to establish an actual agreement between the parties, Plaintiff and his lawyers were reckless, made numerous frivolous arguments, and made the filings and multiplied proceedings for improper purposes, including to avoid further proceedings before the Court and try to avoid the imposition of sanctions.  *Accord Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003).

Defendants should not have had to incur attorneys' fees in having to respond to this groundless attempt to avoid the consequences of Plaintiff's and his counsel's prior misconduct, nor should the Court have had to put up with it.  For recklessly filing a frivolous Motion to Compel Arbitration and improperly seeking a stay of all proceedings on that basis, Plaintiff and his counsel should be sanctioned in the amount of the reasonable attorneys' fees and costs Defendants were forced to incur in responding to the Motion to Compel Arbitration, the Motion to Stay (Dkt. No. 93), and this Motion for Sanctions.

Sanctions under 28 U.S.C. § 1927 are properly awarded against Andrew Thomasson, Zachary Zermay, and their respective law firms, Thomasson PLLC and Zermay Law, P.A.  "In addition to using § 1927 as authority to impose sanctions against an attorney and the law firm, a court may also, under its inherent powers, sanction both an attorney and the attorney's law firm for bad faith litigation

conduct." *Taverna Imports, Inc. v. A & M Wine & Spirits, Inc.*, No. 15-24198-CIV, 2018 WL 3611405, *10 (S.D. Fla. July 27, 2018).  Plaintiff, as a party, is undeniably subject to sanctions under the Court's inherent power along with his lawyers and their law firms.  *See*, *e.g.*, *Qantum Commc'ns Corp. v. Star Broad., Inc.*, 491 F. Supp. 2d 1123, 1134 (S.D. Fla. 2007) ("[I]t is within a court's discretion to vindicate itself and compensate a victimized party by invoking the court's inherent power to sanction and requiring the bad-faith actor to pay for all of the victim's attorney's fees."), *aff'd*, 290 F. App'x 324 (11th Cir. 2008).

Because the conduct at issue – the filing of a Motion to Compel Arbitration that is frivolous, flies in the face of facts and legal consequences that were known or should have been known to both Plaintiff and his lawyers (such that Plaintiff cancelled the application and commenced this lawsuit with knowledge of it) – by both Plaintiff and his lawyers and their law firms runs afoul of both 28 U.S.C. § 1927 and the inherent power of the Court, the "parties that bear the brunt of the responsibility for the sanctionable conduct—Plaintiff and his . . . attorney[s]— should be jointly and severally liable for the sanction." *Trump v. Clinton*, 653 F. Supp. 3d 1198, 1232 (S.D. Fla. 2023).

The withdrawal of the Motion does not wipe away the excess attorneys' fees and diversion of judicial resources that Plaintiff and his lawyers caused by the frivolous and bad faith conduct, for an improper purpose.  *See*, *e.g.*, *Madison 92nd St. Assocs., LLC v. Marriott Int'l, Inc.*, No. 13 CIV. 291 CM, 2013 WL 5913382, *15 (S.D.N.Y. Oct. 31, 2013) (awarding attorneys' fees because movant was "forced to

incur significant expenses in preparing the motion to disqualify" that was mooted
by law firm's last-minute decision to withdraw).  Defendants' counsel, as one would
expect, began analyzing and preparing the responses to the frivolous Motion to
Compel Arbitration and Motion to Stay and continued working on them, having a
response ready to be filed today.  As *Madison 92nd Street*, Defendants "should not
be forced to bear this expense simply because [Plaintiff] ultimately, and belatedly,
conceded" its Motions had no merit.  *Id.*  That much was obvious from the start.

## CONCLUSION

For the foregoing reasons, Defendants USHEALTH Advisors, LLC and
USHEALTH Group, Inc., respectfully request entry of an order imposing sanctions
jointly and severally against Andrew Thomasson, Zachary Zermay, Thomasson
PLLC, Zermay Law, P.A, and Plaintiff Joshua Cacho in the amount of Defendants'
attorneys' fees and costs incurred in responding to Plaintiff's Motion to Stay
Proceedings and Compel Arbitration, (Dkt. No. 92), Motion to Stay based on that
Motion to Compel Arbitration, (Dkt. No. 93), and in connection with this Motion
for Sanctions, and any other relief the Court deems just and appropriate.

Dated: January 31, 2025            Respectfully submitted,

                                   GREENSPOON MARDER LLP

                                   */s/ Jeffrey A. Backman*
                                   Jeffrey A. Backman (Bar No. 662501)
                                   Roy Taub (Bar No. 116263)
                                   200 E. Broward Blvd., Suite 1800
                                   Ft. Lauderdale, FL  33301
                                   Telephone: (954) 491-1120
                                   Facsimile: (954) 343-6958

jeffrey.backman@gmlaw.com
mary.torres@gmlaw.com
roy.taub@gmlaw.com
cheryl.cochran@gmlaw.com

*Attorneys for Defendants*

## LOCAL RULE 3.01(G) CERTIFICATION

Undersigned counsel certifies that he conferred with opposing counsel, Andrew Thomasson and Zachary Zermay, regarding the grounds for this motion and the requested relief first on January 27, 2025, and then on January 28, 2025 in response to a separate e-mail from Mr. Zermay in which Mr. Thomasson was also included as a recipient. I advised opposing counsel that "[a]s my email yesterday made clear – to which you chose not to respond – we will be seeking sanctions for your bad faith and vexatious litigation conduct in filing a frivolous motion to compel arbitration and seeking a stay on the basis of that frivolous filing. Those sanctions for fees and costs and the striking of Plaintiff's Complaint will similarly be sought against both Plaintiff and his lawyers, jointly and severally." I ended the e-mail, "If you all wish to get on a telephone call to discuss these matters further, please let me know." Mr. Thomasson responded by e-mail, but no telephonic conference was requested. Neither Plaintiff nor his lawyers have consented to the requested relief. And at no time prior to 12:25 p.m. today did either counsel for Plaintiff advise that they were going to withdraw the motion to compel arbitration.

By:___*/s/ Jeffrey A. Backman*_____
     JEFFREY A. BACKMAN

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 31, 2025, a true and correct copy of the

foregoing was electronically filed on the Court's CM/ECF document filing system,

which will send notice of filing and a service copy to all counsel of record.

By: ___*/s/ Jeffrey A. Backman*___
JEFFREY A. BACKMAN