# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CASE №: 6:23-cv-737-CEM-EJK

JOSHUA CACHO,

Plaintiff,

v.

USHEALTH ADVISORS, LLC and
USHEALTH GROUP, INC.,

Defendants.
_________________________________________/

# MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION AND/OR PLAINTIFF'S NOTICE OF CONSENT TO ENTRY OF JUDGMENT AS TO DEFENDANTS' AFFIRMATIVE DEFENSE NO. 27 (DOC. NOS. 53, 56)

Plaintiff, Joshua Cacho, respectfully moves under the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq*. ("FAA") to stay this case and compel arbitration of all claims asserted. Plaintiff also gives notice of his consent to entry of judgment as to Defendants' affirmative defense number 27 located in document numbers 53 and 56. Plaintiff states the following in support of this Motion:

## I. RELEVANT FACTUAL & PROCEDURAL BACKGROUND.

On April 21, 2023, Mr. Cacho filed this action acting *pro se* (Doc. 1) and, on April 27, 2023, he personally served the summons and complaint (Doc. 6). On May 16, 2023, Mr. Cacho consented to Defendants' 30-day extension of their responsive pleading deadline. [Doc. 10].

Between May 16, 2023, and August 17, 2023, Defendants filed various

motions to dismiss and strike Plaintiff's pleadings (*See, e.g.*, Docs. 19, 23) and opposed Mr. Cacho's Motion to Amend (Doc. 25).

On August 17, 2023, the Court granted Mr. Cacho's Motion to Amend (Doc. 30) and, the same day, Mr. Cacho filed his Amended Complaint (Doc. 31).

On August 28, 2023, the Parties filed a Case Management Report informing the Court, *inter alia*, discovery was needed concerning "defenses raised in Defendants' answers" (Doc. 32, ¶9.B); arbitration is not mentioned (*passim*) and Defendants' answers were not filed until 10 and 12 months later (*infra,* Docs. 53, 56).

On August 31, 2023, Defendant, USHEALTH Advisors LLC ("USHA") filed a Motion to Dismiss Mr. Cacho's Amended Complaint. [Doc. 33.]

On January 17, 2024, Mr. Cacho served his written discovery.

On January 5, 2024, the Court issued a Report and Recommendation ("R&R") granting and denying, in part, USHA's Motion to Dismiss (Doc. 40) and, on January 19, 2024, USHA appealed the R&R (Doc. 43).

On May 15, 2024, the Court adopted the R&R. Denying USHA's Motion to Dismiss. [Doc. 52.]

****

On February 9, 2024, Defendant, USHEALTH Group Inc. ("USGI") filed a Motion to Dismiss Mr. Cacho's Amended Complaint. [Doc. 33.]

On July 24, 2024, the Court issued a R&R denying USGI's Motion to

Dismiss (Doc. 54) which the Court adopted on August 22, 2024 (Doc. 55).

****

On June 17, 2024, USHA Answered the Amended Complaint (Doc. 53) and, on September 5, 2024, USHA filed its Answer (Doc. 56). Both Answers raised the following Affirmative Defense:

> **Plaintiff's suit is barred to the extent he agreed to arbitrate the asserted claim against USHA [and USGI].**

[Docs. 53, 56 (at pg. 23), Affirm. Def. No. 27].

Over a year ago, on January 17, 2024, Mr. Cacho served his written discovery. On January 17, 2025, the Court granted Defendants' motion for protective order without allowing Plaintiff any opportunity whatsoever to file an opposition or contest the Defendants' untrue factual basis. This prevented Plaintiff from taking any depositions.

Two hours later—after close of business (on a Friday), Defendants emailed Plaintiff's counsel scores of material documents they "inadvertently" forgot to produce. [*Zermay Decl.*, ¶ 4, (Ex.A)]. Included in this production is Defendants' agreement with Mr. Cacho which contains the following arbitration provision:

**Arbitration Notice:**

The insurance laws in your state allow for Arbitration Provisions in health coverage plans as a more efficient and economical means of resolving a dispute. Please be advised that the insurance coverage you are applying for contains a provision requiring participation in an alternative dispute resolution that consists of negotiation, non-binding mediation, and binding arbitration.

- If any dispute cannot be resolved by mutual agreement through negotiation or mediation, then it will be resolved by an arbitrator.
- The dispute resolution procedure will take the place of having a judge or jury, and no such dispute will be resolved by a civil trial.
- Any such arbitration shall be conducted in accordance with the commercial rules of the American Arbitration Association, unless modified by specific terms in your Certificate of coverage.

The arbitration award is final and binding, and may include attorney fees, and may be entered as judgment in any court with jurisdiction.

[*Id.*, ¶5 (Exh. B)].

Since December 30, 2024, Defendants have produced scores of pages of materially relevant documents and ESI—*e.g.*, records of Plaintiff's text messages—in a trickling manner claiming they "inadvertently" forgot to produce the materially responsive evidential material. [*Id.* at ¶ 4].

Roughly two hours after the Court summarily granted Defendants' motions for protective orders without affording Plaintiff an opportunity to be heard or respond, Defendants produced litany of documents supporting their arbitration defense, and one document containing arbitration agreement between the parties. [*Id.* at ¶ 4 – 5; Ex.B] On January 22, 2025, counsel for Mr. Cacho emailed counsel for Defendants to inquire whether they would agree to arbitrate this case and to meet and confer. [*Id.* at ¶ 5– 9; Ex.C]. Instead of reflexively agreeing to arbitrate —which is one of their affirmative defenses Defendants have raised— (or giving a time and date to telephonically meet and confer) they responded by email and indicated that Defendants refuse to arbitrate. [*Id.* at ¶ 5– 9; Ex.C]. When asked why Defendants would not agree to arbitrate and their legal basis for why this motion should not be granted despite their defense and agreement to arbitrate, their counsel refused to respond. [*Id.* at ¶ 5– 9; Ex.C].

This refusal to arbitrate is curious given positions that Defendants, who are serial violators of the TCPA, have taken in similar positions in cases across the country. [*Id.* At ¶ 9, n1; Ex-D].

## II. LEGAL STANDARDS AND ARGUMENT

The FAA governs the validity of arbitration agreements. The FAA applies to contracts affecting interstate commerce and requires courts to enforce a written agreement to arbitrate contained in any such agreement. 9 U.S.C. § 2. Any ambiguities concerning the scope of an arbitration agreement are to be resolved in favor of compelling arbitration. *See Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners, Inc.*, 312 F.3d 1349, 1358 (11th Cir. 2002), abrogated on other grounds as stated in *Roy Haluch Gravel Co. v. Central Pension Fund*, 134 S. Ct. 772, 779 (2014). "An order to arbitrate [a] particular [dispute] should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960).

Under the FAA, a court must enforce an agreement to arbitrate if: (1) "the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles;" and (2) "the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). In analyzing whether these conditions have been met, courts must keep in mind that the FAA embodies "a liberal federal policy favoring arbitration agreements," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991), and resolve any doubts concerning the scope of arbitrable issues in favor of arbitration.

*See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25 (1983). The Supreme Court has specifically ruled that agreements to arbitrate workplace disputes must be enforced pursuant to the FAA, 9 U.S.C. § 2. *See Circuit City Stores, Inc. v. Saint Clair Adams*, 532 U.S. 105 (2001). In this case, the parties have a valid agreement to arbitrate, and Plaintiff's claims fall within the scope of that agreement. Therefore, the Court should enter an order compelling arbitration.

Section 4 of the FAA permits a court to compel arbitration when one party, as in this case, has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. § 4. Arbitration agreements are governed by and enforceable under the FAA. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23-24 (1991). "[T]he FAA governs the enforceability of arbitration clauses generally," "although state law may dictate the standards for generally applicable contract defenses . . . ." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 887 (6th Cir. 2002) (internal quotations omitted). The FAA and the strong federal policy favoring arbitration that it evidences require courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Consistent with that strong federal policy favoring arbitration, "[f]ederal law counsels that questions of arbitrability, when in doubt, should be resolved in favor of arbitration." *Id.* (*citing Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp.*, 460

U.S. 1, 24 (1983)).[1]

Thus, "as a matter of federal law, any doubts concerning the scope *See also Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 583 (6th Cir. 2021) ("[C]ourts must rigorously enforce arbitration agreements according to their terms") (internal quotation omitted); *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005) ("[I]t is well-established that any doubts regarding arbitrability must be resolved in favor of arbitration, because there is a strong presumption in favor of arbitration under the FAA.") (internal citation omitted). Thus, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Cone Mem'l*, 460 U.S. at 24-25.

The Sixth Circuit has instructed that,

> [w]hen considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the

---

[1] *See also Ciccio,* at 583 ("[C]ourts must rigorously enforce arbitration agreements according to their terms") (internal quotation omitted); *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005) ("[I]t is well-established that any doubts regarding arbitrability must be resolved in favor of arbitration, because there is a strong presumption in favor of arbitration under the FAA.") (internal citation omitted).

proceedings pending arbitration.

*Glazer*, 394 F.3d at 451 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). For reasons stated *infra*, these proceedings should be stayed pending completion of arbitration.

## I. THE COURT SHOULD COMPEL ARBITRATION.

### A. The Parties Have a Valid Written Arbitration Agreement.

The Parties entered into a valid agreement requiring them to arbitrate Cacho's TCPA claim against Defendants concerning calls resulting from his application for insurance when he agreed to the terms on the Freedom Life Insurance Company of America,[2] including the arbitration provision. While the Court should find that this is an issue that has been delegated to the arbitrator, even if the Court takes up this question in deciding whether arbitration can be compelled, it should find in the affirmative.

#### 1. The Question of the Existence of a Valid Written Arbitration Agreement Has Been Delegated to the Arbitrator

As a threshold issue, parties to an arbitration agreement may "agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68– 69 (2010) (citations omitted). As

---

[2] A member company of USHealth Group, Inc.

another court in recently ruled, if parties to an arbitration agreement have clearly and unmistakably agreed to delegate issues of arbitrability to the arbitrator, then the court cannot override that intention, and the arbitrator must decide these threshold issues. *Nelums*, 2023 WL 6161997 at *4. *Accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 139 S. Ct. at 529.

Here, the Arbitration Agreement provides that the arbitrator – not a court – is to decide issues of arbitrability in stating "[a]ny such arbitration shall be conducted in accordance with the commercial rules of the American Arbitration Association, unless modified by specific terms in your Certificate of coverage." [*Zermay Decl.*. ¶ 10, Ex.-E at 5 (emphasis added)]. Those rules (the "AAA Commercial Rules") expressly reserve to the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim . . . ." AAA Commercial Rules R-7(a) (attached to the Declaration of Zachary Z Zermay as Exhibit E). Under precedent involving AAA rules with identical language, "[t]he incorporation of these rules provides clear and unmistakable evidence that the parties agreed to arbitrate gateway arbitrability

question." *Ciccio*, 2 F.4th at 583. In *Nelums*, it was held the exact same arbitration agreement language from C4R Media "mean[s] that the agreement delegates the gateway question of arbitrability to an arbitrator." Nelums, 2023 WL 6161997 at *4. *See also id.* at *3.2 Given the clear and unmistakable intent in the Arbitration Agreement to delegate gateway issues to the arbitrator, arbitrator, this Court should compel the Parties to arbitrate on the gateway question of arbitrability.

### B. In the Alternative, the Court Should Find that Cacho and Defendants Entered Into a Valid Arbitration Agreement

Nevertheless, if the Court is of the view that it can and should decide the existence and validity of the Arbitration Agreement, it is plainly evident that both are established here. The Application provides that "This policy primarily governed by the laws of Mississippi)." Cacho Dec. at ¶ 10, Ex. A at 6. Mississippi law therefore governs.

Under Mississippi law, require a "meeting of the minds between the parties in order for agreements to be valid." *Colyer v. First United Methodist Church of New Albany*, 214 So. 3d 1084, 1088 (Miss. Ct. App. 2016). Defendants have produced a contract of adhesion (on January 17, 2025) late in this case which demonstrates that the Parties agreed to arbitration. Cacho therefore moves to enforce the arbitration and avail himself of the benefit of this bargain.

**C. Cacho's TCPA Claims Raise Arbitrable Issues**

If the Court finds the question of the arbitrability of Mr. Cacho's claims has not been delegated (unlike in *Rent-A-Center*, *Ciccio*, and *Nelums*, among others), and the Court must decide the question, it should answer in the affirmative.

In determining the scope of the arbitration clause, courts look at the parties' intent to submit the dispute to arbitration, starting at the language of the arbitration provision, and construing any doubt in favor of arbitrability in accordance with the strong federal policy favoring arbitration. *See, e.g.,*

*Mitsubishi*, 473 U.S. at 626 ("Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."). The Arbitration Agreement states, in relevant part:

**Arbitration Notice:**

The insurance laws in your state allow for Arbitration Provisions in health coverage plans as a more efficient and economical means of resolving a dispute. Please be advised that the insurance coverage you are applying for contains a provision requiring participation in an alternative dispute resolution that consists of negotiation, non-binding mediation, and binding arbitration.

- If any dispute cannot be resolved by mutual agreement through negotiation or mediation, then it will be resolved by an arbitrator.
- The dispute resolution procedure will take the place of having a judge or jury, and no such dispute will be resolved by a civil trial.
- Any such arbitration shall be conducted in accordance with the commercial rules of the American Arbitration Association, unless modified by specific terms in your Certificate of coverage.

The arbitration award is final and binding, and may include attorney fees, and may be entered as judgment in any court with jurisdiction.

The Parties' dispute squarely concerns, at least, a dispute concerning Defendants' attempts to sell Plaintiff a health coverage plan. The claim concerns his opt in and the consent that he agreed to be called by the list of marketing partners, including Defendants, which is what led to the calls at issue and Plaintiff's transfer to Defendants. See Cacho Decl. at ¶¶. In *Temple*, the court, applying New York law, found that largely similar language in an arbitration

agreement[3] encompassed the plaintiff's TCPA claims because he "received the alleged contact from Defendants as a result of providing his information and assenting to the terms of the Agreement." *Id.* at 1307. The same is true here.

Moreover, the fact that Cacho's TCPA claim is a statutory claim does not place it outside the scope of a valid arbitration agreement. "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA," "'unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi*, 473 U.S. at 628). "[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000).

Nothing in the text or legislative history of the TCPA evidences any such intention.

---

[3] "Should a dispute arise concerning the Site Offering, the terms and conditions of the Agreement or the breach of same by any party hereto: (a) the parties agree to submit their dispute for resolution by arbitration before the American Arbitration Association in New York, New York in accordance with the then current Commercial Arbitration rules of the American Arbitration Association . . . ." 360 F. Supp. 3d at 1296-97.

## III. CONCLUSION

For the foregoing reasons, the Court should enter an order compelling the Plaintiff to arbitrate his claim and staying the proceedings until the arbitrator enters a final award.

**WHEREFORE**, Plaintiff requests the Court compel arbitration and a stay of these proceedings. In the alternative, Plaintiff requests the Court to enter judgment as to Defendants' affirmative defense number 27 located in document numbers 53 and 56, and to stay these proceedings pending the outcome of arbitration. Plaintiff requests such further relief that the Court deems just and appropriate.

DATED: January 24, 2025

Respectfully Submitted,
**ZERMAY LAW, P.A.**

/s/ Zachary Z. Zermay
Zachary Z. Zermay, Esq.
Florida Bar №: 1002905
3000 Coral Way, Suite 1115
Coral Gables, FL 33145
Email: zach@zermaylaw.com
Telephone: (305) 767-3529

**<u>LOCAL RULE 3.01(g) CERTIFICATION</u>**

Plaintiff's undersigned counsel hereby certifies that on January 22 and 23, 2025, he attempted to confer in good faith with Defendants' counsel via telephone and email before filing this motion. Defendants refused to confer by telephone nor would they articulate any reason for refusing consent to the relief sought. [*See generally*, Zermay Decl.].

*<u>/s/Zachary Z. Zermay</u>*
Zachary Z. Zermay, Esq.

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on January 24, 2025 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*<u>/s/Zachary Z. Zermay</u>*
Zachary Z. Zermay, Esq.