# EXHIBIT H

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JOSHUA CACHO, **CASE NO.:** 6:23-cv-737-CEM-UAM

Plaintiff,

v.

USHEALTH ADVISORS, LLC and
USHEALTH GROUP, INC.,

Defendants.
_____________________________/

**DEFENDANTS' OPPOSITION TO PLAINTIFF JOSHUA CACHO'S MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION**

Defendants USHEALTH Advisors, LLC ("USHA") and USHEALTH Group, Inc. ("USHG"), by and through undersigned counsel, respectfully submit this response in opposition to Plaintiff Joshua Cacho's Motion to Stay Proceedings and Compel Arbitration, (Dkt. No. 92) (the "Motion").

## PRELIMINARY STATEMENT

Plaintiff's Motion reads like something out of a different case, perhaps one pending in the Sixth Circuit, and that is because it is primarily a "copy-and-paste" of a motion prepared by Defendants' counsel for another client in the Northern District of Ohio in *Davis v. Clear Health, LLC,* No. 1:24-cv-00187-PAB. *See generally* Exs. A & B.[1] But that case involved an *actual* arbitration agreement

[1] The portions of both the *Davis* brief that Plaintiff's counsel copied and pasted with only slight modification and Plaintiff's Motion to Compel that reflect the wholesale lifted text are highlighted in yellow in Exhibits A and B.

(rendering the "copied-and-pasted" discussion about "similar language" enforced by other courts completely inapplicable). As this Court already observed in taking a "preliminary peek," the language in an insurance application that Plaintiff contends – at the eleventh-hour in this case that has been pending for nearly two years – is an arbitration agreement between him and Defendants is nothing like that at all. It is a *notice*. Full stop. It is a *notice* that informs Plaintiff that the health and dental insurance plans he is applying for contain provisions that require, among other methods, arbitration to resolve disputes and that may be "modified by specific terms in your Certificate of coverage." Plaintiff was not asked to acknowledge or agree to anything regarding that "notice." That, standing alone, is not an agreement to arbitrate.

That counsel elected to cut corners by searching for a similar type of motion prepared by opposing counsel, rather than conduct their own investigation and research, is only the tip of the iceberg of how reckless and frivolous the Motion is, and that it was filed for an improper purpose. One would expect discovery and other proceedings to operate more smoothly with the engagement of counsel, but that is apparently not what Plaintiff had in mind. The Motion is a baseless "Hail Mary" pass recklessly flung into the air to get out of proceedings before this Court because of the sanctions and other adverse consequences Plaintiff's and his counsel's conduct have brought about. Indeed, shortly after this Court declared the Motion "may lack merit" and described it as "questionable," counsel for

Plaintiff advised that they will be filing a motion to withdraw.[2]

What is more egregious is that Plaintiff has long known about that "arbitration notice" language (he received a copy of the application before he filed this lawsuit) and knows that he never obtained any insurance coverage or policy. Plaintiff fails to mention that *he cancelled and withdrew the application only a few days after submitting it*. The application was never accepted or approved. Perhaps that is why the Motion does not address whether his possession of the application before filing this lawsuit, the result of a process he made allegations about in two of his Complaints, waives any so-called "Arbitration Agreement." The law does not allow a party under Plaintiff's circumstances to litigate for nearly two years and then decide, after his strategy of defying court orders and numerous rules worked out unfavorably, to seek arbitration instead. The Motion should be denied.[3]

## STATEMENT OF FACTS

This is Plaintiff's second of three lawsuits against USHA and/or USHG. He

[2] As counsel for Defendants advised counsel for Plaintiff several times, Defendants are simultaneously moving for sanctions against Plaintiff and his counsel to compensate Defendants, hold people accountable for their misconduct, address the harms caused, vindicate the Court's authority, and deter such conduct in the future. Plaintiff's lawyers should not be allowed to exit from the chaos and harm to the integrity of the judicial process that their conduct intentionally brought about and the substantial expenses they have caused Defendants' to incur.

[3] Defendants presume that the filing of the Motion was done with an eye to appeal the denial and seek (once again) a stay of proceedings based upon the Supreme Court's recent clarification that "a district court [is required to] stay its proceedings while the interlocutory appeal on the question of arbitrability is ongoing." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 744 (2023). In addressing the concern that "an automatic stay would encourage frivolous appeals that would improperly delay district court proceedings," the Supreme Court noted "a party can ask the court of appeals . . . to dismiss the interlocutory appeal as frivolous," among other measures. *Id.* at 744-45. To facilitate the Eleventh Circuit's expedient determination of that issue, Defendants simultaneously move for sanctions and request that the Court make findings on that issue, too.

filed the first lawsuit in this Court under the caption *Cacho v. USHEALTH Group, Inc.*, No. 6:22-cv-01439-CEM-EJK (M.D. Fla.). Plaintiff had filed three complaints against USHG in that action before the case was dismissed for failure to comply with the Court's Initial Order regarding Case Management and Deadlines. *See id.* at Dkt. No. 24 (Jan. 24, 2023).

This lawsuit was filed on April 23, 2023. *See* Dkt. No. 1. In this case, too, Plaintiff has filed three complaints. *See id.* & Dkt. Nos. 13 & 31. The Second Amended Complaint alleges twenty-one violative text messages from June 24, 2022 through March 2, 2023.[4] *See* Dkt. No. 31 at ¶ 57. Plaintiff served discovery requests on August 22, 2023 and January 16, 2024, (Exs. C & D), produced numerous documents and served interrogatory responses, and filed a motion to compel discovery. *See* Dkt. No. 57. Among other things, he agreed to sit for a deposition in Orlando, Florida and noticed and/or subpoenaed ten depositions (but without bothering to coordinate them). *See generally* Dkt. Nos. 81-83, 88.

Plaintiff's Motion is based on a purported "Arbitration Agreement." *See* Dkt. No. 92-3 at USHA000446. That is simply a *notice* in an application submitted to Freedom Life that the certificate of coverage for the insurance plan(s) he was applying for contains an arbitration provision over disputes that may arise. *Id.* The information that Plaintiff provided for the application was "verified" during a

[4] This date is important. The application upon which his Motion is based was submitted on February 28, 2023 and cancelled by Plaintiff on March 3, before Freedom Life took any action on it on March 3, 2023. Thus, virtually every text message Plaintiff says is at issue in this case occurred before he ever submitted the application. There is no agreement, so the Court does not need to reach this issue, but it is additional evidence of the baseless nature of the Motion.

twenty-four-minute-long telephone call, which occurred on February 28, 2023. The application and a recording of the telephone call were produced by Defendants in discovery (even though they are not responsive to any of Plaintiff's discovery requests) with a confidentiality designation to protect Plaintiff's personal information.

Plaintiff, of course, knew about the application. He provided the information for it and participated in a lengthy "verification call" with Freedom Life. Plaintiff also received a link to a copy of the Application before the call. *See* Ex. E at USHA000361 ("Your application has been received and is being processed. For your convenience, we have provided links to your application and information brochures for the products you selected with your Agent."). He discusses part of that process in the Complaint. *See* Dkt. No. 31 at ¶¶ 49-50. And, indeed, Plaintiff's own production refers to the fact that the "verification call" with "the underwriter" – *i.e.*, Freedom Life – will be taking place:




Ex. F (filename "Numbers for RFA_s 6.pdf").[5]

With respect to the coverage plans or certificates of coverage referred to in

[5] *Pro Se* Plaintiff's production did not use Bates numbers.

the "arbitration notice," Plaintiff never received any of those plans or certificates of coverage, nor did he ever have insurance coverage with Freedom Life (or USHA or USHG). Only a few days after the verification call, on March 3, 2023, Plaintiff cancelled his application. As his own production shows, he texted the following to Jennifer Maser:




Ex. G (filename "Numbers for RFA_s 9.pdf"). Plaintiff also quotes this text message in the Complaint. *See* Dkt. No. 31 at ¶ 55. As a result, Plaintiff was sent a letter confirming that he "decided to withdraw [the] application . . . ." Ex. E at USHA000357 & USHA000358.

## ARGUMENT

## I. APPLICABLE LEGAL STANDARDS

Section 4 of the FAA permits a court to compel arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. § 4. *See also*, *e.g.*, *Witt v. D.R. Horton, Inc.*, No. 808-CV-2414-T-33EAJ, 2009 WL 54902, *1 (M.D. Fla. Jan. 7, 2009). Arbitration agreements are governed by and enforceable under the FAA. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23-24 (1991). "Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such

agreements." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2009) (citing *Perry v. Thomas*, 482 U.S. 483 (1987)).

A district court must consider three factors on a motion to compel arbitration: "1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate has been waived." *Williams v. Eddie Acardi Motor Co.*, No. 3:07-cv-782-J-32JRK, 2008 WL 686222, *4 (M.D. Fla. Mar. 10, 2008) (citations omitted). In this district, "[m]otions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1222 (M.D. Fla. 2013). "Accordingly, in ruling on a motion to compel arbitration, the Court may consider matters outside the four corners of the complaint." *Lowe v. Charter Commc'n Holdings LLC,* No. 619CV1621ORL40EJK, 2019 WL 13248799, *1 (M.D. Fla. Nov. 5, 2019).

## II. THERE IS NO ARBITRATION AGREEMENT

In his Motion, Plaintiff argues "[t]he Parties entered into a valid agreement requiring them to arbitrate Cacho's TCPA claim against Defendants concerning calls resulting from his application for insurance when he agreed to the terms on the Freedom Life Insurance Company of America, [sic] including the arbitration provision," which Plaintiff argued in the Motion to Compel Arbitration and the Motion to Stay required a stay of all proceedings. Dkt. No. 92 at 8; Dkt. No. 93. Those are frivolous and baseless assertions made in bad faith in a desperate

attempt to try to escape a court case that Plaintiff now finds unfavorable, largely as a result of his and his lawyer's contumacious and sanctionable conduct.

### A. Plaintiff Fails to Show the Application's "Notice" Is an "Arbitration Agreement"

What Plaintiff's Motion frivolously contends is an arbitration agreement is merely a *notice* in an *application* for health insurance coverage that the applied-for plan would contain an arbitration provision. The language Plaintiff relies upon simply puts him on notice that

> [t]he insurance laws in your state allow for Arbitration Provisions in health coverage plans as a more efficient and economical means of resolving a dispute. Please be advised that the insurance coverage you are applying for contains a provision requiring participation in an alternative dispute resolution that consists of . . . binding arbitration.

Dkt. No. 92-3 at USHA000446.

The burden of establishing the existence of an agreement to arbitrate rests on the party moving to compel arbitration. *In re W. Wiand*, No. 8:10-cv-71-T-17MAP, 2011 WL 4532070, *4 & n.13 (M.D. Fla. June 8, 2011). *See also Compere v. Nusret Miami, LLC*, 396 F. Supp. 3d 1194, 1199 (S.D. Fla. 2019). But Plaintiff does not explain in the Motion how that qualifies as an agreement. Plaintiff does not explain in the Motion to Compel Arbitration how that qualifies as an agreement, or provide any support for his seeming argument that mere notice of an arbitration provision in a forthcoming document somehow constitutes an arbitration agreement. Quite simply, there is no written agreement to arbitrate, period, that can be the subject of a motion to compel arbitration under 9 U.S.C. §

4. *Williams,* 2008 WL 686222 at *4. As the Court observed on its initial review of the document, what Plaintiff relies upon is merely a "notice" of what is to come, (Dkt. No. 97 at 2), something Plaintiff failed to mention never did come because of Plaintiff's own decision to withdraw and cancel that insurance application. There is no agreement to arbitration that can be compelled.

In contriving an arbitration agreement, Plaintiff asserts Mississippi law governs and that the application "demonstrates that the Parties agreed to arbitration" because there was a "meeting of the minds . . . ." Mot. at 10. Both assertions are wrong.

While it is unclear to what the "Mississippi law" provision applies to, as it refers to a "policy," (Dkt. No. 92-3 at USHA000447), any choice of law provision in the purported "contract" is of no moment given Defendants "challenge . . . the very existence of an agreement," because "applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." *Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp. 3d 1252, 1259 (S.D. Fla. 2021) (quoting *Herman v. Seaworld Parks & Ent., Inc.*, No. 8:14-cv-3028-T-35JSS, 2016 WL 7447555, *3 n.2 (M.D. Fla. Aug. 26, 2016)). Since Plaintiff was a Florida resident at the time of the application, Florida choice-of-law rules weigh in favor of applying Florida law. *See id.*

Plaintiff does not bother to establish how the requirements for a contract under Florida law are established through the Application and its "arbitration

notice." *See, e.g.*, *Derriman v. Mizzen & Main LLC*, 710 F. Supp. 3d 1129, 1138 (M.D. Fla. 2023); *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). Nowhere does Plaintiff point to or explain as a factual or legal matter how through his application to Freedom Life there was an offer or that anyone assented to an "arbitration agreement" or that the requisite definiteness of terms existed.

In fact, Plaintiff's repeated assertions of an agreement from his application flies in the face of clear Florida law that, "in the absence of express provisions to the contrary, the application of one seeking insurance only constitutes an offer, and a legally enforceable contract is not created until the insurer accepts the offer. ***The application itself is not a contract between parties***." *Campbell v. Household Life Ins. Co.*, 77 So. 3d 772, 775 (Fla. 5th DCA 2011) (emphasis added) (internal citations omitted). Here, Freedom Life never accepted Plaintiff's application, in part because Plaintiff cancelled his application. Ex. E at USHA000357 & USHA000358; Ex. G. *See* Dkt. No. 31 at ¶ 55. That is dispositive. Under Florida law, there can be no agreement (to arbitrate or for anything else) from the mere submission of an application. The law simply will not permit Plaintiffs' attempt to turn the Application and its "arbitration notice" into some offer that was purportedly accepted and gave rise to an "arbitration agreement."

Moreover, Plaintiff's papers themselves are inconsistent with any showing of definite terms, as they are not able to keep straight what agreement is being divined from the "arbitration notice" that clearly is not an agreement. Plaintiff's Motion contends "[t]he Parties entered into a valid agreement requiring them to

arbitrate Cacho's TCPA claim against Defendants concerning calls resulting from his application for insurance when he agreed to the terms on the Freedom Life insurance Company of America, [sic] including the arbitration provision." Mot. at 8. That would then apply to only the six of the twenty-one text messages identified in the Complaint that occurred after the application was submitted on February 28, 2023. *See* Dkt. No. 31 at ¶ 57.[6] Plaintiff's Motion to Stay, however, describes a far greater scope to the imagined "Arbitration Agreement," stating, "the Arbitration Motion shows the Parties' [sic] agreed *all* their 'disputes' *must* be resolved by arbitration . . . ." Dkt. No. 93 at 4. So, which one is it? The answer, of course, is "neither," because it is clear from reading the application and the law that there is no arbitration agreement.

**B. Plaintiff's Invocation of a Delegation Provision is Baseless**

Plaintiff tries to avoid any scrutiny of his frivolous assertion of an "Arbitration Agreement" by referring to case law regarding delegation provisions. That is unavailing, especially since Plaintiff is relying on copied and pasted case law from the Sixth Circuit. This court, however, is located in the Eleventh Circuit, and in the Eleventh Circuit, "notwithstanding an arbitration agreement that incorporates the AAA Rules, it is improper for an arbitrator to decide threshold issues of arbitrability when the parties dispute whether an arbitration agreement exists between them." *Santiago v. Neno Rsch., Inc.*, No. 8:24-CV-01330-WFJ-AAS, 2024 WL 4625783, *3 (M.D. Fla. Oct. 30, 2024). The Court of Appeals for

the Eleventh Circuit has rejected Plaintiff's very argument repeatedly. *See Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1118 (11th Cir. 2020); *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 855 (11th Cir. 1992). *See also*, *e.g.*, *Oxium LLC v. OXO H20 Sols. Inc.*, No. 6:22-CV-1068-RBD-DCI, 2024 WL 3634917, *3 (M.D. Fla. Mar. 6, 2024); *Calderon v. Sixt Rent a Car, LLC*, No. 19-62408-CIV, 2021 WL 1325868, *4-5 (S.D. Fla. Apr. 9, 2021). As in *Lavigne*, a controlling decision issued by the Eleventh Circuit, a delegation clause cannot be given effect where the existence of an arbitration agreement is disputed and not established.

### C. Even if Somehow the Notice Constituted an Arbitration Agreement, Plaintiff Waived any Right to Arbitrate

There is yet another reason why the Motion should be denied. Even if there had been an "Arbitration Agreement" regarding any of the text messages at issue, (something Plaintiff says but never shows or places within the governing legal principles), any attorney acting reasonably would know that Plaintiff had waived any right to compel arbitration. "Arbitrability waiver should now be evaluated under the same standard set by the applicable state law governing other contract waiver issues." *Adams v. Lashify*, Inc., 689 F. Supp. 3d 1146, 1158 (M.D. Fla. 2023). "Under Florida law '[a] party's contract right may be waived by actively participating in a lawsuit or taking action inconsistent with that right.'" *Id.* (quoting *Klosters Rederi A/S v. Arison Shipping Co.*, 280 So. 2d 678, 681 (Fla. 1973)).

It is undisputed that Plaintiff applied on February 28, 2023 and received an

e-mail that provided him with a link to a copy of the application. Dkt. No. 92-3 at USHA000447; Ex. E at USHA000361. Indeed, Plaintiff refers to the process of providing the information for the application in his Complaint and receiving an e-mail with "the policy details." Dkt. No. 31 at ¶¶ 49-52. As if completing the application, participating in the verification call, and receiving the e-mail with a copy of the application were not enough, Plaintiff of course was well aware of his participation in the application process because he knew enough to cancel and withdraw it just three days later. Ex. E at USHA000357 & USHA000358; Ex. G. *See* Dkt. No. 31 at ¶ 55. Plaintiff was therefore aware at all times of this application with the "notice" at issue. Yet, he commenced this lawsuit a month afterwards, after having previously sued USHG (and filed another lawsuit against these Defendants in the Western District of Texas on September 25, 2024. *See Cacho v. US Health Advisors, LLC*, No. 3:24-cv-00350-LS (W.D. Tex.).[7]

The law is clear that "a party must reveal its intent to arbitrate at an early stage of litigation," and "Plaintiffs waive arbitration simply by filing a lawsuit." *Lamonaco v. Experian Info. Sols., Inc.*, No. 6:23-CV-1326-PGB-LHP, 2024 WL 1703112, *9 (M.D. Fla. Apr. 19, 2024) (collecting cases) (internal quotation omitted). Cacho's commencement of litigation under these circumstances plainly

---

[7] Plaintiff's counsel advances a false narrative that Defendants were required to produce Plaintiff's insurance application previously even though he identifies no discovery request to which it would be responsive (there are none). *See* Mot. at 4. He also falsely describes Defendants' counsel as claiming they "'inadvertently' forgot to produce" "scores of pages of materially relevant documents and ESI," when that language referred only to one four-page document for a Bates number range that clearly had been skipped in prior productions. *See id.*; Dkt. No. 92-2 at 2 (showing attachment of USHA000327-USHA000330.pdf).

creates a waiver of any right to compel arbitration, to the questionable extent there ever was one. Plaintiff cannot argue a document that he filled out and received ***before even filing the lawsuit*** contains an arbitration agreement that he is entitled to enforce *nearly two years into a lawsuit that he himself filed.* In addition to there being no valid written agreement to arbitrate, even if there was, Plaintiff clearly waived any purported right to arbitrate the claims that have been the subject of court proceedings for nearly two years in which he has substantially participated.

## III. PLAINTIFF CANNOT COMPEL ARBITRATION BY UNILATERALLY CONSENTING TO ENTRY OF JUDGMENT

Plaintiff's Motion alternatively requests, presumably to otherwise compel arbitration, that he somehow be allowed to consent to judgment on Defendants' common affirmative defense that "Plaintiff's suit is barred to the extent he agreed to arbitrate the asserted claim against [Defendants]." Mot. at 1; Dkt. Nos. 53 & 56 at Aff. Def. No. 27. Plaintiff provides no authority or really any legal argument in support of that request, and Defendants have been unable to find anything in the Federal Rules of Civil Procedure or the case law that would allow it. If Plaintiff is referring to a consent to entry of judgment, that requires the agreement of all parties. *See, e.g.*, *United States v. City of Tampa, Fla.*, No. 8:23-CV-02934-KKM-AAS, 2024 WL 3193961, *4 (M.D. Fla. June 21, 2024). Defendants do not and cannot agree because there is no arbitration agreement, as explained above. And Plaintiff cannot satisfy his burden of establishing the existence of an arbitration

agreement by pointing to a qualified affirmative defense instead of evidence of an actual agreement to arbitrate.

## CONCLUSION

For the foregoing reasons, Defendants USHEALTH Advisors, LLC and USHEALTH Group, Inc., respectfully request that the Court enter an order denying Plaintiff's Motion to Stay Proceedings and Compel Arbitration and granting any other relief the Court deems appropriate.

Dated: January 31, 2025

Respectfully submitted,

GREENSPOON MARDER LLP

*_/s/ Roy Taub_*
Roy Taub (Bar No. 116263)
Jeffrey A. Backman (Bar No. 662501)
200 E. Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
Telephone: (954) 491-1120
Facsimile: (954) 343-6958
jeffrey.backman@gmlaw.com
mary.torres@gmlaw.com
roy.taub@gmlaw.com
cheryl.cochran@gmlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 31, 2025, a true and correct copy of the foregoing was electronically filed on the Court's CM/ECF document filing system, which will send notice of filing and a service copy to all counsel of record.

By: *_/s/ Roy Taub_*
ROY TAUB

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CASE №: 6:23-cv-737-CEM-EJK

JOSHUA CACHO,

Plaintiff,

v.

USHEALTH ADVISORS, LLC and
USHEALTH GROUP, INC.,

Defendants.
_______________________________________/

# MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION AND/OR PLAINTIFF'S NOTICE OF CONSENT TO ENTRY OF JUDGMENT AS TO DEFENDANTS' AFFIRMATIVE DEFENSE NO. 27 (DOC. NOS. 53, 56)

Plaintiff, Joshua Cacho, respectfully moves under the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq*. ("FAA") to stay this case and compel arbitration of all claims asserted. Plaintiff also gives notice of his consent to entry of judgment as to Defendants' affirmative defense number 27 located in document numbers 53 and 56. Plaintiff states the following in support of this Motion:

## I. RELEVANT FACTUAL & PROCEDURAL BACKGROUND.

On April 21, 2023, Mr. Cacho filed this action acting *pro se* (Doc. 1) and, on April 27, 2023, he personally served the summons and complaint (Doc. 6). On May 16, 2023, Mr. Cacho consented to Defendants' 30-day extension of their responsive pleading deadline. [Doc. 10].

Between May 16, 2023, and August 17, 2023, Defendants filed various

motions to dismiss and strike Plaintiff's pleadings (*See, e.g.*, Docs. 19, 23) and opposed Mr. Cacho's Motion to Amend (Doc. 25).

On August 17, 2023, the Court granted Mr. Cacho's Motion to Amend (Doc. 30) and, the same day, Mr. Cacho filed his Amended Complaint (Doc. 31).

On August 28, 2023, the Parties filed a Case Management Report informing the Court, *inter alia*, discovery was needed concerning "defenses raised in Defendants' answers" (Doc. 32, ¶9.B); arbitration is not mentioned (*passim*) and Defendants' answers were not filed until 10 and 12 months later (*infra,* Docs. 53, 56).

On August 31, 2023, Defendant, USHEALTH Advisors LLC ("USHA") filed a Motion to Dismiss Mr. Cacho's Amended Complaint. [Doc. 33.]

On January 17, 2024, Mr. Cacho served his written discovery.

On January 5, 2024, the Court issued a Report and Recommendation ("R&R") granting and denying, in part, USHA's Motion to Dismiss (Doc. 40) and, on January 19, 2024, USHA appealed the R&R (Doc. 43).

On May 15, 2024, the Court adopted the R&R. Denying USHA's Motion to Dismiss. [Doc. 52.]

****

On February 9, 2024, Defendant, USHEALTH Group Inc. ("USGI") filed a Motion to Dismiss Mr. Cacho's Amended Complaint. [Doc. 33.]

On July 24, 2024, the Court issued a R&R denying USGI's Motion to

Dismiss (Doc. 54) which the Court adopted on August 22, 2024 (Doc. 55).

****

On June 17, 2024, USHA Answered the Amended Complaint (Doc. 53) and, on September 5, 2024, USHA filed its Answer (Doc. 56). Both Answers raised the following Affirmative Defense:

> **Plaintiff's suit is barred to the extent he agreed to arbitrate the asserted claim against USHA [and USGI].**

[Docs. 53, 56 (at pg. 23), Affirm. Def. No. 27].

Over a year ago, on January 17, 2024, Mr. Cacho served his written discovery. On January 17, 2025, the Court granted Defendants' motion for protective order without allowing Plaintiff any opportunity whatsoever to file an opposition or contest the Defendants' untrue factual basis. This prevented Plaintiff from taking any depositions.

Two hours later—after close of business (on a Friday), Defendants emailed Plaintiff's counsel scores of material documents they "inadvertently" forgot to produce. [*Zermay Decl.*, ¶ 4, (Ex.A)]. Included in this production is Defendants' agreement with Mr. Cacho which contains the following arbitration provision:

**Arbitration Notice:**

The insurance laws in your state allow for Arbitration Provisions in health coverage plans as a more efficient and economical means of resolving a dispute. Please be advised that the insurance coverage you are applying for contains a provision requiring participation in an alternative dispute resolution that consists of negotiation, non-binding mediation, and binding arbitration.

- If any dispute cannot be resolved by mutual agreement through negotiation or mediation, then it will be resolved by an arbitrator.
- The dispute resolution procedure will take the place of having a judge or jury, and no such dispute will be resolved by a civil trial.
- Any such arbitration shall be conducted in accordance with the commercial rules of the American Arbitration Association, unless modified by specific terms in your Certificate of coverage.

The arbitration award is final and binding, and may include attorney fees, and may be entered as judgment in any court with jurisdiction.

[*Id.*, ¶5 (Exh. B)].

Since December 30, 2024, Defendants have produced scores of pages of materially relevant documents and ESI—*e.g.*, records of Plaintiff's text messages—in a trickling manner claiming they "inadvertently" forgot to produce the materially responsive evidential material. [*Id.* at ¶ 4].

Roughly two hours after the Court summarily granted Defendants' motions for protective orders without affording Plaintiff an opportunity to be heard or respond, Defendants produced litany of documents supporting their arbitration defense, and one document containing arbitration agreement between the parties. [*Id.* at ¶ 4 – 5; Ex.B] On January 22, 2025, counsel for Mr. Cacho emailed counsel for Defendants to inquire whether they would agree to arbitrate this case and to meet and confer. [*Id.* at ¶ 5– 9; Ex.C]. Instead of reflexively agreeing to arbitrate —which is one of their affirmative defenses Defendants have raised— (or giving a time and date to telephonically meet and confer) they responded by email and indicated that Defendants refuse to arbitrate. [*Id.* at ¶ 5– 9; Ex.C]. When asked why Defendants would not agree to arbitrate and their legal basis for why this motion should not be granted despite their defense and agreement to arbitrate, their counsel refused to respond. [*Id.* at ¶ 5– 9; Ex.C].

This refusal to arbitrate is curious given positions that Defendants, who are serial violators of the TCPA, have taken in similar positions in cases across the country. [*Id.* At ¶ 9, n1; Ex-D].

## II. LEGAL STANDARDS AND ARGUMENT

The FAA governs the validity of arbitration agreements. The FAA applies to contracts affecting interstate commerce and requires courts to enforce a written agreement to arbitrate contained in any such agreement. 9 U.S.C. § 2. Any ambiguities concerning the scope of an arbitration agreement are to be resolved in favor of compelling arbitration. *See Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners, Inc.*, 312 F.3d 1349, 1358 (11th Cir. 2002), abrogated on other grounds as stated in *Roy Haluch Gravel Co. v. Central Pension Fund*, 134 S. Ct. 772, 779 (2014). "An order to arbitrate [a] particular [dispute] should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960).

Under the FAA, a court must enforce an agreement to arbitrate if: (1) "the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles;" and (2) "the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). In analyzing whether these conditions have been met, courts must keep in mind that the FAA embodies "a liberal federal policy favoring arbitration agreements," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991), and resolve any doubts concerning the scope of arbitrable issues in favor of arbitration.

*See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25 (1983). The Supreme Court has specifically ruled that agreements to arbitrate workplace disputes must be enforced pursuant to the FAA, 9 U.S.C. § 2. *See Circuit City Stores, Inc. v. Saint Clair Adams*, 532 U.S. 105 (2001). In this case, the parties have a valid agreement to arbitrate, and Plaintiff's claims fall within the scope of that agreement. Therefore, the Court should enter an order compelling arbitration.

Section 4 of the FAA permits a court to compel arbitration when one party, as in this case, has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. § 4. Arbitration agreements are governed by and enforceable under the FAA. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23-24 (1991). "[T]he FAA governs the enforceability of arbitration clauses generally," "although state law may dictate the standards for generally applicable contract defenses . . . ." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 887 (6th Cir. 2002) (internal quotations omitted). The FAA and the strong federal policy favoring arbitration that it evidences require courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Consistent with that strong federal policy favoring arbitration, "[f]ederal law counsels that questions of arbitrability, when in doubt, should be resolved in favor of arbitration." *Id.* (*citing Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp.*, 460

U.S. 1, 24 (1983)).[1]

Thus, "as a matter of federal law, any doubts concerning the scope *See also Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 583 (6th Cir. 2021) ("[C]ourts must rigorously enforce arbitration agreements according to their terms") (internal quotation omitted); *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005) ("[I]t is well-established that any doubts regarding arbitrability must be resolved in favor of arbitration, because there is a strong presumption in favor of arbitration under the FAA.") (internal citation omitted). Thus, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Cone Mem'l*, 460 U.S. at 24-25.

The Sixth Circuit has instructed that,

> [w]hen considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the

---

[1] *See also Ciccio,* at 583 ("[C]ourts must rigorously enforce arbitration agreements according to their terms") (internal quotation omitted); *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005) ("[I]t is well-established that any doubts regarding arbitrability must be resolved in favor of arbitration, because there is a strong presumption in favor of arbitration under the FAA.") (internal citation omitted).

proceedings pending arbitration.

*Glazer*, 394 F.3d at 451 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). For reasons stated *infra*, these proceedings should be stayed pending completion of arbitration.

## I. THE COURT SHOULD COMPEL ARBITRATION.

### A. The Parties Have a Valid Written Arbitration Agreement.

The Parties entered into a valid agreement requiring them to arbitrate Cacho's TCPA claim against Defendants concerning calls resulting from his application for insurance when he agreed to the terms on the Freedom Life Insurance Company of America,[2] including the arbitration provision. While the Court should find that this is an issue that has been delegated to the arbitrator, even if the Court takes up this question in deciding whether arbitration can be compelled, it should find in the affirmative.

#### 1. The Question of the Existence of a Valid Written Arbitration Agreement Has Been Delegated to the Arbitrator

As a threshold issue, parties to an arbitration agreement may "agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68– 69 (2010) (citations omitted). As

---

[2] A member company of USHealth Group, Inc.

another court in recently ruled, if parties to an arbitration agreement have clearly and unmistakably agreed to delegate issues of arbitrability to the arbitrator, then the court cannot override that intention, and the arbitrator must decide these threshold issues. *Nelums*, 2023 WL 6161997 at *4. *Accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 139 S. Ct. at 529.

Here, the Arbitration Agreement provides that the arbitrator – not a court – is to decide issues of arbitrability in stating "[a]ny such arbitration shall be conducted in accordance with the commercial rules of the American Arbitration Association, unless modified by specific terms in your Certificate of coverage." [*Zermay Decl.*. ¶ 10, Ex.-E at 5 (emphasis added)]. Those rules (the "AAA Commercial Rules") expressly reserve to the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim . . . ." AAA Commercial Rules R-7(a) (attached to the Declaration of Zachary Z Zermay as Exhibit E). Under precedent involving AAA rules with identical language, "[t]he incorporation of these rules provides clear and unmistakable evidence that the parties agreed to arbitrate gateway arbitrability

question." *Ciccio*, 2 F.4th at 583. In *Nelums*, it was held the exact same arbitration agreement language from C4R Media "mean[s] that the agreement delegates the gateway question of arbitrability to an arbitrator." Nelums, 2023 WL 6161997 at *4. *See also id.* at *3.2 Given the clear and unmistakable intent in the Arbitration Agreement to delegate gateway issues to the arbitrator, arbitrator, this Court should compel the Parties to arbitrate on the gateway question of arbitrability.

### B. In the Alternative, the Court Should Find that Cacho and Defendants Entered Into a Valid Arbitration Agreement

Nevertheless, if the Court is of the view that it can and should decide the existence and validity of the Arbitration Agreement, it is plainly evident that both are established here. The Application provides that "This policy primarily governed by the laws of Mississippi)." Cacho Dec. at ¶ 10, Ex. A at 6. Mississippi law therefore governs.

Under Mississippi law, require a "meeting of the minds between the parties in order for agreements to be valid." *Colyer v. First United Methodist Church of New Albany*, 214 So. 3d 1084, 1088 (Miss. Ct. App. 2016). Defendants have produced a contract of adhesion (on January 17, 2025) late in this case which demonstrates that the Parties agreed to arbitration. Cacho therefore moves to enforce the arbitration and avail himself of the benefit of this bargain.

**C. Cacho's TCPA Claims Raise Arbitrable Issues**

If the Court finds the question of the arbitrability of Mr. Cacho's claims has not been delegated (unlike in *Rent-A-Center*, *Ciccio*, and *Nelums*, among others), and the Court must decide the question, it should answer in the affirmative.

In determining the scope of the arbitration clause, courts look at the parties' intent to submit the dispute to arbitration, starting at the language of the arbitration provision, and construing any doubt in favor of arbitrability in accordance with the strong federal policy favoring arbitration. *See, e.g.,*

*Mitsubishi*, 473 U.S. at 626 ("Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."). The Arbitration Agreement states, in relevant part:

**Arbitration Notice:**

The insurance laws in your state allow for Arbitration Provisions in health coverage plans as a more efficient and economical means of resolving a dispute. Please be advised that the insurance coverage you are applying for contains a provision requiring participation in an alternative dispute resolution that consists of negotiation, non-binding mediation, and binding arbitration.

- If any dispute cannot be resolved by mutual agreement through negotiation or mediation, then it will be resolved by an arbitrator.
- The dispute resolution procedure will take the place of having a judge or jury, and no such dispute will be resolved by a civil trial.
- Any such arbitration shall be conducted in accordance with the commercial rules of the American Arbitration Association, unless modified by specific terms in your Certificate of coverage.

The arbitration award is final and binding, and may include attorney fees, and may be entered as judgment in any court with jurisdiction.

The Parties' dispute squarely concerns, at least, a dispute concerning Defendants' attempts to sell Plaintiff a health coverage plan. The claim concerns his opt in and the consent that he agreed to be called by the list of marketing partners, including Defendants, which is what led to the calls at issue and Plaintiff's transfer to Defendants. See Cacho Decl. at ¶¶. In *Temple*, the court, applying New York law, found that largely similar language in an arbitration

agreement[3] encompassed the plaintiff's TCPA claims because he "received the alleged contact from Defendants as a result of providing his information and assenting to the terms of the Agreement." *Id.* at 1307. The same is true here.

Moreover, the fact that Cacho's TCPA claim is a statutory claim does not place it outside the scope of a valid arbitration agreement. "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA," "'unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi*, 473 U.S. at 628). "[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000).

Nothing in the text or legislative history of the TCPA evidences any such intention.

---

[3] "Should a dispute arise concerning the Site Offering, the terms and conditions of the Agreement or the breach of same by any party hereto: (a) the parties agree to submit their dispute for resolution by arbitration before the American Arbitration Association in New York, New York in accordance with the then current Commercial Arbitration rules of the American Arbitration Association . . . ." 360 F. Supp. 3d at 1296-97.

## III. CONCLUSION

For the foregoing reasons, the Court should enter an order compelling the Plaintiff to arbitrate his claim and staying the proceedings until the arbitrator enters a final award.

**WHEREFORE**, Plaintiff requests the Court compel arbitration and a stay of these proceedings. In the alternative, Plaintiff requests the Court to enter judgment as to Defendants' affirmative defense number 27 located in document numbers 53 and 56, and to stay these proceedings pending the outcome of arbitration. Plaintiff requests such further relief that the Court deems just and appropriate.

DATED: January 24, 2025

Respectfully Submitted,
**ZERMAY LAW, P.A.**

/s/ Zachary Z. Zermay
Zachary Z. Zermay, Esq.
Florida Bar №: 1002905
3000 Coral Way, Suite 1115
Coral Gables, FL 33145
Email: zach@zermaylaw.com
Telephone: (305) 767-3529

**LOCAL RULE 3.01(g) CERTIFICATION**

Plaintiff's undersigned counsel hereby certifies that on January 22 and 23, 2025, he attempted to confer in good faith with Defendants' counsel via telephone and email before filing this motion. Defendants refused to confer by telephone nor would they articulate any reason for refusing consent to the relief sought. [*See generally*, Zermay Decl.].

*/s/Zachary Z. Zermay*
Zachary Z. Zermay, Esq.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 24, 2025 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/Zachary Z. Zermay*
Zachary Z. Zermay, Esq.

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

JOSEPH ALLEN DAVIS, on behalf of
Himself and others similarly situated,

Plaintiff,

vs. Case No.: 1:24-cv-00187-PAB

CLEAR HEALTH, LLC,

Defendant.
_______________________________________/

# DEFENDANT CLEAR HEALTH, LLC'S MOTION TO COMPEL ARBITRATION

Defendant Clear Health, LLC ("Clear Health"), pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA"), moves to compel arbitration and to stay this proceeding under 9 U.S.C. § 3 until the arbitrator enters a final award. A memorandum in support of this Motion is attached.

Dated: June 3, 2024

GREENSPOON MARDER LLP

*/s/ Roy Taub*
Jeffrey A. Backman
(*pro hac vice* application forthcoming)
Roy Taub (*pro hac vice*)
200 E. Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
(954) 491-1120
jeffrey.backman@gmlaw.com
mary.torres@gmlaw.com
roy.taub@gmlaw.com
cheryl.cochran@gmlaw.com

Douglas R. Sargent
Ohio Bar No. 97486
227 W. Monroe, Suite 3950
Chicago, IL 60606
(773) 395-1601
doug.sargent@gmlaw.com

*Attorneys for Defendant Clear Health, LLC*

**FOR THE NORTHERN DISTRICT OF OHIO**

JOSEPH ALLEN DAVIS, on behalf of
Himself and others similarly situated,

Plaintiff,

vs. Case No.: 1:24-cv-00187-PAB

CLEAR HEALTH, LLC,

Defendant.
_________________________________________/

**MEMORANDUM IN SUPPORT OF DEFENDANT**
**CLEAR HEALTH, LLC'S MOTION TO COMPEL ARBITRATION**

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should compel Plaintiff to submit his asserted claims to arbitration.

## PRELIMINARY STATEMENT

Plaintiff Joseph Allen Davis filed his Complaint on January 31, 2024. *See* Dkt. No. 1 (the "Complaint"). Davis asserts a single cause of action against Clear Health under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), alleging Clear Health called him in violation of the TCPA's national registry "do-not-call" rules. *See id*. at ¶¶ 45-49. Davis alleges Clear Health called him because he spoke with a Clear Health employee after calling back a number on January 5, 2024, (*id.* at ¶¶ 21, 27-28), but the number he called was used by Prospects DM, Inc. ("Prospects"), and it transferred Davis to Clear Health only after Plaintiff had called and expressed interest in an insurance quote. More importantly for this Motion, the preceding calls from Prospects were made soley based upon a consent-based lead generated on a website.

Plaintiff knowingly and voluntarily provided his telephone number and other personal information on the website American Career Guide at the URL https://jobs.theamericancareerguide.com/api/offer (the "Site"). The Site is an aggregator of information about jobs from third parties, and visitors have to enter certain information to use certain services on the website. When Plaintiff provided his information and made a submission on the Site, he consented to receive telephone calls from a list of marketing partners, including Health Insurer Quotes and Prospects DM, and expressly agreed to Terms and Conditions requiring arbitration of the claims asserted in this lawsuit and waiving the right to bring a class proceeding.

Under settled principles of law and in furtherance of the strong federal policy in favor of enforcement of arbitration agreements, this Court should compel Plaintiff to proceed to arbitration. Another court in this District recently enforced virtually identical arbitration provisions and site layout in a putative class action lawsuit. *See Nelums v. Am.'s Lift Chairs, LLC*, No. 1:22-CV-00739, 2023 WL 6161997 (N.D. Ohio Sept. 21, 2023). As was done in *Nelums*, the Motion to Compel Arbitration should be granted with all issues delegated to the arbitrator.

## STATEMENT OF FACTS

On September 7, 2023 at or around 3:52 p.m. Eastern Daylight Time, Davis visited a website bearing the name "American Career Guide" at the URL https://jobs.theamericancareerguide.com/api/offer (the "Site"), which is owned and operated by C4R Media Corp. ("C4R Media"). Declaration of Ben Zitter at ¶¶ 3-7. To enter the Site the user must first confirm their contact information by entering their first name, last name, email address, phone number, and zip code. Then, the user must click a button labeled "Continue," which has language immediately above it saying, "By clicking the button below, I confirm I am over 18 and I agree to: (i) the **Privacy Policy** and **Terms and Conditions** . . . and (iii) **How It Works**," as shown in the following partial screenshot:




*Id*. at ¶ 9.

Only by clicking the "Continue" button did Davis advance to the next page of the website. This page prompted Davis to confirm his telephone number, where he re-entered his telephone number, and checked a box confirming his consent to receive sales calls and/or text messages from C4R Media or other marketing partners that are provided in a hyperlinked listing, including Health Insurer Quotes and Prospects DM. *Id.* at ¶¶ 12-14, 18-19. The layout on the Site is depicted in the following partial screenshot:

By checking the box below, I provide my signature expressly consenting to receive sales calls and/or text messages regarding insurance services and/or other offers via an automatic telephone dialing system and/or artificial and/or prerecorded calls from C4R Media Corp or its marketing partners at the cellular/landline telephone number I have provided above, regardless of this number being listed on any federal or state Do Not Call registry. Message and data rates may apply. Get approximately 30 messages per month. Reply "STOP" to any message to cancel. I understand that consent is not required to register or use the site. In order to register without providing consent, leave this box unchecked.

☐ I CONFIRM that all of my information is accurate and consent to be called and/or texted as provided above

*Id.* at ¶ 14.

As reflected in the database entry provided by C4R Media, Davis submitted – actually, re-submitted – his telephone number of (220) 203-8888 on the Site on September 7, 2023. *Id.* at ¶ 15 & Ex. C thereto. Davis's information would not have been provided to Prospects had he not checked the box and confirmed his consent to be called. *Id.*

Clicking on the hyperlink for the "Terms and Conditions" on the website opens up a webpage containing the Site's Terms and Conditions being agreed to. *Id.* at ¶ 10 & Ex. A thereto. The arbitration provision appears under the heading "Dispute Resolution Provisions" (hereinafter the "Arbitration Agreement"), and states in relevant part, in mostly bolded language:

> The Agreement shall be treated as though it were executed and performed in New York, New York and shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflict of law principles). **Should a dispute arise concerning the Website, Promotions, Content, the terms and conditions of the Agreement or the breach of same by any party hereto: (a) the parties agree to submit their dispute for resolution by arbitration before a reputable arbitration organization as mutually agreed upon by the parties in New York, New York, in accordance with the then-current Commercial Arbitration rules of the American Arbitration Association . . . .**
>
> **The parties agree that the arbitrator shall not consolidate more than one person's claims, and shall not otherwise preside over any form of a representative or class proceeding. . . .**
>
> **To the extent permitted by law, you agree that you will not bring, join or**

> **participate in any class action lawsuit as to any claim, dispute or controversy that you may have against Company and/or its employees, officers, directors, members, representatives and/or assigns. . . . This provision preventing you from bringing, joining or participating in class action lawsuits: (i) does not constitute a waiver of any of your rights or remedies to pursue a claim individually and not as a class action in binding arbitration as provided above; and (ii) is an independent agreement. You may opt-out of these dispute resolution provisions by providing written notice of your decision within thirty (30) days of the date that you first access the Website.**

*Id*. at ¶ 10, Ex. A at 3-4 (emphasis in original).

## ARGUMENT

### I. LEGAL STANDARDS

Section 4 of the FAA permits a court to compel arbitration when one party, as in this case, has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. § 4. Arbitration agreements are governed by and enforceable under the FAA. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23-24 (1991). "[T]he FAA governs the enforceability of arbitration clauses generally," "although state law may dictate the standards for generally applicable contract defenses . . . ." *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 887 (6th Cir. 2002) (internal quotations omitted). The FAA and the strong federal policy favoring arbitration that it evidences require courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Consistent with that strong federal policy favoring arbitration, "[f]ederal law counsels that questions of arbitrability, when in doubt, should be resolved in favor of arbitration." *Id.* (citing *Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).[1] Thus, "as a matter of federal law, any doubts concerning the scope

[1] *See also Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 583 (6th Cir. 2021) ("[C]ourts must rigorously enforce arbitration agreements according to their terms") (internal quotation omitted); *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005) ("[I]t is well-established that any doubts regarding arbitrability must be resolved in favor of arbitration, because there is a strong presumption in favor of arbitration under the FAA.") (internal citation omitted).

of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Cone Mem'l*, 460 U.S. at 24-25.

The Sixth Circuit has instructed that,

> [w]hen considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer*, 394 F.3d at 451 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

## II. THE COURT SHOULD COMPEL ARBITRATION OF DAVIS'S CLAIM

### A. A Valid Written Arbitration Agreement Exists

Davis entered into a valid agreement requiring him to arbitrate his TCPA claim against Clear Health concerning calls resulting from the Site when he agreed to the Terms and Conditions on the Site, including the arbitration provision. While the Court should find that this is an issue that has been delegated to the arbitrator, even if the Court takes up this question in deciding whether arbitration can be compelled, it should find in the affirmative.

#### 1. The Question of the Existence of a Valid Written Arbitration Agreement as to Davis Has Been Delegated to the Arbitrator

As a threshold issue, parties to an arbitration agreement may "agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (citations omitted). As another court in this District recently ruled, if parties to an arbitration agreement have clearly and unmistakably agreed to delegate issues of arbitrability to the arbitrator, then the court cannot override that intention and the arbitrator must decide these

threshold issues. *Nelums*, 2023 WL 6161997 at *4. *Accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 139 S. Ct. at 529.

Here, the Arbitration Agreement provides that the arbitrator – not a court – is to decide issues of arbitrability in stating "agree to submit their dispute for resolution by arbitration before a reputable arbitration organization as mutually agreed upon by the parties in New York, New York, *in accordance with the then-current Commercial Arbitration rules of the American Arbitration Association* . . . ." Zitter Dec. at ¶ 10, Ex. A at 3-4 (emphasis added). Those rules (the "AAA Commercial Rules") expressly reserve to the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the *existence*, scope, or *validity* of the arbitration agreement or to the arbitrability of any claim or counterclaim . . . ." AAA Commercial Rules R-7(a) (attached hereto as Exhibit A) (emphases added). Under controlling Sixth Circuit precedent involving AAA rules with identical language, "[t]he incorporation of these rules provides clear and unmistakable evidence that the parties agreed to arbitrate gateway arbitrability question." *Ciccio*, 2 F.4th at 583. In *Nelums*, Judge Ruiz held the exact same arbitration agreement language from C4R Media "mean[s] that the agreement delegates the gateway question of arbitrability to an arbitrator." *Nelums*, 2023 WL 6161997 at *4. *See also id.* at *3.[2] Given the clear and unmistakable intent in the Arbitration Agreement to delegate gateway issues to the

[2] To the extent it is relevant, New York law – the law that governs the Terms and Conditions, (Zitter Dec ¶ 10, Ex. A at 3)) – is the same. *See Fritschler v. Draper Mgmt., LLC*, 203 A.D.3d 623, 623 (N.Y. 1st Dep't 2022); *Schindler v. Cellco P'ship*, 200 A.D.3d 505, 505 (N.Y. 1st Dep't 2021).

arbitrator, this Court should compel Davis to arbitrate on the gateway question of arbitrability.[3]

### 2. In the Alternative, the Court Should Find that Davis Entered Into a Valid Arbitration Agreement

Nevertheless, if the Court is of the view that it can and should decide the existence and validity of the Arbitration Agreement, it is plainly evident that both are established here. The Site's Terms and Conditions provide that "[t]he Agreement shall be treated as though it were executed and performed in New York, New York and shall be governed by and construed in accordance with the laws of the State of New York (without regard to conflict of law principles)." Zitter Dec. at ¶ 10, Ex. A at 3. New York law therefore governs.

Under New York law, "[i]t is a basic tenet of contract law that, in order to be binding, a contract requires a meeting of the minds and a manifestation of mutual assent." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019). *See also Express Indus. & Terminal Corp. v. N.Y. Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999). "When an offeree does not have actual notice of certain contract terms, [the offeree] is nevertheless bound by such terms if [the offeree] is on inquiry notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Starke*, 913 F.3d at 289. "New commerce on the Internet . . . has not fundamentally changed the principles of contract." *Register.com v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004).

One of the primary means of forming a contract on the Internet is the "'clickwrap' (or 'click-through') agreement, in which website users typically click an 'I agree' box after being presented with a list of terms and conditions of use." *IT Strategies Grp., Inc. v. Allday Consulting Grp., L.L.C.*, 975 F. Supp. 2d 1267, 1280 (S.D. Fla. 2013) (quoting *Hines v. Overstock.com*, 668

[3] The delegation clause thus resolves this Motion. *Accord id.* at *4-5. In an abundance of caution, and to provide a complete analysis, Clear Health also addresses the grounds in favor of compelling arbitration of Davis's claims in the absence of an enforceable delegation clause.

F. Supp. 2d 362, 366 (E.D.N.Y. 2009)). *See also*, *e.g.*, *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1302 (M.D. Fla. 2018) (explaining clickwrap agreements "require a user to affirmatively click a box on the website acknowledging awareness of an agreement to the terms of service before he or he is allowed to proceed with further utilization of the website") (quoting *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015)).[4]

"Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (applying California law but noting New York and California apply substantially the same rules for determining whether there has been mutual assent necessary to form a contract) (citing *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (collecting cases)). *See also Temple*, 360 F. Supp. 3d at 1302 (applying New York law, observing that "courts generally find" "[c]lickwrap agreements" "enforceable"); *Whitt v. Prosper Funding LLC*, No. 1:15-CV-136-GHW, 2015 WL 4254062, *5 (S.D.N.Y. July 14, 2015) (collecting cases).

A "clickwrap" or "click-through" agreement "requires users to click an 'I agree' box after being presented with a list of terms and conditions of use." *Meyer*, 868 F.3d at 75. To be bound by an arbitration agreement contained in a clickwrap agreement, the web-user must have "reasonable notice of the arbitration provision." *Starke*, 913 F.3d at 292. When determining whether a plaintiff assented to the terms of a web-based contract, courts "look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in a way that would put [the offeree] on inquiry notice of such terms." *Id.* at 289.

All of these factors are established here. Before entering the Site the user must first confirm

[4] This is in contrast to a browsewrap agreement, which generally "consists of a notice on a website stating that the user is agreeing to and is bound by the website's terms of service by merely using the website." *Temple*, 360 F. Supp. 3d at 1302.

their contact information by entering their first name, last name, email address, telephone number, and zip code. Then, the user must click a button labeled "Continue," which has language immediately above it saying, "By clicking the button below, I confirm I am over 18 and I agree to: (i) the Privacy Policy and Terms and Conditions . . . ." Zitter Decl. at ¶¶ 9-14. The Terms and Conditions were in blue font, in contrast with the black font of the surrounding text, signifying a hyperlink. The clickwrap agreement to arbitrate and the hyperlink to the Terms and Conditions thus were conspicuous and clear and placed Davis on notice so as to validly bind him to the terms he was agreeing to, including the Arbitration Agreement. The Second Circuit has held that "a user would have reasonable notice of the existence of the arbitration provision" where "a reasonably prudent smartphone user knows that text that is highlighted in blue and underlined is hyperlinked to another webpage where additional information will be found." *Meyer*, 868 F.3d at 77-78.[5] As in *Meyer* and *Temple*, here the layout that Davis was presented on the website provided him "reasonable notice" of the Arbitration Agreement based on the fact that the relevant

> screen was "uncluttered"; the "text, including the hyperlinks to the Terms and Conditions and Privacy Policy, appear[ed] directly below the buttons for registration"; . . . and the hyperlinks [were] in blue . . ."; the "notice of the Terms of Service [was] provided simultaneously to enrollment"; and "[o]nce a user clicks through to the Terms of Service, the section heading ('Dispute Resolution') and the sentence waiving the user's right to a jury trial on relevant claims [were] both bolded."

*Meyer*, 868 F.3d at 78-79. Indeed, where, as here, "[t]he sentence regarding the applicability of the Terms and Conditions . . . is placed directly above the 'Continue' button that any user must click to proceed with using the website" there can be no question that reasonable notice of an

[5] *See also Peiran Zheng v. Live Auctioneers LLC*, No. 20-CV-9744 (JGK), 2021 WL 2043562, *5 (S.D.N.Y. May 21, 2021) (applying *Meyer* as statement of New York law and finding similar facts established notice); *Temple*, 360 F. Supp. 3d at 1304 (finding reasonable notice of agreement where "Plaintiff was cautioned that clicking the 'Get a Quote' button would indicate his acceptance to the Agreement available via the Terms and Conditions Hyperlink").

agreement was given "[b]ecause it is nearly impossible that any user would not see that statement before hitting 'Continue.'" *Bell v. Royal Seas Cruises, Inc.*, No. 19-CIV-60752-RAR, 2020 WL 5639947, *6 (S.D. Fla. Sept. 21, 2020). *See also Temple*, 360 F. Supp. 3d at 1304-05 ("Here, the Terms and Conditions Hyperlink was located *above* the 'Get a Quote' button—thus, Plaintiff must have brought the Terms and Conditions Hyperlink within his line of vision before viewing and proceeding to click the 'Get a Quote' button.").

Davis thus was made aware of the Arbitration Agreement on the website (in the Terms and Conditions) and affirmatively expressed his agreement to it. *See generally* Zitter Decl. at ¶¶ 7-27 & Exs. A, C, and D. In fact, notice is undeniable given that he was "require[d] . . . to click an acknowledgement during the [submission] process." *Bell*, 2020 WL 5639947 at *5. Moreover, a "session replay" using data tracked by an industry leader in lead validation and verification, ActiveProspect, during Davis's visit to the website provides visual evidence of his submission, which could not have done unless he clicked "Continue" after being told that by so clicking, "I agree to . . . the Privacy Policy and Terms and Conditions. . . ." Zitter Decl. at ¶¶ 15-16, 20-27, Ex. D. Davis agreed to the Terms and Conditions and there is a valid agreement to arbitrate.[6]

**B. Davis's TCPA Claims Raise Arbitrable Issues**

Only in the event the Court finds the question of the arbitrability of Davis's claims has not

[6] Where the issue is before a court, the FAA provides that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. The required showing mirrors that required to withstand summary judgment in a civil suit." *Great Earth*, 288 F.3d at 889. If the Court determines that Davis has raised a genuine issue as to any material fact as to whether a valid arbitration agreement exists, then "[t]he Federal Arbitration Act requires the district court to 'proceed summarily to the trial' of the disputed fact questions. The parties may not address other issues, including merits issues, before the court resolves these formation questions and [the] motion to compel." *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 844 (6th Cir. 2021) (quoting 9 U.S.C. § 4). Clear Health expressly demands that any such trial be before a jury.

been delegated (unlike in *Rent-A-Center*, *Ciccio*, and *Nelums*, among others), and the Court must decide the question, it should answer in the affirmative.

In determining the scope of the arbitration clause, courts look at the parties' intent to submit the dispute to arbitration, starting at the language of the arbitration provision, and construing any doubt in favor of arbitrability in accordance with the strong federal policy favoring arbitration. *See, e.g., Mitsubishi*, 473 U.S. at 626 ("Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability."). The Arbitration Agreement states, in relevant part:

> ***Should a dispute arise concerning the Website, Promotions, Content*, the terms and conditions of the Agreement or the breach of same by any party hereto: (a) *the parties agree to submit their dispute for resolution by arbitration* before a reputable arbitration organization as mutually agreed upon by the parties in New York, New York, in accordance with the then-current Commercial Arbitration rules of the American Arbitration Association** . . . .

Zitter Dec. at ¶ 10, Ex. A at 3-4 (italicized emphases added).

Davis's claim squarely concerns, at the least, the "Website."[7] The claim concerns his opt-in and the consent that he submitted on the website to be called by the list of marketing partners, including Prospects and Health Insurer Quotes, which is what led to the calls at issue and Plaintiff's transfer to Clear Health. *See* Grant Decl. at ¶¶ 3-6. In *Temple*, the court, applying New York law, found that largely identical language in an arbitration agreement[8] encompassed the plaintiff's TCPA claims because he "received the alleged contact from Defendants as a result of providing his information and assenting to the terms of the Agreement." *Id.* at 1307. The same is true here.

---

[7] The term "Website" is defined to mean the instant website through which the Terms and Conditions were accessed, *i.e.*, "our website," in other words, the "American Career Guide" website. *Id.* at 1.

[8] "Should a dispute arise concerning the Site Offering, the terms and conditions of the Agreement or the breach of same by any party hereto: (a) the parties agree to submit their dispute for resolution by arbitration before the American Arbitration Association in New York, New York in accordance with the then current Commercial Arbitration rules of the American Arbitration Association . . . ." 360 F. Supp. 3d at 1296-97.

Moreover, the fact that Davis's TCPA claim is a statutory claim does not place it outside the scope of a valid arbitration agreement. "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA," "'unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi*, 473 U.S. at 628). "[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000). Nothing in the text or legislative history of the TCPA evidences any such intention.

### C. Clear Health Has Standing to Enforce the Arbitration Agreement

Clear Health's standing to enforce the Arbitration Agreement has also been delegated to the arbitrator under controlling case law. *See Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021) ("[W]hether Rees can enforce the arbitration agreement against Swiger presents a question of arbitrability that Swiger's arbitration agreement delegated to an arbitrator."); *Nelums*, 2023 WL 6161997 at *5; *Cunningham v. Ford Motor Co*., No. 21-CV-10781, 2022 WL 2819115, *4 (E.D. Mich. July 19, 2022). Nonetheless, solely in the event the Court disagrees, Clear Health has standing to enforce the agreement as a third-party beneficiary and under the doctrine of estoppel.

"[A]rbitration agreements may be enforced by nonsignatories through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643-44 (U.S. 2020) (internal quotation omitted). Under New York law, "signatories to an arbitration agreement can be compelled to arbitrate their claims with a non-signatory where "the relationship among the parties, the contracts they signed . . ., and the issues that had arisen' among them discloses that 'the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has

signed.'" *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 70 (2d Cir. 2005) (quoting *JLM Indus. v. Stolt–Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004)). A two-prong "intertwined-ness test" applied by courts in the Second Circuit examines "whether: (1) the signatory's claims arise under the subject matter of the underlying agreement, and (2) whether there is a close relationship between the signatory and the non-signatory party." *Temple*, 360 F. Supp. 3d at 1309.

The *Temple* decision is particularly instructive. As the court in *Temple* found in a similar situation involving the generation of a telemarketing lead from a submission and consent on a website that resulted in allegedly unlawful text messages, "Plaintiff's claim clearly arises under the subject matter of the Arbitration Provision. . . . Plaintiff's claim against Lending Tree concerns Lending Tree's contact of Plaintiff, which occurred as a result of Plaintiff utilizing the website's Contact Services." 360 F. Supp. 3d at 1310. Similarly here, Davis is suing over calls he attributes to Clear Health, but those calls were made by Prospects and related to Health Insurer Quotes, both of which are listed marketing partners he "consent[ed] to receive sales calls and/or text messages . . . from" on the Site. Zitter Dec. at ¶¶ 14-19. The only times Prospects communicated with Plaintiff where when he called Prospects on January 5, 2024 nearly four hours after an unanswered telephone call, which Prospects made solely based on the lead from C4R Media containing his information and relating to Health Insurer Quotes. Grant Decl. at ¶ 5. Thus, there can be no question that Davis's claims here arise under the subject matter of the underlying agreement.

There is also a sufficiently close relationship between the signatory and the non-signatory party. "To hold that the requisite close relationship is met, a court must find that the 'relationship among the parties [is] of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.'" *Temple*, 360 F. Supp. 3d at

1310 (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008)). "[R]elationships are sufficiently intertwined where the non-signatory party is 'linked textually' to the underlying contract or where a signatory understood the extent of the non-signatory's involvement with respect to the signatories' relationship." *Id.* at 1310-11 (citations omitted). Both apply here. On the same webpage on the Site where Davis acknowledged that by clicking "Continue" he agreed to the Terms and Conditions, he also acknowledged he "agree[d] to . . . (iii) How It Works." Clicking on that hyperlink brings up a webpage that states, among other things:

- **You will be asked to opt in**. When you sign up on this site, you will be asked to opt in to receive ads by email, text message, and/or phone.

- **You will get marketing messages from us and our third party partners**. If you opt in, you will receive marketing messages from us and many of our partners, by email, phone, and/or text. . . . If you do not want to receive marketing messages or have your data shared, do not sign up or opt in.

* * * * *

> We are able to provide you this free site based on your willingness to be contacted by us and our third party partners via email, telephone, and/or SMS. Consent to be contacted by phone or SMS is not required to use the site, but if you do opt in to this you will be contacted by us and our partners by phone and/or SMS with offers . . . .

Zitter Dec. at ¶ 10, Ex. B thereto.

And, of course, in submitting his information on the Site, Davis checked the box signifying that he "expressly consent[ed] to receive sales calls and/or text messages . . . from C4R Media or its marketing partners at the cellular/landline telephone number I have provided above . . . ." *Id.* at ¶¶ 12-20, Exhibits C & D thereto. "Accordingly, Plaintiff was on notice that his utilization of the website contact forms and simultaneous consent to the [Arbitration] Agreement would not merely create a relationship between Plaintiff and [C4R Media], but would also subject Plaintiff to potential relationships with a defined group of third parties" and persons calling on their behalf,

"including, resultantly, [Prospects, Health Insurer Quotes, and, based on his own allegations, Clear Health]." *Temple*, 360 F. Supp. 3d at 1311.

"Even if [Prospects, Health Insurer Quotes, or Clear Health] is deemed not to have been "linked textually" to the [C4R Media] Arbitration [Agreement] because it was not specifically named, Plaintiff reasonably should have known the potential involvement of the defined group of third parties." *Id.* The reasons for this are quite similar to those found in *Temple*:

> First, as just discussed, Plaintiff was at least generally on notice that one or more other parties might contact him. Second, it appears Plaintiff even had reason to know that Lending Tree, specifically, might contact him. Once on the website, but before continuing to submit information, users were informed that clicking "Get a Quote" meant that he or she agreed to share information with certain lenders and partners. The terms "lenders" and "partners" were underlined, containing hyperlinks. Those hyperlinks, when clicked, led the user to a list of names which included Lending Tree.

*Id.*

Similarly, the Site contained a hyperlinked list of marketing partners from whom Davis consented to receive "sales calls," giving Davis reason to know that a marketing partner may be contacting him as a result of his agreement with C4R. *See* Zitter Dec. at ¶¶ 12-20, Exhibits C & D thereto. And, indeed, that is precisely why he received the calls at issue. *See* Grant Dec. at ¶¶ 3-6. Thus, Davis should be estopped from avoiding arbitration with Clear Health over calls from Prospects because "the relationships among the parties developed in a manner that made it unfair for [signatory 1] to claim that its agreement to arbitrate ran only to [signatory 2] and not to [the non-signatory]. . . . In short, this is not a case where a non-signatory is a 'complete stranger' to a contract." *Temple*, 360 F. Supp. 3d at 1311 (internal quotation omitted).

## CONCLUSION

For the foregoing reasons, the Court should enter an order compelling the Plaintiff to arbitrate his claim and staying the proceedings until the arbitrator enters a final award.

Dated: June 3, 2024

GREENSPOON MARDER LLP

*/s/ Roy Taub*
Jeffrey A. Backman
(*pro hac vice* application forthcoming)
Roy Taub (*pro hac vice*)
200 E. Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
(954) 491-1120
jeffrey.backman@gmlaw.com
mary.torres@gmlaw.com
roy.taub@gmlaw.com
cheryl.cochran@gmlaw.com

Douglas R. Sargent
Ohio Bar No. 97486
227 W. Monroe, Suite 3950
Chicago, IL 60606
(773) 395-1601
doug.sargent@gmlaw.com

*Attorneys for Defendant Clear Health, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 3, 2024, a true and correct copy of the foregoing was served on all counsel of record via CM-ECF.

*/s/ Roy Taub*
ROY TAUB

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| **JOSHUA CACHO,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **6:23-CV-00737-CEM-EJK** |
| **USHEALTH ADVISORS, LLC, et al,** | § | |
| **Defendants** | § | |

**To: USHealth Advisors, LLC,**

Under the authority of Fed. R. Civ. P. 33 Plaintiff Joshua Cacho requests that Defendant serve an answer to each interrogatory separately and fully, in writing and under oath within 30 days and under the authority of Fed. R. Civ. P. 34, to produce and permit inspection and copying of the documents requested below within 30 days of service as follows:

## I. DEFINITIONS

1. "Agreement" means a contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons.

2. "Any" means one or more.

3. "Communication" means any disclosure, transfer, or exchange of information or opinion, however made.

4. "Document" means any written, recorded, or graphic material of any kind, whether prepared by you or by any other person, that is in your possession, custody, or control. The term includes agreements; contracts; letters; telegrams; inter-office communications; memoranda; reports; records; instructions; specifications; notes; notebooks; scrapbooks; diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts; graphs; descriptions; drafts, whether or not they resulted in a final document; minutes of meetings, conferences, and telephone or other conversations or communications; invoices; purchase orders; bills of lading;

recordings; published or unpublished speeches or articles; publications; transcripts of telephone conversations; phone mail; electronic-mail; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs.

The term "document" also includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers; any such document is to be produced in a reasonably legible and usable form. The term "document" includes all drafts of a document and all copies that differ in any respect from the original, including any notation, underlining, marking, or information not on the original. The term also includes information stored in, or accessible through, computer or other information retrieval systems (including any computer archives or back-up systems), together with instructions and all other materials necessary to use or interpret such data compilations.

Without limitation on the term "control" as used in the preceding paragraph, a document is deemed to be in your control if you have the right to secure the document or a copy thereof from another person.

5. "Identify" or "identity" means to state or a statement of:

a. in the case of a person other than a natural person, its name, the address of its principal place of business (including zip code), its telephone number, and the name of its chief executive officer, as well as, if it has a person other than a natural person that ultimately controls it, that other person's name, the address of that person's principal place of business (including zip code), that other person's telephone number, and the name of that other person's chief executive officer;

b. in the case of a natural person, his or her name, business address and telephone number, employer, and title or position;

c. in the case of a communication, its date, type (e.g., telephone conversation or discussion), the place where it occurred, the identity of the person who made the communication, the identity of the person who received the communication, the identity of each other person when it was made, and the subject matter discussed;

d. in the case of a document, the title of the document, the author, the title or position of the author, the addressee, each recipient, the type of document, the subject matter, the date of preparation, and its number of pages; and

e. in the case of an agreement, its date, the place where it occurred, the identity of all persons who were parties to the agreement, the identity of each person who has knowledge of the agreement and all other persons present when it was made, and the subject matter of the agreement.

6. "Including" means including, but not limited to.

7. "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office or other business or legal entity, whether private or governmental.

8. "Relating to" means containing, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, studying, commenting or reporting on, mentioning, analyzing, or referring, alluding, or pertaining to, in whole or in part.

9. "You" or "your" means USHealth Advisors, LLC.

10. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted. The term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following document requests all information or documents that would be excluded absent this definition.

## II. INSTRUCTIONS

1. Unless otherwise specified, the documents called for by these document requests are documents in your possession, custody, or control that were applicable, effective, prepared, written, generated, sent, dated, or received at any time from November 2018 to the present., the four years preceding the calls alleged in this matter.

2. Under the authority of Fed. R. Civ. P. 26(e), you are under a duty reasonably to supplement any response to these discovery requests when you learn that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to us during the discovery process or in writing.

3. For any document withheld under a claim of privilege, submit a sworn or certified statement yourself that identifies the document by author, addressee, date, number of pages, and subject matter; specify the nature and basis of the claimed privilege and the paragraph of this demand for documents to which the document is responsive; and identify each person to whom the document or its contents, or any part thereof, has been disclosed.

4. For any document responsive to these document requests which is known to have been destroyed or lost, or is otherwise unavailable, identify each such document by author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or loss, or the reason for the unavailability of such document, including the location of such document when last in your possession, custody, or control, and the date and manner of its disposition.

5. In responding to any document request that calls for documents relating to "any person," or "each person," include information or documents relating to your company, if applicable.

6. Each document that is written in whole or in part in any language other than English or that contains any marginal notations in such a language must be accompanied by a certified verbatim English language translation, and all existing English language versions, of all such writings and notations.

7. In response to these Requests For Production Defendant need not reproduce to Plaintiff any document produced to Plaintiff in the course of this litigation.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all federal and state lawsuits in which USHealth Advisors, LLC was named as a defendant and the Plaintiff alleged violations of the Telephone Consumer Protection Act (TCPA) or any of the TCPA implementing regulations, or the plaintiff accused USHealth Advisors, LLC of violating a state consumer protection law.

**RESPONSE:**

**INTERROGATORY NO. 2:**

Identify all complaints received from November 2018 to the present in which Defendant was accused of violating the Telephone Consumer Protection Act, any of the TCPA implementing regulations, or any State consumer protection law.

**RESPONSE:**

**INTERROGATORY NO. 3:**

Identify any person or company that made outbound solicitation phone calls on behalf of USHealth Advisors, LLC from November 2018 to the present.

**RESPONSE:**

**INTERROGATORY NO. 4:**

Identify any company USHealth Advisors, LLC entered into a contractual agreement with to make outbound solicitation phone calls.

**RESPONSE:**

**INTERROGATORY NO. 5:**

Identify the dates of any TCPA compliance training conducted by USHealth Advisors, LLC, or any company that made outbound solicitation phone calls on behalf of USHealth Advisors, LLC, from November 2018 to the present.

**RESPONSE:**

**INTERROGATORY NO. 6:**

Identify each company to whom Defendant made a payment earned as a result of solicitation phone calls made on behalf of Defendant.

**RESPONSE:**

**INTERROGATORY NO. 7:**

Identify all platforms used to communicate with all companies that have made outbound telemarketing phone calls on behalf of Defendant from November 2018 to the present. For example, Whatsapp, phone, email, Linkedin, Instagram, Facebook, Telegram, or any other method in which communication occurred.

**RESPONSE:**

**INTERROGATORY NO. 8:**

Identify by name and country of origin all companies that made outbound solicitation phone calls on behalf of Defendant.

**RESPONSE:**

**INTERROGATORY NO. 9:**

Identify how much money you have paid as a result of settlements in which USHealth Advisors, LLC was accused of violating the Telephone Consumer Protection Act or any of the implementing regulations of the Telephone Consumer Protection Act.

**RESPONSE:**

**INTERROGATORY NO. 10:**

State by year how many outbound solicitation phone calls were made by USHealth Advisors, LLC, or by an entity that makes referrals to USHealth Advisors, LLC, from 2018 to the present.

**RESPONSE:**

**INTERROGATORY NO. 11:**

State the name, title, address, phone number, and email address of the person responsible for Telephone Consumer Protection Act compliance.

**RESPONSE:**

**INTERROGATORY NO. 12:**

State the name, title, address, phone number, and email address of each person who viewed my Complaint, emails, spoke with me on the phone, or spoke to an internal company source about me or my Complaint from November 2018 to the present.

**RESPONSE:**

**INTERROGATORY NO. 13:**

State the name, title, address, phone number, and email address of each person or company that made outbound solicitation phone calls on behalf of USHealth Advisors, LLC, or referred potential clients, to USHealth Advisors, LLC, from November 2018 to the present.

**RESPONSE:**

**INTERROGATORY NO. 14:**

Please list any disciplinary action that may have been taken against USHealth Advisors, LLC by any federal, state, or local agency, organization, or other governmental body within the last ten (10) years.

**RESPONSE:**

**INTERROGATORY NO. 15:**

State the name, title, address, phone number and email address of each person responsible for

maintaining USHealth Advisors, LLC's internal do not call list and internal do not call policy from 1991 to the present.

**RESPONSE:**

**INTERROGATORY NO. 16:**

Identify each and every written or oral Communication received or sent by USHealth Advisors, LLC or any of USHealth Advisors, LLC's representatives concerning the subject matter of this Litigation and for each and every written Communication, annex hereto a copy of the Communication, and for each and every oral Communication, set forth the substance of the Communication, the Persons participating, and the date(s) of the Communication.

**RESPONSE:**

**INTERROGATORY NO. 17:**

Has any Document or other tangible thing identified in response to these Interrogatories or which has been requested to be produced in any Requests for the Production of Documents been shredded, discarded, destroyed, otherwise lost or not retained? If so, identify those Documents or tangible things in accordance with the instructions set forth above.

**RESPONSE:**

## REQUESTS FOR PRODUCTION

**REQUEST 1:** Produce all invoices, bills, or other billing materials related to the payment of services for outbound telemarketing from November 2018 to the present.

**RESPONSE:**

**REQUEST 2:** Produce all contracts with any companies that made outbound solicitation phone calls from November 2018 to the present in which the products or services of USHealth Advisors, LLC were solicited.

**RESPONSE:**

**REQUEST 3:** Produce all outbound and inbound call records from November 2018 to the present.

**RESPONSE:**

**REQUEST 4:** Produce a copy of all state telephone solicitation registrations. "State registrations" is defined as any registration with any of the several states that allows USHealth Advisors, LLC to make solicitation phone calls that comply with state law.

**RESPONSE:**

**REQUEST 5:** Produce all bank statements and canceled checks from November 2018 to the present.

**RESPONSE:**

**REQUEST 6:** Produce statements from any money transfer accounts used by Defendants to make payments to vendors. Money transfer accounts are defined as, but not limited to, Veem, Money Gram, Western Union, Paypal, Zelle, Venmo, and any other method in which money is transferred from one person to another.

**RESPONSE:**

**REQUEST 7:** Produce all statements of cash flows, income statements, and balance sheets from November 2018 to the present.

**RESPONSE:**

**REQUEST 8:** Produce a copy of all telephone solicitation scripts used by USHealth Advisors, LLC or any company that made outbound solicitation phone calls on behalf of USHealth Advisors, LLC from November 2018 to the present. This includes all drafts of such scritps.

**RESPONSE:**

**REQUEST 9:** Please produce any and all statements, written or recorded, including drafts, obtained or prepared, concerning, referring to, or relating to the Telephone Consumer Protection Act or the TCPA implementing regulations.

**RESPONSE:**

**REQUEST 10:** Please produce any email in which the Telephone Consumer Protection Act, any Telephone Consumer Protection Act implementing regulations, or any subsection of the TCPA is referenced or mentioned.

**RESPONSE:**

**REQUEST 11:** Produce a copy of each call list, spreadsheet, database, or any method used to make outbound solicitation phone calls from November 2018 to the present.

**RESPONSE:**

**REQUEST 12:** Produce a copy of all checks and/or wire transfers that were used to pay for telemarketing services.

**RESPONSE:**

**REQUEST 13:** Produce a copy of each communication in which USHealth Advisors, LLC is accused of violating the Telephone Consumer Protection Act or any of implementing regulations of the Telephone Consumer Protection Act.

**RESPONSE:**

**REQUEST 14:** Produce all meeting notes, minutes, meeting agendas, audio recordings, and video recordings of meetings in which the Telephone Consumer Protection Act or the implementing regulations of the Telephone Consumer Protection Act are mentioned or are a topic of discussion.

**RESPONSE:**

**REQUEST 15:** Produce copies of all messages from social media platforms in which the Telephone Consumer Protection Act or the implementing regulations of the Telephone Consumer Protection Act are mentioned from November 2018 to the present. Social media platforms is defined as, but not limited to, Linkedin, Instagram, Facebook, Twitter (now called X), WhatsApp, Telegram, Microsoft Teams, Skype, or any media platform used to transmit messages other than email, mail, fax, and or telephone.

**RESPONSE:**

**REQUEST 15:** Produce the company directory of officers and employees. This should include every iteration and version of the company directory from November 2018 to present.

**RESPONSE:**

Respectfully Submitted,

Joshua Cacho 8/22/2023

Joshua Cacho

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| **JOSHUA CACHO,** <br> **Plaintiff,** <br> **v.** <br> **USHEALTH ADVISORS, LLC et al,** <br> **Defendants** | § § § § § § § § § § § § § § | **6:23-CV-00737-CEM-EJK** |

**PLAINTIFF JOSHUA CACHO'S SECOND SET OF COMBINED DISCOVERY REQUESTS TO USHEALTH ADVISORS, LLC**

To: USHealth Advisors, LLC, c/o counsel of record Mr. Jeffrey Aaron Backman and Mr. Roy Taub.

Plaintiff serves this Second Set of Combined Discovery Requests on USHealth Advisors, LLC (USHA or Defendant), and requests Defendant's responses within 30 days after the service of these requests.

Dated: January 16, 2024.

Respectfully submitted,

*/s/ Joshua Cacho*
Joshua Cacho

## Certificate of Service

I certify that on January 16, 2024, I served a true and correct copy of Plaintiff's Second Set of Combined Discovery Requests on Defendant USHealth Advisors, LLC's counsel of record Jeffrey Aaron Backman and Roy Taub via email to Jeffrey.backman@gmlaw.com and roy.taub@gmlaw.com.

*/s/ Joshua Cacho*
**Joshua Cacho**

## INSTRUCTIONS

1. For a Document that no longer exists or cannot be located, identify the Document, state how and when it was lost, or when it could no longer be located, and the reasons for the loss. Identify each person having knowledge about the disposition or loss of the Document and any other Document evidencing the lost Document or any facts about it.

a. When identifying the Document, state the following:

1) The nature of the Document (*e.g.,* letter, handwritten note).

2) The title or heading on the Document.

3) The date of the Document and the date of each addendum or supplement.

4) The identity of the Document's author and signatory and the person on whose behalf or at whose request or direction the Document was prepared or delivered.

b. When identifying the person, state the following:

1) Their full name.

2) Their present or last known residential address and telephone number.

3) Their present or last known office address and office telephone number.

4) Their present occupation, job title, employer, and employer's address.

2. The term "any" should be understood in its most or least inclusive sense as necessary to bring within the scope of discovery request all responses that might otherwise be construed to be outside of the scope.

3. The connectives "and" and "or" should be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4. Where a specific Document is requested, such request shall not be interpreted to exclude any other Documents where it is known that such other Documents contain information relevant to the request.

5. For each Document or other requested information that you assert is privileged or is not discoverable, identify that Document or other requested information and state the specific grounds for the claim of privilege or other ground for exclusion.

6. Produce the requested Documents as they are kept in the ordinary course of business. All documents shall be Bates labeled and shall be produced electronically in a single page Group IV TIFF format (except that Microsoft Excel files shall be produced in native format), with load files containing, for each document, extracted searchable text and all available metadata for at least the following fields:

| **Metadata** | **Description** |
|---|---|
| Document Date | The date of the document. |
| Date Sent | The date on which an email file was sent. |
| Date Received | The date on which an email file was received. |
| Date Created | The date an electronic file was created as recorded by the operating system |
| Date Last Modified | The date an electronic file was last modified as recorded by the operating system |
| Document Type | The type of document (e.g., email, Microsoft Word 2000, Microsoft Excel, etc.). |
| File Name | The name of the file under which the document is saved. |
| File Extension | The extension of each electronic file (e.g. .doc, .xls) |
| Author Name | The creator of a document. |

| **Metadata** | **Description** |
|---|---|
| From | For emails, the sender of the document. |
| To | For emails, the recipient(s) of a document. |
| CC | For emails, the person(s) who received copies of a document. |
| BCC | For emails, the person(s) who received blind copies of a document. |
| Custodian | The name of the individual or source from which the document was collected. |
| Beg Bates | The beginning Bates number of the document |
| End Bates | The last Bates number of the document |
| Family ID | A unique number consistently populated for every member of a given family group, including the parent. |
| Email Subject | The subject of an email file. |
| Time Sent | The time an email was sent. |
| Time Received | The time an email was received. |
| Original File Path | The original location an electronic file was collected from. For email, this will indicate the original folder(s) in the user's mail account from which the email was collected. |
| Duplicate Custodians | A list of the custodians or sources that were owners of a duplicate copy of an electronic file. |
| Duplicate File Path | The original file path for each duplicate. |
| Native Path | The relative location of any native files delivered on production media. |
| Text Path | The relative location of all extracted/OCR text files delivered on production media. |

7. These requests are continuing. So if the Document described in any request is not in existence or in your control or possession at the time of your first response, but later comes into

existence or into your control or possession, immediately produce such Document.

8. In answering USHealth Advisor's Second Set of Interrogatories, provide an affidavit or declaration under penalty of perjury verifying your answers in accordance with the Federal Rule of Civil Procedure 33(b)(3).

9. Unless otherwise specifically stated, the relevant time period for the responses is from **January 1, 2021, to the present**.

## DEFINITIONS[1]

1. **"Backup"** means a copy of active data, intended for use in restoration of data.

2. **"USHA"** means Defendant USHealth Advisors, LLC, Defendant, or you.

3. **"Cacho"** means Joshua Cacho, or Plaintiff.

4. **"Communication"** means spoken, written, or electronic transmission of information or request for information, including, without limitations, conversations, telephone calls, meetings, discussions, conferences, seminars, letters, memoranda, facsimiles, telecopies, telexes, emails, and online postings.

5. **"Complaint"** means the live pleading and includes the Second Amended Complaint filed on August 17, 2023, in the lawsuit.

6. **"Computer"** includes, without limitations, network servers, desktops, laptops, notebook computers, mainframes, the personal digital assistants such as PalmPilot, Cassiopeia, HP Journada and other such handheld computing devices, digital cell phones, and pagers.

7. **"Data"** means any and all information stored on media that may be accessed by a computer.

8. **"Document,"** whether singular or plural, includes without limitations:

- any electronically stored data on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensic software);
- any "deleted" but recoverable electronic files on said media;
- any electronic file fragments (files that have been deleted and partially overwritten with new data); and

[1] The singular of all definitions and terms includes the plural of such definitions and terms whenever such a change would result in any additional information responsive to a request.

- slack (data fragments stored randomly from random access memory on a hard drive during the normal operation of a computer [RAM slack] or residual data left on the hard drive after new data has overwritten some but not all of previously stored data).

9. **"Electronically Stored Information,"** or **"ESI"** means any Document and information electronically stored on backup systems, servers, drives, or tapes.

10. **"Hard drive"** means the primary hardware that a computer uses to store information, typically magnetized media on rotating disks.

11. **"Lawsuit"** means *Joshua Cacho v. USHealth Advisors, LLC et al*; Cause No. **6:23-CV-00737-CEM-EJK**; In the United States District Court for the Middle District of Florida, Orlando Division.

12. **"Magnetic or optical storage media"** includes, without limitations, hard drives, also known as hard disks, backup tapes, CD-ROMs, DVD-ROMs, JAZ and Zip drives, and floppy disks.

13. **"Network"** means a group of connected computers that allows people to share information and equipment (e.g., local area network [LAN], wide area network [WAN], metropolitan area network [MAN], storage area network [SAN], peer-to-peer network, and client-server network).

14. **"Network operating system"** means software that directs the overall activity of networked computers.

15. **"Operating system"** means software that directs the overall activity of a computer (e.g., MS-DOS, Windows, Linux).

16. **"Person"** is used in its broadest sense and means any individual, firm, corporation, partnership, joint venture, governmental agency or any other form of entity, together with any officers, directors, partners, trustees, employees, representatives, or agents thereof.

17. **"Defendant"** means USHealth Advisors, LLC., USHA, or you.

18. **"Possession, "custody"** or **"control"** means physical possession of the Document or thing or right to possession equal or superior to that of the person who has physical possession of the Document or thing.

19. **"Related to," "relating to," "referring to," "reflecting," "concerning"** or **"evidencing"** are used in their broadest sense, and mean anything that, directly or indirectly, generally or specifically, regards, relates to, refers to, concerns, contains, constitutes, contradicts, evidences, embodies, compromises, reflects, mentions, identifies, states, deals with, comments on, responds to, describes, analyzes or is in anyway, directly or indirectly, relevant to the subject.

20. **"Software"** means any set of instructions stored on computer-readable media that tells a computer what to do and includes operating systems and applications.

21. **"Storage Media"** means any removable devices that store data.

22. **"You"** means USHealth Advisors, LLC, USHA, or Defendant.

23. **"My phone number"** means the phone number on which I alleged USHA placed calls to, which is numerically represented as 407.780.9810.

## Second Set of Interrogatories

**Interrogatory No. 1:** Identify all text messages and phone calls sent to phone number 407-780-9810 Plaintiff from John Murillas from January 1, 2021, to present.

**Answer:**

**Interrogatory No. 2:** Identify all text messages and phone calls sent to phone number 407-780-9810 Plaintiff from Nathalia Perez from January 1, 2021, to present.

**Answer:**

**Interrogatory No. 3:** Identify all text messages and phone calls sent to phone number 407-780-9810 Plaintiff from Jordan Richy from January 1, 2021, to present.

**Answer:**

**Interrogatory No. 4:** Identify all text messages and phone calls sent to phone number 407-780-9810 Plaintiff from Roberto Cabrera from January 1, 2021, to present.

**Answer:**

**Interrogatory No. 5:** Identify all text messages and phone calls sent to phone number 407-780-9810 Plaintiff from Brandon Martinez from January 1, 2021, to present.

**Answer:**

**Interrogatory No. 6:** Identify all text messages and phone calls sent to phone number 407-780-9810 Plaintiff from Jennifer Maser from January 1, 2021, to present.

**Answer:**

**Interrogatory No. 7:** State who is the owner of the webpage https://ushagent.com/BrandonMartinez.

**Answer:**

**Interrogatory No. 8:** State who is the owner of the webpage https://ushagent.com/JenniferMaser.

**Answer:**

**Interrogatory No. 9:** State who is the owner of the webpage https://ushagent.com/NathaliaPerez.

**Answer:**

**Interrogatory No. 10:** State who is the owner of the webpage https://ushagent.com/StevenLaBracke

**Answer:**

**Interrogatory No. 11: State the relationship between Roberto Cabrera and USHealth Group, Inc.**

**Answer:**

**Interrogatory No. 12: State the relationship between Roberto Cabrera and USHealth Advisors, LLC.**

**Answer:**

## First Set of Requests for Admission

**Admission No. 1:** Admit USHealth Advisors, LLC is a wholly-owned subsidiary of USHealth Group, Inc.

Response:

**Admission No. 2:** Admit USHA sells individual health insurance plans and supplementary products underwritten by Freedom Life Insurance Company of America.

Response:

**Admission No. 3:** Admit Exhibit A attached to this RFA is a true and correct copy of the "Our Advisors" section of the webpage https://ushealthgroup.com/about/

Response:

**Admission No. 4:** Admit Exhibit B attached to this RFA is a true copy of the registered trademark #3346463, serial number 78580794 filed with the United States Patent and Trademark Office.

Response:

**Admission No. 5:** Admit USHealth Group, Inc. is the owner of the registered trademark #3346463, serial number 78580794.

**Response:**

**Admission No. 6:** Admit registered trademark #3346463, serial number 78580794 appears on the webpage https://www.ushagent.com/BrandonMartinez

**Response:**

**Admission No. 7:** Admit registered trademark #3346463, serial number 78580794 appears on the webpage https://www.ushagent.com/JenniferMaser.

**Response:**

**Admission No. 8:** Admit registered trademark #3346463, serial number 78580794 appears on the webpage https://www.ushagent.com/NathaliaPerez.

**Response:**

**Admission No. 9:** Admit USHealth Group Inc. owns webpage

https://www.ushagent.com/BrandonMartinez.

**Response:**

**Admission No. 10:** Admit USHealth Group Inc. owns webpage https://www.ushagent.com/JenniferMaser.

**Response:**

**Admission No. 11:** Admit USHealth Group Inc. owns webpage https://www.ushagent.com/NathaliaPerez.

**Response:**

**Admission No. 12:** Admit webpage https://www.ushagent.com/BrandonMartinez is used to market insurance products issued by Freedom Life Insurance Company of America, National Life Insurance Company, and Enterprise Life Insurance Company.

**Response:**

**Admission No. 13.** Admit Freedom Life Insurance Company of America, National Life Insurance Company, and Enterprise Life Insurance Company are all wholly owned subsidiaries of USHealth Group Inc.

**Response:**

**Admission No. 14:** Admit webpage https://www.ushagent.com/JenniferMaser is used to market insurance products issued by Freedom Life Insurance Company of America, National Life Insurance Company, and Enterprise Life Insurance Company.

**Response:**

**Admission No. 15:** Admit webpage https://www.ushagent.com/NathaliaPerez is used to market insurance products issued by Freedom Life Insurance Company of America, National Life Insurance Company, and Enterprise Life Insurance Company.

**Response:**

**Admission No. 16:** Admit Brandon Martinez uses USHealth Group, Inc.'s name, image, and likeness to market insurance on the webpage https://www.ushagent.com/BrandonMartinez.

**Response:**

**Admission No. 17:** Admit Jennifer Maser uses USHealth Group, Inc.'s name, image, and likeness to market insurance on the webpage https://www.ushagent.com/JenniferMaser.

Response:

**Admission No. 18:** Admit Nathalia Perez uses USHealth Group, Inc.'s name, image, and likeness to market insurance on the webpage https://www.ushagent.com/NathaliaPerez.

**Response:**

**Admission No. 19:** Admit the word "independent" does not appear on the webpage https://ushagent.com/BrandonMartinez

**Response:**

**Admission No. 20:** Admit the word "independent" does not appear on the webpage https://ushagent.com/JenniferMaser.

**Response:**

**Admission No. 21:** Admit the word "independent" does not appear on the webpage https://www.ushagent.com/NathaliaPerez.

**Response:**

**Admission No. 22:** Admit the webpage https://www.ushagent.com/JenniferMaser contains the phrase "As a USHealth Advisors Agent."

**Response:**

**Admission No. 23:** Admit Exhibit C attached to this RFA is a true copy of the registered trademark #5538393, serial number 87489209 filed with the United States Patent and Trademark Office.

**Response:**

**Admission No. 24:** Admit USHealth Advisors, LLC. is the owner of the registered trademark #5538393, serial number 87489209.

**Response:**

**Admission No. 25:** Admit registered trademark #5538393, serial number 87489209 appears on webpage https://www.ushagent.com/JenniferMaser.

**Response:**

**Admission No. 26:** Admit Exhibit D attached to this RFA is a true copy of the registered trademark #5370076, serial number 87488885 filed with the United States Patent and Trademark Office.

**Response:**

**Admission No. 27:** Admit USHealth Advisors, LLC is the owner of the registered trademark #5370076, serial number 87489209.

**Response:**

**Admission No. 28:** Admit registered trademark #5370076, serial number 87489209 appears on webpage https://www.ushagent.com/NathaliaPerez.

**Response:**

**Admission No. 29 :** Admit USHealth Group, Inc. has the authority to revoke the webpage https://www.ushagent.com/BrandonMartinez without the consent of Brandon.

**Response:**

**Admission No. 30:** Admit USHealth Group, Inc. has the authority to revoke the webpage https://www.ushagent.com/JenniferMaser without the consent of Jennifer Maser.

**Response:**

**Admission No. 31:** Admit USHealth Group Inc. has the authority to revoke the webpage https://www.ushagent.com/NathaliaPerez without the consent of Nathalia Perez.

**Response:**

**Admission No. 32:** Admit USHealth Group Inc.'s name, image, and likeness is used with permission on the webpage https://www.ushagent.com/NathaliaPerez.

**Response:**

**Admission No. 33:** Admit USHealth Group Inc.'s name, image, and likeness is used with permission on the webpage https://www.ushagent.com/BrandonMartinez.

**Response:**

**Admission No. 34:** Admit USHealth Group Inc.'s name, image, and likeness is used with permission on the webpage https://www.ushagent.com/JenniferMaser.

**Response:**

**Admission No. 35:** Admit Plaintiff Joshua Cacho filed case number 6:22-cv-01439-CEM-EJK on August 12, 2022.

**Response:**

**Admission No. 36:** Admit case number 6:22-cv-01439-CEM-EJK alleged TCPA violations by USHealth Group Inc.

**Response:**

**Admission No. 37:** USHealth Group Inc. was served with the complaint and summons for case 6:22-cv-01439-CEM-EJK on September 9, 2022.

**Response:**

**Admission No. 38:** Admit Plaintiff received text messages Jennifer Maser after September 9, 2022.

**Response:**

**Admission No. 39:** Admit Plaintiff received text messages from Roberto Cabrera after September 9, 2022.

**Response:**

## First Set of Requests for Production

**Request for Production No. 1:** Produce a copy of the contract between Brandon Martinez and USHealth Group Inc.

**Response:**

**Request for Production No. 2:** Produce a copy of the contract between Jennifer Maser and USHealth Group Inc.

**Response:**

**Request for Production No. 3:** Produce a copy of the contract between Nathalia Perez and USHealth Group Inc.

**Response:**

**Request for Production No. 4:** Produce a copy of all outbound call and text records to phone number 407-780-9810 from Brandon Martinez from January 1, 2021, to present.

**Response:**

**Request for Production No. 5:** Produce a copy of all outbound call and text records to phone number 407-780-9810 from Jennifer Maser from January 1, 2021, to present.

**Response:**

**Request for Production No. 6:** Produce a copy of all outbound call and text records to phone number 407-780-9810 from Nathalia Perez from January 1, 2021, to present.

**Response:**

**Request for Production No. 7:** Produce a copy of all outbound call and text records to phone number 407-780-9810 from Jordan Richey from January 1, 2021, to present.

**Response:**

**Request for Production No. 8:** Produce a copy of all outbound call and text records to phone number 407-780-9810 from Roberto Cabrera from January 1, 2021, to present.

**Response:**

**Request for Production No. 9:** Produce a copy of all outbound call and text records to phone number 407-780-9810 from John Murillas from January 1, 2021, to present.

**Response:**

**Request for Production No. 10:** Produce a copy of the contract between Brandon Martinez and USHealth Advisors, LLC.

**Response:**

**Request for Production No. 11:** Produce a copy of the contract between Jennifer Maser and USHealth Advisors, LLC.

**Response:**

**Request for Production No. 12:** Produce a copy of the contract between Nathalia Perez and USHealth Advisors, LLC.

**Response:**

**Request for Production No. 13:** Produce a copy of the contract between Brandon Martinez and Freedom Life Insurance Company of America.

**Response:**

**Request for Production No. 14:** Produce a copy of the contract between Jennifer Maser and Freedom Life Insurance Company of America.

**Response:**

**Request for Production No. 15:** Produce a copy of the contract between Nathalia Perez and Freedom Life Insurance Company of America.

**Response:**

# EXHIBIT A

# Our Advisors

Our Specified Disease/Sickness, Accident, Life and supplemental products are made available through our wholly-owned subsidiary, USHEALTH Advisors, LLC. In the complex world of health insurance, our customers are assured of an exceptional buying experience anchored by the guidance of a licensed and trusted USHEALTH Advisors Agent, who must meet specific product training and certification standards before being authorized to represent our products.

Our commitment to personal attention has made USHEALTH Advisors a recognized world leader for business growth, innovation and customer care. Every day, more and more individuals, families and business owners are turning to USHEALTH Advisors and USHEALTH Group to fulfill their insurance coverage needs.

# Our Service

The USHEALTH Group subsidiaries understand two fundamental truth customer is unique and, 2) a "one size fits all" approach is not alway answer. That's why we provide a broad choice of flexible solutions th each customer's individual needs. Once our customer chooses their USHEALTH Group solidifies their decision with our award-winning cus service and exceptional claim processing.

Being named a 2013 Top 50 North American Call Center ranks USHEA among the elite companies in America for customer service. And wit claim processing and payment cycles that are the envy of the insur industry, USHEALTH Group has built a stellar reputation for customer

Subscribe to get future updates.

By signing up, you are agreeing to our Privacy Policy and Terms of Use. You can unsubscribe at any time.

Email

Subscribe

# EXHIBIT B

**For assistance with TSDR**, email teas@uspto.gov and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

**TSDR Currently Experiencing Intermittent Outages**

The Trademark Status and Document Retrieval (TSDR) system is currently experiencing intermittent outages internally and externally. During this time you may be unable to view documents or check the status of applications and registrations. Once this technical issue is resolved, this message will be removed. We apologize for any inconvenience this causes.

STATUS | DOCUMENTS | MAINTENANCE | Back to Search | Print

| | | | |
|---|---|---|---|
| **Generated on:** | This page was generated by TSDR on 2024-01-16 15:33:39 EST | | |
| **Mark:** | USHEALTH GROUP | | |
| **US Serial Number:** | 78580794 | **Application Filing Date:** | Mar. 04, 2005 |
| **US Registration Number:** | 3346463 | **Registration Date:** | Nov. 27, 2007 |
| **Register:** | Supplemental | | |
| **Mark Type:** | Service Mark | | |
| **TM5 Common Status Descriptor:** | LIVE/REGISTRATION/Issued and Active<br>The trademark application has been registered with the Office. | | |
| **Amended to Principal Register:** | No | **Date Amended to Current Register:** | Dec. 22, 2006 |
| **Status:** | The registration has been renewed. | | |
| **Status Date:** | Dec. 19, 2017 | | |

## Mark Information

Collapse All

| | |
|---|---|
| **Mark Literal Elements:** | USHEALTH GROUP |
| **Standard Character Claim:** | No |
| **Mark Drawing Type:** | 3 - AN ILLUSTRATION DRAWING WHICH INCLUDES WORD(S)/ LETTER(S) /NUMBER(S) |

| | |
|---|---|
| **Color(s) Claimed:** | Color is not claimed as a feature of the mark. |
| **Disclaimer:** | GROUP |
| **Design Search Code(s):** | 26.11.21 - Rectangles that are completely or partially shaded |

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | insurance underwriting services in the field of health | | |
| **International Class(es):** | 036 - Primary Class | **U.S Class(es):** | 100, 101, 102 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Feb. 07, 2006 | **Use in Commerce:** | Feb. 07, 2006 |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | No | **Currently Use:** | Yes |
| **Filed ITU:** | Yes | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No |
| **Filed No Basis:** | No | **Currently No Basis:** | No |

## Current Owner(s) Information

| | | | |
|---|---|---|---|
| **Owner Name:** | USHEALTH Group, Inc. | | |
| **Owner Address:** | 300 Burnett Street, Suite 200<br>Fort Worth, TEXAS UNITED STATES 76102 | | |
| **Legal Entity Type:** | CORPORATION | **State or Country Where** | DELAWARE |

| | | Organized: | |
|---|---|---|---|

## Attorney/Correspondence Information

### Attorney of Record

| | | | |
|---|---|---|---|
| Attorney Name: | Wesley Anderson | | |
| Attorney Primary Email Address: | wesley.anderson@uhg.com | Attorney Email Authorized: | Yes |

### Correspondent

| | | | |
|---|---|---|---|
| Correspondent Name/Address: | Wesley Anderson<br>9900 Bren Road East<br>Legal Intake<br>Minnetonka, MINNESOTA UNITED STATES 55343 | | |
| Phone: | 952-936-6938 | | |
| Correspondent e-mail: | tmatlanta@seyfarth.com wesley.anderson@uhg.com abby.remley@uhg.com trademarks@uhg.com | Correspondent e-mail Authorized: | Yes |

### Domestic Representative - Not Found

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Apr. 04, 2023 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Apr. 04, 2023 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Apr. 04, 2023 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Apr. 17, 2020 | NOTICE OF SUIT | |
| Dec. 27, 2019 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Dec. 27, 2019 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Nov. 06, 2018 | NOTICE OF SUIT | |
| Dec. 19, 2017 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| Dec. 19, 2017 | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | |
| Dec. 19, 2017 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | |

| | | |
|---|---|---|
| Dec. 19, 2017 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | |
| Nov. 22, 2017 | TEAS SECTION 8 & 9 RECEIVED | |
| Nov. 27, 2016 | COURTESY REMINDER - SEC. 8 (10-YR)/SEC. 9 E-MAILED | |
| Dec. 07, 2013 | NOTICE OF ACCEPTANCE OF SEC. 8 - E-MAILED | |
| Dec. 07, 2013 | REGISTERED - SEC. 8 (6-YR) ACCEPTED | |
| Nov. 26, 2013 | REGISTERED - SEC. 8 (6-YR) FILED | |
| Dec. 07, 2013 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | |
| Nov. 26, 2013 | TEAS SECTION 8 RECEIVED | |
| May 04, 2008 | CORRECTION UNDER SECTION 7 - PROCESSED | |
| Feb. 15, 2008 | ASSIGNED TO PARALEGAL | |
| Feb. 04, 2008 | PAPER RECEIVED | |
| Feb. 04, 2008 | SEC 7 REQUEST FILED | |
| Feb. 04, 2008 | PAPER RECEIVED | |
| Nov. 27, 2007 | REGISTERED-SUPPLEMENTAL REGISTER | |
| Feb. 28, 2007 | EXPARTE APPEAL TERMINATED | 580794 |
| Feb. 24, 2007 | LAW OFFICE PUBLICATION REVIEW COMPLETED | |
| Feb. 21, 2007 | APPROVED FOR REGISTRATION SUPPLEMENTAL REGISTER | |
| Feb. 20, 2007 | ASSIGNED TO LIE | |
| Feb. 20, 2007 | EXAMINERS AMENDMENT MAILED | |
| Feb. 19, 2007 | EXAMINER'S AMENDMENT ENTERED | |
| Feb. 19, 2007 | EXAMINERS AMENDMENT -WRITTEN | |
| Jan. 31, 2007 | PREVIOUS ALLOWANCE COUNT WITHDRAWN | |
| Jan. 31, 2007 | APPROVED FOR REGISTRATION SUPPLEMENTAL REGISTER | |
| Jan. 31, 2007 | USE AMENDMENT ACCEPTED | |
| Jan. 31, 2007 | AMENDMENT TO USE PROCESSING COMPLETE | |
| Dec. 22, 2006 | USE AMENDMENT FILED | |
| Dec. 22, 2006 | TEAS AMENDMENT OF USE RECEIVED | |
| Dec. 22, 2006 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Dec. 22, 2006 | EX PARTE APPEAL-INSTITUTED | 580794 |

| | | |
|---|---|---|
| Dec. 22, 2006 | JURISDICTION RESTORED TO EXAMINING ATTORNEY | 580794 |
| Dec. 22, 2006 | EXPARTE APPEAL RECEIVED AT TTAB | |
| Jun. 22, 2006 | FINAL REFUSAL MAILED | |
| Jun. 21, 2006 | FINAL REFUSAL WRITTEN | |
| Apr. 14, 2006 | TEAS/EMAIL CORRESPONDENCE ENTERED | |
| Mar. 24, 2006 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| Mar. 24, 2006 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Sep. 29, 2005 | NON-FINAL ACTION MAILED | |
| Sep. 28, 2005 | NON-FINAL ACTION WRITTEN | |
| Sep. 25, 2005 | ASSIGNED TO EXAMINER | |
| Mar. 11, 2005 | NEW APPLICATION ENTERED | |

## TM Staff and Location Information

**TM Staff Information - None**

**File Location**

| | | | |
|---|---|---|---|
| **Current Location:** | GENERIC WEB UPDATE | **Date in Location:** | Dec. 19, 2017 |

## Assignment Abstract Of Title Information - Click to Load

## Proceedings - Click to Load

# EXHIBIT C

**For assistance with TSDR**, email **teas@uspto.gov** and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

**TSDR Currently Experiencing Intermittent Outages**

The Trademark Status and Document Retrieval (TSDR) system is currently experiencing intermittent outages internally and externally. During this time you may be unable to view documents or check the status of applications and registrations. Once this technical issue is resolved, this message will be removed. We apologize for any inconvenience this causes.



| | | | |
|---|---|---|---|
| **Generated on:** | This page was generated by TSDR on 2024-01-16 15:32:35 EST | | |
| **Mark:** | USHEALTH ADVISORS | | |
| **US Serial Number:** | 87489209 | **Application Filing Date:** | Jun. 14, 2017 |
| **US Registration Number:** | 5538393 | **Registration Date:** | Aug. 14, 2018 |
| **Filed as TEAS Plus:** | Yes | **Currently TEAS Plus:** | Yes |
| **Register:** | Principal | | |
| **Mark Type:** | Service Mark | | |
| **TM5 Common Status Descriptor:** | LIVE/REGISTRATION/Issued and Active<br>The trademark application has been registered with the Office. | | |
| **Status:** | Registered. The registration date is used to determine when post-registration maintenance documents are due. | | |
| **Status Date:** | Aug. 14, 2018 | | |
| **Publication Date:** | May 29, 2018 | | |

## Mark Information

Collapse All

| | |
|---|---|
| **Mark Literal Elements:** | USHEALTH ADVISORS |
| **Standard Character Claim:** | No |
| **Mark Drawing Type:** | 3 - AN ILLUSTRATION DRAWING WHICH INCLUDES WORD(S)/ LETTER(S) /NUMBER(S) |

| | |
|---|---|
| **Description of Mark:** | The mark consists of the stylized text "USHEALTH" appearing above a shaded horizontal bar with the stylized text "ADVISORS" appearing within this horizontal bar. A circular design of a phoenix appears to the left of this text. |
| **Color(s) Claimed:** | Color is not claimed as a feature of the mark. |
| **Disclaimer:** | "US HEALTH ADVISORS" |
| **Design Search Code(s):** | 01.15.15 - Fire (flames), emanating from objects, words or numbers<br>04.05.05 - Phoenix<br>26.01.09 - Circles having animals as a border; Circles having geometric figures as a border; Circles having humans as a border; Circles having objects as a border; Circles having plants as a border; Geometric figures, objects, humans, plants or animals forming or bordering the perimeter of a circle.<br>26.11.21 - Rectangles that are completely or partially shaded |

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | Insurance agencies; Insurance consultancy; Insurance consultation; Insurance information | | |
| **International Class(es):** | 036 - Primary Class | **U.S Class(es):** | 100, 101, 102 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Apr. 11, 2011 | **Use in Commerce:** | Apr. 11, 2011 |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No |
| **Filed No Basis:** | No | **Currently No Basis:** | No |

## Current Owner(s) Information

| | | | |
|---|---|---|---|
| **Owner Name:** | USHEALTH Advisors, LLC | | |
| **Owner Address:** | 300 Burnett St #200<br>Fort Worth, TEXAS UNITED STATES 76102 | | |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY | **State or Country Where Organized:** | TEXAS |

## Attorney/Correspondence Information

**Attorney of Record**

| | | | |
|---|---|---|---|
| **Attorney Name:** | Wesley Anderson | **Docket Number:** | 23845-9041 |
| **Attorney Primary Email Address:** | wesley.anderson@uhg.com | **Attorney Email Authorized:** | Yes |

**Correspondent**

| | | | |
|---|---|---|---|
| **Correspondent Name/Address:** | Wesley Anderson<br>UnitedHealth Group Incorporated<br>9900 Bren Road East<br>Legal Intake<br>Minnetonka, MINNESOTA United States 55343 | | |
| **Phone:** | 952-936-6938 | | |
| **Correspondent e-mail:** | wesley.anderson@uhg.com tmatlanta@seyfarth.com abby.remley@uhg.com trademarks@uhg.com | **Correspondent e-mail Authorized:** | Yes |

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Nov. 29, 2023 | TEAS SECTION 8 & 15 RECEIVED | |
| Aug. 14, 2023 | COURTESY REMINDER - SEC. 8 (6-YR) E-MAILED | |
| Apr. 04, 2023 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Apr. 04, 2023 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |

| | |
|---|---|
| Apr. 04, 2023 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED |
| Apr. 17, 2020 | NOTICE OF SUIT |
| Dec. 27, 2019 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED |
| Dec. 27, 2019 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED |
| Nov. 06, 2018 | NOTICE OF SUIT |
| Aug. 14, 2018 | REGISTERED-PRINCIPAL REGISTER |
| May 29, 2018 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED |
| May 29, 2018 | PUBLISHED FOR OPPOSITION |
| May 08, 2018 | TEAS CHANGE OF CORRESPONDENCE RECEIVED |
| May 09, 2018 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED |
| Apr. 19, 2018 | WITHDRAWN FROM PUB - SENIOR ATTORNEY REQUEST |
| Apr. 11, 2018 | APPROVED FOR PUB - PRINCIPAL REGISTER |
| Apr. 11, 2018 | EXAMINER'S AMENDMENT ENTERED |
| Apr. 11, 2018 | NOTIFICATION OF EXAMINERS AMENDMENT E-MAILED |
| Apr. 11, 2018 | EXAMINERS AMENDMENT E-MAILED |
| Apr. 11, 2018 | EXAMINERS AMENDMENT -WRITTEN |
| Apr. 05, 2018 | PREVIOUS ALLOWANCE COUNT WITHDRAWN |
| Mar. 27, 2018 | WITHDRAWN FROM PUB - OG REVIEW QUERY |
| Mar. 09, 2018 | APPROVED FOR PUB - PRINCIPAL REGISTER |
| Mar. 09, 2018 | EXAMINER'S AMENDMENT ENTERED |
| Mar. 09, 2018 | NOTIFICATION OF EXAMINERS AMENDMENT E-MAILED |
| Mar. 09, 2018 | EXAMINERS AMENDMENT E-MAILED |
| Mar. 09, 2018 | EXAMINERS AMENDMENT -WRITTEN |
| Mar. 08, 2018 | TEAS/EMAIL CORRESPONDENCE ENTERED |
| Mar. 07, 2018 | CORRESPONDENCE RECEIVED IN LAW OFFICE |
| Mar. 07, 2018 | TEAS RESPONSE TO OFFICE ACTION RECEIVED |
| Sep. 07, 2017 | NOTIFICATION OF NON-FINAL ACTION E-MAILED |
| Sep. 07, 2017 | NON-FINAL ACTION E-MAILED |
| Sep. 07, 2017 | NON-FINAL ACTION WRITTEN |

| | |
|---|---|
| Aug. 31, 2017 | ASSIGNED TO EXAMINER |
| Jun. 22, 2017 | NOTICE OF DESIGN SEARCH CODE E-MAILED |
| Jun. 21, 2017 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED |
| Jun. 17, 2017 | NEW APPLICATION ENTERED |

## TM Staff and Location Information

**TM Staff Information - None**

**File Location**

| | | | |
|---|---|---|---|
| **Current Location:** | PUBLICATION AND ISSUE SECTION | **Date in Location:** | Aug. 14, 2018 |

## Assignment Abstract Of Title Information - Click to Load

## Proceedings - Click to Load

# EXHIBIT D

**For assistance with TSDR**, email teas@uspto.gov and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

**TSDR Currently Experiencing Intermittent Outages**

The Trademark Status and Document Retrieval (TSDR) system is currently experiencing intermittent outages internally and externally. During this time you may be unable to view documents or check the status of applications and registrations. Once this technical issue is resolved, this message will be removed. We apologize for any inconvenience this causes.



**Generated on:** This page was generated by TSDR on 2024-01-16 15:34:09 EST

**Mark:**



| | | | |
|---|---|---|---|
| **US Serial Number:** | 87488885 | **Application Filing Date:** | Jun. 14, 2017 |
| **US Registration Number:** | 5370076 | **Registration Date:** | Jan. 02, 2018 |
| **Filed as TEAS Plus:** | Yes | **Currently TEAS Plus:** | Yes |

**Register:** Principal

**Mark Type:** Service Mark

**TM5 Common Status Descriptor:** LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

**Status:** Registered. The registration date is used to determine when post-registration maintenance documents are due.

**Status Date:** Jan. 02, 2018

**Publication Date:** Oct. 17, 2017

## Mark Information

Collapse All

| | |
|---|---|
| **Mark Literal Elements:** | None |
| **Standard Character Claim:** | No |
| **Mark Drawing Type:** | 2 - AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S) /NUMBER(S) |
| **Description of Mark:** | The mark consists of circular design in form of phoenix. |
| **Color(s) Claimed:** | Color is not claimed as a feature of the mark. |
| **Design Search Code(s):** | 01.15.15 - Fire (flames), emanating from objects, words or numbers<br>04.05.05 - Phoenix<br>26.01.03 - Circles, incomplete (more than semi-circles); Incomplete circles (more than semi-circles) |

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | Insurance agencies; Insurance consultancy; Insurance consultation; Insurance information | | |
| **International Class(es):** | 036 - Primary Class | **U.S Class(es):** | 100, 101, 102 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Apr. 07, 2010 | **Use in Commerce:** | Apr. 07, 2010 |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No |
| **Filed No Basis:** | No | **Currently No Basis:** | No |

## Current Owner(s) Information

| | | | |
|---|---|---|---|
| **Owner Name:** | USHEALTH Advisors, LLC | | |
| **Owner Address:** | 300 Burnett St #200<br>Fort Worth, TEXAS UNITED STATES 76102 | | |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY | **State or Country Where Organized:** | TEXAS |

## Attorney/Correspondence Information

**Attorney of Record**

| | | | |
|---|---|---|---|
| **Attorney Name:** | Wesley Anderson | **Docket Number:** | 23845-9041 |
| **Attorney Primary Email Address:** | wesley.anderson@uhg.com | **Attorney Email Authorized:** | Yes |

**Correspondent**

| | | | |
|---|---|---|---|
| **Correspondent Name/Address:** | Wesley Anderson<br>UnitedHealth Group Inc.<br>9900 Bren Road East<br>Legal Intake<br>Minnetonka, MINNESOTA United States 55343 | | |
| **Phone:** | 952-936-6938 | | |
| **Correspondent e-mail:** | wesley.anderson@uhg.com tmatlanta@seyfarth.com abby.remley@uhg.com trademarks@uhg.com | **Correspondent e-mail Authorized:** | Yes |

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Nov. 29, 2023 | TEAS SECTION 8 & 15 RECEIVED | |
| Apr. 04, 2023 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Apr. 04, 2023 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Apr. 04, 2023 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |

| | |
|---|---|
| Jan. 02, 2023 | COURTESY REMINDER - SEC. 8 (6-YR) E-MAILED |
| Apr. 17, 2020 | NOTICE OF SUIT |
| Dec. 27, 2019 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED |
| Dec. 27, 2019 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED |
| Nov. 06, 2018 | NOTICE OF SUIT |
| May 08, 2018 | TEAS CHANGE OF CORRESPONDENCE RECEIVED |
| Jan. 02, 2018 | REGISTERED-PRINCIPAL REGISTER |
| Oct. 17, 2017 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED |
| Oct. 17, 2017 | PUBLISHED FOR OPPOSITION |
| Sep. 27, 2017 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED |
| Sep. 07, 2017 | APPROVED FOR PUB - PRINCIPAL REGISTER |
| Aug. 31, 2017 | ASSIGNED TO EXAMINER |
| Jun. 22, 2017 | NOTICE OF DESIGN SEARCH CODE E-MAILED |
| Jun. 21, 2017 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED |
| Jun. 17, 2017 | NEW APPLICATION ENTERED |

## TM Staff and Location Information

**TM Staff Information - None**

**File Location**

| | | | |
|---|---|---|---|
| **Current Location:** | PUBLICATION AND ISSUE SECTION | **Date in Location:** | Jan. 02, 2018 |

## Assignment Abstract Of Title Information - Click to Load

## Proceedings - Click to Load

# EXHIBIT A

USHEALTH GROUP
A UnitedHealthcare Company

Insurance underwritten by:
Freedom Life Insurance Company of America
National Foundation Life Insurance Company
Enterprise Life Insurance Company



# Our Advisors

Our Specified Disease/Sickness, Accident, Life and supplemental products are made available through our wholly-owned subsidiary, USHEALTH Advisors, LLC. In the complex world of health insurance, our customers are assured of an exceptional buying experience anchored by the guidance of a licensed and trusted USHEALTH Advisors Agent, who must meet specific product training and certification standards before being authorized to represent our products.

Our commitment to personal attention has made USHEALTH Advisors a recognized world leader for business growth, innovation and customer care. Every day, more and more individuals, families and business owners are turning to USHEALTH Advisors and USHEALTH Group to fulfill their insurance coverage needs.

# Our Service

The USHEALTH Group subsidiaries understand two fundamental truth customer is unique and, 2) a "one size fits all" approach is not alway answer. That's why we provide a broad choice of flexible solutions th each customer's individual needs. Once our customer chooses their USHEALTH Group solidifies their decision with our award-winning cus service and exceptional claim processing.

Being named a 2013 Top 50 North American Call Center ranks USHEA among the elite companies in America for customer service. And wit claim processing and payment cycles that are the envy of the insur industry, USHEALTH Group has built a stellar reputation for customer

# EXHIBIT B

**For assistance with TSDR**, email teas@uspto.gov and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

**TSDR Currently Experiencing Intermittent Outages**

The Trademark Status and Document Retrieval (TSDR) system is currently experiencing intermittent outages internally and externally. During this time you may be unable to view documents or check the status of applications and registrations. Once this technical issue is resolved, this message will be removed. We apologize for any inconvenience this causes.



| | | | |
|---|---|---|---|
| **Generated on:** | This page was generated by TSDR on 2024-01-16 15:33:39 EST | | |
| **Mark:** | USHEALTH GROUP | | |
| **US Serial Number:** | 78580794 | **Application Filing Date:** | Mar. 04, 2005 |
| **US Registration Number:** | 3346463 | **Registration Date:** | Nov. 27, 2007 |
| **Register:** | Supplemental | | |
| **Mark Type:** | Service Mark | | |
| **TM5 Common Status Descriptor:** | LIVE/REGISTRATION/Issued and Active<br>The trademark application has been registered with the Office. | | |
| **Amended to Principal Register:** | No | **Date Amended to Current Register:** | Dec. 22, 2006 |
| **Status:** | The registration has been renewed. | | |
| **Status Date:** | Dec. 19, 2017 | | |

## Mark Information

Collapse All

| | |
|---|---|
| **Mark Literal Elements:** | USHEALTH GROUP |
| **Standard Character Claim:** | No |
| **Mark Drawing Type:** | 3 - AN ILLUSTRATION DRAWING WHICH INCLUDES WORD(S)/ LETTER(S) /NUMBER(S) |

| | |
|---|---|
| **Color(s) Claimed:** | Color is not claimed as a feature of the mark. |
| **Disclaimer:** | GROUP |
| **Design Search Code(s):** | 26.11.21 - Rectangles that are completely or partially shaded |

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | insurance underwriting services in the field of health | | |
| **International Class(es):** | 036 - Primary Class | **U.S Class(es):** | 100, 101, 102 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Feb. 07, 2006 | **Use in Commerce:** | Feb. 07, 2006 |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | No | **Currently Use:** | Yes |
| **Filed ITU:** | Yes | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No |
| **Filed No Basis:** | No | **Currently No Basis:** | No |

## Current Owner(s) Information

| | | | |
|---|---|---|---|
| **Owner Name:** | USHEALTH Group, Inc. | | |
| **Owner Address:** | 300 Burnett Street, Suite 200<br>Fort Worth, TEXAS UNITED STATES 76102 | | |
| **Legal Entity Type:** | CORPORATION | **State or Country Where** | DELAWARE |

| | | Organized: | |
|---|---|---|---|

## Attorney/Correspondence Information

**Attorney of Record**

| | | | |
|---|---|---|---|
| **Attorney Name:** | Wesley Anderson | | |
| **Attorney Primary Email Address:** | wesley.anderson@uhg.com | **Attorney Email Authorized:** | Yes |

**Correspondent**

| | | | |
|---|---|---|---|
| **Correspondent Name/Address:** | Wesley Anderson<br>9900 Bren Road East<br>Legal Intake<br>Minnetonka, MINNESOTA UNITED STATES 55343 | | |
| **Phone:** | 952-936-6938 | | |
| **Correspondent e-mail:** | tmatlanta@seyfarth.com wesley.anderson@uhg.com abby.remley@uhg.com trademarks@uhg.com | **Correspondent e-mail Authorized:** | Yes |

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Apr. 04, 2023 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Apr. 04, 2023 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Apr. 04, 2023 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Apr. 17, 2020 | NOTICE OF SUIT | |
| Dec. 27, 2019 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Dec. 27, 2019 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |
| Nov. 06, 2018 | NOTICE OF SUIT | |
| Dec. 19, 2017 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| Dec. 19, 2017 | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | |
| Dec. 19, 2017 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | |

| | | |
|---|---|---|
| Dec. 19, 2017 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | |
| Nov. 22, 2017 | TEAS SECTION 8 & 9 RECEIVED | |
| Nov. 27, 2016 | COURTESY REMINDER - SEC. 8 (10-YR)/SEC. 9 E-MAILED | |
| Dec. 07, 2013 | NOTICE OF ACCEPTANCE OF SEC. 8 - E-MAILED | |
| Dec. 07, 2013 | REGISTERED - SEC. 8 (6-YR) ACCEPTED | |
| Nov. 26, 2013 | REGISTERED - SEC. 8 (6-YR) FILED | |
| Dec. 07, 2013 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | |
| Nov. 26, 2013 | TEAS SECTION 8 RECEIVED | |
| May 04, 2008 | CORRECTION UNDER SECTION 7 - PROCESSED | |
| Feb. 15, 2008 | ASSIGNED TO PARALEGAL | |
| Feb. 04, 2008 | PAPER RECEIVED | |
| Feb. 04, 2008 | SEC 7 REQUEST FILED | |
| Feb. 04, 2008 | PAPER RECEIVED | |
| Nov. 27, 2007 | REGISTERED-SUPPLEMENTAL REGISTER | |
| Feb. 28, 2007 | EXPARTE APPEAL TERMINATED | 580794 |
| Feb. 24, 2007 | LAW OFFICE PUBLICATION REVIEW COMPLETED | |
| Feb. 21, 2007 | APPROVED FOR REGISTRATION SUPPLEMENTAL REGISTER | |
| Feb. 20, 2007 | ASSIGNED TO LIE | |
| Feb. 20, 2007 | EXAMINERS AMENDMENT MAILED | |
| Feb. 19, 2007 | EXAMINER'S AMENDMENT ENTERED | |
| Feb. 19, 2007 | EXAMINERS AMENDMENT -WRITTEN | |
| Jan. 31, 2007 | PREVIOUS ALLOWANCE COUNT WITHDRAWN | |
| Jan. 31, 2007 | APPROVED FOR REGISTRATION SUPPLEMENTAL REGISTER | |
| Jan. 31, 2007 | USE AMENDMENT ACCEPTED | |
| Jan. 31, 2007 | AMENDMENT TO USE PROCESSING COMPLETE | |
| Dec. 22, 2006 | USE AMENDMENT FILED | |
| Dec. 22, 2006 | TEAS AMENDMENT OF USE RECEIVED | |
| Dec. 22, 2006 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Dec. 22, 2006 | EX PARTE APPEAL-INSTITUTED | 580794 |

| | | |
|---|---|---|
| Dec. 22, 2006 | JURISDICTION RESTORED TO EXAMINING ATTORNEY | 580794 |
| Dec. 22, 2006 | EXPARTE APPEAL RECEIVED AT TTAB | |
| Jun. 22, 2006 | FINAL REFUSAL MAILED | |
| Jun. 21, 2006 | FINAL REFUSAL WRITTEN | |
| Apr. 14, 2006 | TEAS/EMAIL CORRESPONDENCE ENTERED | |
| Mar. 24, 2006 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| Mar. 24, 2006 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Sep. 29, 2005 | NON-FINAL ACTION MAILED | |
| Sep. 28, 2005 | NON-FINAL ACTION WRITTEN | |
| Sep. 25, 2005 | ASSIGNED TO EXAMINER | |
| Mar. 11, 2005 | NEW APPLICATION ENTERED | |

## TM Staff and Location Information

**TM Staff Information - None**

**File Location**

| | | | |
|---|---|---|---|
| **Current Location:** | GENERIC WEB UPDATE | **Date in Location:** | Dec. 19, 2017 |

## Assignment Abstract Of Title Information - Click to Load

## Proceedings - Click to Load

# EXHIBIT C

**For assistance with TSDR**, email **teas@uspto.gov** and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

**TSDR Currently Experiencing Intermittent Outages**

The Trademark Status and Document Retrieval (TSDR) system is currently experiencing intermittent outages internally and externally. During this time you may be unable to view documents or check the status of applications and registrations. Once this technical issue is resolved, this message will be removed. We apologize for any inconvenience this causes.

STATUS | DOCUMENTS | MAINTENANCE | Back to Search | Print

| | | | |
|---|---|---|---|
| **Generated on:** | This page was generated by TSDR on 2024-01-16 15:32:35 EST | | |
| **Mark:** | USHEALTH ADVISORS | | |
| **US Serial Number:** | 87489209 | **Application Filing Date:** | Jun. 14, 2017 |
| **US Registration Number:** | 5538393 | **Registration Date:** | Aug. 14, 2018 |
| **Filed as TEAS Plus:** | Yes | **Currently TEAS Plus:** | Yes |
| **Register:** | Principal | | |
| **Mark Type:** | Service Mark | | |
| **TM5 Common Status Descriptor:** | LIVE/REGISTRATION/Issued and Active<br>The trademark application has been registered with the Office. | | |
| **Status:** | Registered. The registration date is used to determine when post-registration maintenance documents are due. | | |
| **Status Date:** | Aug. 14, 2018 | | |
| **Publication Date:** | May 29, 2018 | | |

## Mark Information

Collapse All

| | |
|---|---|
| **Mark Literal Elements:** | USHEALTH ADVISORS |
| **Standard Character Claim:** | No |
| **Mark Drawing Type:** | 3 - AN ILLUSTRATION DRAWING WHICH INCLUDES WORD(S)/ LETTER(S) /NUMBER(S) |

| | |
|---|---|
| **Description of Mark:** | The mark consists of the stylized text "USHEALTH" appearing above a shaded horizontal bar with the stylized text "ADVISORS" appearing within this horizontal bar. A circular design of a phoenix appears to the left of this text. |
| **Color(s) Claimed:** | Color is not claimed as a feature of the mark. |
| **Disclaimer:** | "US HEALTH ADVISORS" |
| **Design Search Code(s):** | 01.15.15 - Fire (flames), emanating from objects, words or numbers<br>04.05.05 - Phoenix<br>26.01.09 - Circles having animals as a border; Circles having geometric figures as a border; Circles having humans as a border; Circles having objects as a border; Circles having plants as a border; Geometric figures, objects, humans, plants or animals forming or bordering the perimeter of a circle.<br>26.11.21 - Rectangles that are completely or partially shaded |

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | Insurance agencies; Insurance consultancy; Insurance consultation; Insurance information | | |
| **International Class(es):** | 036 - Primary Class | **U.S Class(es):** | 100, 101, 102 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Apr. 11, 2011 | **Use in Commerce:** | Apr. 11, 2011 |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No |
| **Filed No Basis:** | No | **Currently No Basis:** | No |

## Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | USHEALTH Advisors, LLC |
| **Owner Address:** | 300 Burnett St #200<br>Fort Worth, TEXAS UNITED STATES 76102 |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY |
| **State or Country Where Organized:** | TEXAS |

## Attorney/Correspondence Information

**Attorney of Record**

| | |
|---|---|
| **Attorney Name:** | Wesley Anderson |
| **Docket Number:** | 23845-9041 |
| **Attorney Primary Email Address:** | wesley.anderson@uhg.com |
| **Attorney Email Authorized:** | Yes |

**Correspondent**

| | |
|---|---|
| **Correspondent Name/Address:** | Wesley Anderson<br>UnitedHealth Group Incorporated<br>9900 Bren Road East<br>Legal Intake<br>Minnetonka, MINNESOTA United States 55343 |
| **Phone:** | 952-936-6938 |
| **Correspondent e-mail:** | wesley.anderson@uhg.com tmatlanta@seyfarth.com abby.remley@uhg.com trademarks@uhg.com |
| **Correspondent e-mail Authorized:** | Yes |

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Nov. 29, 2023 | TEAS SECTION 8 & 15 RECEIVED | |
| Aug. 14, 2023 | COURTESY REMINDER - SEC. 8 (6-YR) E-MAILED | |
| Apr. 04, 2023 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Apr. 04, 2023 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |

| | |
|---|---|
| Apr. 04, 2023 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED |
| Apr. 17, 2020 | NOTICE OF SUIT |
| Dec. 27, 2019 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED |
| Dec. 27, 2019 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED |
| Nov. 06, 2018 | NOTICE OF SUIT |
| Aug. 14, 2018 | REGISTERED-PRINCIPAL REGISTER |
| May 29, 2018 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED |
| May 29, 2018 | PUBLISHED FOR OPPOSITION |
| May 08, 2018 | TEAS CHANGE OF CORRESPONDENCE RECEIVED |
| May 09, 2018 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED |
| Apr. 19, 2018 | WITHDRAWN FROM PUB - SENIOR ATTORNEY REQUEST |
| Apr. 11, 2018 | APPROVED FOR PUB - PRINCIPAL REGISTER |
| Apr. 11, 2018 | EXAMINER'S AMENDMENT ENTERED |
| Apr. 11, 2018 | NOTIFICATION OF EXAMINERS AMENDMENT E-MAILED |
| Apr. 11, 2018 | EXAMINERS AMENDMENT E-MAILED |
| Apr. 11, 2018 | EXAMINERS AMENDMENT -WRITTEN |
| Apr. 05, 2018 | PREVIOUS ALLOWANCE COUNT WITHDRAWN |
| Mar. 27, 2018 | WITHDRAWN FROM PUB - OG REVIEW QUERY |
| Mar. 09, 2018 | APPROVED FOR PUB - PRINCIPAL REGISTER |
| Mar. 09, 2018 | EXAMINER'S AMENDMENT ENTERED |
| Mar. 09, 2018 | NOTIFICATION OF EXAMINERS AMENDMENT E-MAILED |
| Mar. 09, 2018 | EXAMINERS AMENDMENT E-MAILED |
| Mar. 09, 2018 | EXAMINERS AMENDMENT -WRITTEN |
| Mar. 08, 2018 | TEAS/EMAIL CORRESPONDENCE ENTERED |
| Mar. 07, 2018 | CORRESPONDENCE RECEIVED IN LAW OFFICE |
| Mar. 07, 2018 | TEAS RESPONSE TO OFFICE ACTION RECEIVED |
| Sep. 07, 2017 | NOTIFICATION OF NON-FINAL ACTION E-MAILED |
| Sep. 07, 2017 | NON-FINAL ACTION E-MAILED |
| Sep. 07, 2017 | NON-FINAL ACTION WRITTEN |

| | |
|---|---|
| Aug. 31, 2017 | ASSIGNED TO EXAMINER |
| Jun. 22, 2017 | NOTICE OF DESIGN SEARCH CODE E-MAILED |
| Jun. 21, 2017 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED |
| Jun. 17, 2017 | NEW APPLICATION ENTERED |

## TM Staff and Location Information

**TM Staff Information - None**

**File Location**

| | | | |
|---|---|---|---|
| **Current Location:** | PUBLICATION AND ISSUE SECTION | **Date in Location:** | Aug. 14, 2018 |

## Assignment Abstract Of Title Information - Click to Load

## Proceedings - Click to Load

# EXHIBIT D

**For assistance with TSDR**, email teas@uspto.gov and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

**TSDR Currently Experiencing Intermittent Outages**

The Trademark Status and Document Retrieval (TSDR) system is currently experiencing intermittent outages internally and externally. During this time you may be unable to view documents or check the status of applications and registrations. Once this technical issue is resolved, this message will be removed. We apologize for any inconvenience this causes.

STATUS | DOCUMENTS | MAINTENANCE | Back to Search | Print

| | | | |
|---|---|---|---|
| **Generated on:** | This page was generated by TSDR on 2024-01-16 15:34:09 EST | | |
| **Mark:** | | | |
| **US Serial Number:** | 87488885 | **Application Filing Date:** | Jun. 14, 2017 |
| **US Registration Number:** | 5370076 | **Registration Date:** | Jan. 02, 2018 |
| **Filed as TEAS Plus:** | Yes | **Currently TEAS Plus:** | Yes |
| **Register:** | Principal | | |
| **Mark Type:** | Service Mark | | |
| **TM5 Common Status Descriptor:** | LIVE/REGISTRATION/Issued and Active<br>The trademark application has been registered with the Office. | | |
| **Status:** | Registered. The registration date is used to determine when post-registration maintenance documents are due. | | |
| **Status Date:** | Jan. 02, 2018 | | |
| **Publication Date:** | Oct. 17, 2017 | | |

## Mark Information

Collapse All

| | |
|---|---|
| **Mark Literal Elements:** | None |
| **Standard Character Claim:** | No |
| **Mark Drawing Type:** | 2 - AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S) /NUMBER(S) |
| **Description of Mark:** | The mark consists of circular design in form of phoenix. |
| **Color(s) Claimed:** | Color is not claimed as a feature of the mark. |
| **Design Search Code(s):** | 01.15.15 - Fire (flames), emanating from objects, words or numbers<br>04.05.05 - Phoenix<br>26.01.03 - Circles, incomplete (more than semi-circles); Incomplete circles (more than semi-circles) |

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | Insurance agencies; Insurance consultancy; Insurance consultation; Insurance information | | |
| **International Class(es):** | 036 - Primary Class | **U.S Class(es):** | 100, 101, 102 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Apr. 07, 2010 | **Use in Commerce:** | Apr. 07, 2010 |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44D:** | No |
| **Filed 44E:** | No | **Currently 44E:** | No |
| **Filed 66A:** | No | **Currently 66A:** | No |
| **Filed No Basis:** | No | **Currently No Basis:** | No |

## Current Owner(s) Information

| | | | |
|---|---|---|---|
| **Owner Name:** | USHEALTH Advisors, LLC | | |
| **Owner Address:** | 300 Burnett St #200<br>Fort Worth, TEXAS UNITED STATES 76102 | | |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY | **State or Country Where Organized:** | TEXAS |

## Attorney/Correspondence Information

**Attorney of Record**

| | | | |
|---|---|---|---|
| **Attorney Name:** | Wesley Anderson | **Docket Number:** | 23845-9041 |
| **Attorney Primary Email Address:** | wesley.anderson@uhg.com | **Attorney Email Authorized:** | Yes |

**Correspondent**

| | | | |
|---|---|---|---|
| **Correspondent Name/Address:** | Wesley Anderson<br>UnitedHealth Group Inc.<br>9900 Bren Road East<br>Legal Intake<br>Minnetonka, MINNESOTA United States 55343 | | |
| **Phone:** | 952-936-6938 | | |
| **Correspondent e-mail:** | wesley.anderson@uhg.com tmatlanta@seyfarth.com abby.remley@uhg.com trademarks@uhg.com | **Correspondent e-mail Authorized:** | Yes |

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Nov. 29, 2023 | TEAS SECTION 8 & 15 RECEIVED | |
| Apr. 04, 2023 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Apr. 04, 2023 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED | |
| Apr. 04, 2023 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED | |

| | |
|---|---|
| Jan. 02, 2023 | COURTESY REMINDER - SEC. 8 (6-YR) E-MAILED |
| Apr. 17, 2020 | NOTICE OF SUIT |
| Dec. 27, 2019 | ATTORNEY/DOM.REP.REVOKED AND/OR APPOINTED |
| Dec. 27, 2019 | TEAS REVOKE/APP/CHANGE ADDR OF ATTY/DOM REP RECEIVED |
| Nov. 06, 2018 | NOTICE OF SUIT |
| May 08, 2018 | TEAS CHANGE OF CORRESPONDENCE RECEIVED |
| Jan. 02, 2018 | REGISTERED-PRINCIPAL REGISTER |
| Oct. 17, 2017 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED |
| Oct. 17, 2017 | PUBLISHED FOR OPPOSITION |
| Sep. 27, 2017 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED |
| Sep. 07, 2017 | APPROVED FOR PUB - PRINCIPAL REGISTER |
| Aug. 31, 2017 | ASSIGNED TO EXAMINER |
| Jun. 22, 2017 | NOTICE OF DESIGN SEARCH CODE E-MAILED |
| Jun. 21, 2017 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED |
| Jun. 17, 2017 | NEW APPLICATION ENTERED |

## TM Staff and Location Information

**TM Staff Information - None**

**File Location**

| | | | |
|---|---|---|---|
| **Current Location:** | PUBLICATION AND ISSUE SECTION | **Date in Location:** | Jan. 02, 2018 |

## Assignment Abstract Of Title Information - Click to Load

## Proceedings - Click to Load

# EXHIBIT E

FREEDOM LIFE®
INSURANCE COMPANY OF AMERICA
300 Burnett Street, Suite 200, Fort Worth, Texas 76102
800-387-9027

March 3, 2023 L16

JOSHUA CACHO
164 ESTELLA RD
LAKE MARY, FL 32746-3612

RE: Application #: 52Y640113F
Applicant: JOSHUA CACHO

Dear Sir/Madam:

We regret that you have decided to withdraw your application, and wanted to thank you for your interest in obtaining coverage with our company.

We hope you will consider us again for your insurance needs. If you have any questions or would like to apply again, please feel free to contact us.

Sincerely,

Underwriting Department

NBWTHNR
USHA1216

FREEDOM LIFE®
INSURANCE COMPANY OF AMERICA
300 Burnett Street, Suite 200, Fort Worth, Texas 76102
800-387-9027

March 3, 2023 L16

JOSHUA CACHO
164 ESTELLA RD
LAKE MARY, FL 32746-3612

RE: Application #: 52Y640113L
Applicant: JOSHUA CACHO

Dear Sir/Madam:

We regret that you have decided to withdraw your application, and wanted to thank you for your interest in obtaining coverage with our company.

We hope you will consider us again for your insurance needs. If you have any questions or would like to apply again, please feel free to contact us.

Sincerely,

Underwriting Department

NBWTHNR
USHA1216

To: [JENNIFER.MASER@USHAdvisors.com]

From: [no-reply@ushealthgroup.com]

CC:

Bcc:

Subject: CC of: Important information about your application for insurance coverage.

Content:

USHEALTH GROUP A UnitedHealthcare Company | Insurance underwritten by Freedom Life Insurance Company of America

## We Have a Few Documents for You to Review



JOSHUA CACHO,

Thank you for choosing Freedom Life Insurance Company of America, a USHEALTH Group® Company.

Your application has been received and is being processed. For your convenience, we have provided links to your application and informational insurance brochures for the products you selected with your Agent.

## Document(s) for Review

Please review the following digital document(s) at your earliest opportunity.

- Application ID# 2309903 for JOSHUA CACHO
- PremierAdvantage Fixed Indemnity
- Secure Dental

We believe an informed customer is our best customer. With this in mind, we want you to know about an important "next step"

in our underwriting process. **You will receive a brief telephone call** from the Freedom Life Insurance Company of America **to verify the accuracy of the information** provided in your application.

**A confirmation of your verification call appointment has been sent to you in a separate email.**

Please allow yourself a reasonable amount of time to complete this important verification call. The verification call generally takes 30 minutes to complete.

On behalf of your Agent and the employees of the insurance companies of USHEALTH Group, we are committed to providing you with reliable coverage and world-class service.

Sincerely,

Freedom Life Insurance Company of America
300 Burnett Street, Suite 200
Fort Worth, Texas 76102
800-387-9027

Freedom Life Insurance Company of America, a USHEALTH Group® Company
300 Burnett Street, Suite 200, Fort Worth, Texas 76102

Unsubscribe - Unsubscribe Preferences

Attachments: No attachments

| | |
|---|---|
| To: | JOSHUA CACHO [JCACHO1848@GMAIL.COM] |
| From: | [no-reply@ushealthgroup.com] |
| CC: | [JENNIFER.MASER@USHAdvisors.com], [CustomerBrochureEmails@ushealthgroup.com] |
| Bcc: | |
| Subject: | Important information about your application for insurance coverage. |
| Content: | |

USHEALTH® GROUP A UnitedHealthcare Company | Insurance underwritten by Freedom Life Insurance Company of America

## We Have a Few Documents for You to Review



JOSHUA CACHO,

Thank you for choosing Freedom Life Insurance Company of America, a USHEALTH Group® Company.

Your application has been received and is being processed. For your convenience, we have provided links to your application and informational insurance brochures for the products you selected with your Agent.

## Document(s) for Review

Please review the following digital document(s) at your earliest opportunity.

- Application ID# 2309903 for JOSHUA CACHO
- PremierAdvantage Fixed Indemnity
- Secure Dental

USHA000361

We believe an informed customer is our best customer. With

this in mind, we want you to know about an important "next step" in our underwriting process. **You will receive a brief telephone call** from the Freedom Life Insurance Company of America **to verify the accuracy of the information** provided in your application.

**A confirmation of your verification call appointment has been sent to you in a separate email.**

Please allow yourself a reasonable amount of time to complete this important verification call. The verification call generally takes 30 minutes to complete.

On behalf of your Agent and the employees of the insurance companies of USHEALTH Group, we are committed to providing you with reliable coverage and world-class service.

Sincerely,

Freedom Life Insurance Company of America
300 Burnett Street, Suite 200
Fort Worth, Texas 76102
800-387-9027

Freedom Life Insurance Company of America, a USHEALTH Group® Company
300 Burnett Street, Suite 200, Fort Worth, Texas 76102

Unsubscribe - Unsubscribe Preferences

Attachments: No attachments

To: [CustomerBrochureEmails@ushealthgroup.com]
From: [no-reply@ushealthgroup.com]
CC:
Bcc:
Subject: CC of: Important information about your application for insurance coverage.
Content:

USHEALTH® GROUP
A UnitedHealthcare Company

Insurance underwritten by
Freedom Life Insurance Company of America

## We Have a Few Documents for You to Review



JOSHUA CACHO,

Thank you for choosing Freedom Life Insurance Company of America, a USHEALTH Group® Company.

Your application has been received and is being processed. For your convenience, we have provided links to your application and informational insurance brochures for the products you selected with your Agent.

## Document(s) for Review

Please review the following digital document(s) at your earliest opportunity.

- Application ID# 2309903 for JOSHUA CACHO
- PremierAdvantage Fixed Indemnity
- Secure Dental



We believe an informed customer is our best customer. With this in mind, we want you to know about an important "next step"

in our underwriting process. **You will receive a brief telephone call** from the Freedom Life Insurance Company of America **to verify the accuracy of the information** provided in your application.

**A confirmation of your verification call appointment has been sent to you in a separate email.**

Please allow yourself a reasonable amount of time to complete this important verification call. The verification call generally takes 30 minutes to complete.

On behalf of your Agent and the employees of the insurance companies of USHEALTH Group, we are committed to providing you with reliable coverage and world-class service.

Sincerely,

Freedom Life Insurance Company of America
300 Burnett Street, Suite 200
Fort Worth, Texas 76102
800-387-9027

Freedom Life Insurance Company of America, a USHEALTH Group® Company
300 Burnett Street, Suite 200, Fort Worth, Texas 76102

Unsubscribe - Unsubscribe Preferences

Attachments: No attachments

# EXHIBIT F

Spectrum LTE 10:18 PM 16%

New iMessage Cancel

To: +1 (561) 827-0261

iMessage
Tue, Feb 28 at 3:30 PM

Hey Joshua. It's Jennifer with US Health

USHEALTH Verification... U

Tue, Feb 28 at 6:05 PM

Sorry, I didn't have a chance to remind you, but the underwriter should be attempting to contact you for your verification call

Thu, Mar 2 at 8:53 AM

Good morning Joshua. Is there a time that we could speak today to continue our conversation from yesterday?

Thu, Mar 2 at 11:11 AM

iMessage

Cash

# EXHIBIT G

Spectrum LTE 6:15 PM 16%

19

+1 (561) 827-0261

Thu, Mar 2 at 11:11 AM

Please cancel everything. I don't want to be charged. Please don't contact me again about this. Thank You.

Was there some sort of misunderstanding? Hopefully it wasn't something I dropped the ball on.

nope nothing you did.

I do have an alternative option that doesn't look into medical records if we don't wanna bother with this one, I completely understand the frustration

Miss please stop messaging me About this

And please make sure your company or anyone associated does not contact me anymore

iMessage

Cash