# EXHIBIT F

FILED

2023 AUG -7 PM 1:10

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
ORLANDO, FL

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| **JOSHUA CACHO,** a Florida resident,<br><br>**Plaintiff,**<br><br>v.<br><br>**HONEST TAX, LLC**, a Nevada Limited Liability Company,<br><br>**Defendant.** | § § § § § § § § § § § § § § | 6:23-CV-1501-WWB-RMN |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

**1.** The Plaintiff is JOSHUA CACHO ("Plaintiff") a natural person, resident of the Middle District of Florida, and was present in Florida for all calls, in this case in Seminole County, Florida.

**2.** Defendant HONEST TAX, LLC ("HONEST") is a Limited Liability Company organized and existing under the laws of Nevada and can be served via registered agent Paracorp Incorporated at 318 N Carson St #208, Carson City, NV, 89701, United States.

### JURISDICTION AND VENUE

**3.** Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

## PERSONAL JURISDICTION

4. This Court has general personal jurisdiction over the Defendant because they have repeatedly placed calls to Florida residents, and derived revenue from Florida residents, and they sell goods and services to Florida residents, including the Plaintiff.

5. This Court has supplemental subject matter jurisdiction over Plaintiff's claims arising under Florida Statutes § 501.059 and § 501.601 because the claims arise from the same nucleus of operative fact, i.e., Defendants' telemarketing interactive prerecorded robotic message calls to Plaintiff and adds little complexity to the case.

## VENUE

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the automated robocalls and sale of goods and services directed at Florida residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.

7. This Court has venue over Defendant HONEST because the automated robocalls at issue were sent by or on behalf of the above-named Defendant to Plaintiff, a Florida resident.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

8. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency

purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13. The TCPA provides a private cause of action to persons who receive calls in violation of 227(c) or a regulation promulgated there under. 47 U.S.C. § 227(c)(5).

14. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16. The FCC requires "prior express written consent" for all autodialed or prerecorded

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

**17.** *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391. 12397 ¶ 13 (1995).

**18.** The FCC confirmed this principle in 2013. when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

**19.** Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster. Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

**20.** The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential umber generator; and (B) to dial such numbers. *Id.* at § 227(a)(1)

**21.** As to what type of dialing equipment constitutes an ATDS, the TCPA vests to the Federal Communication Commission ("FCC") the responsibility to promulgate regulations implementing the TCPA's requirements. *Id.* at § 227(a)(1).

**22.** Over the last nineteen years, the FCC has repeatedly recognized that a predictive dialer is an ATDS that is subject to regulation by the TCPA. In its 2003 Order, the FCC also defined a "predictive dialer" holding.

[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call.[1]

**23.** In 2008, the FCC affirmed "that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[2]

**24.** A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FLORIDA STATUTES § 501.059

**25.** Florida Statutes § 501.059 makes it a violation to "make or knowingly allow a telephone sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

**26.** A "telephone sales call" is defined as a "telephone call, text message, voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(j).

**27.** "Prior express written consent" means an agreement in writing that: Fla. Stat. § 501.0059(g).

1. Bears the signature of the called party;
2. Clearly authorizes the person making or allowing the placement of a telephonic sales calls by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephone sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;
3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and
4. Includes a clear and conspicuous disclosure informing the called party that:
   a. By executing the agreement, the called party authorizes the person making or

allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or playing of a recorded message when a connection is completed to a number called; and

b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such agreement as a condition of purchasing any property, goods, or services.

**28.** A person aggrieved by a violation of this section may bring an action to recover actual damages or $500, whichever is greater. Fla. Stat. § 501.059(10)(a)(2).

**29.** If the court finds that the Defendant's willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a). Fla. Stat. § 501.059(10)(a)(2)(b).

**FLORIDA TELEMARKETING ACT**

**30.** A commercial telephone seller or salesperson making a commercial telephone solicitation call may not use technology that deliberately displays a different caller identification number than the number the call is originating from to conceal the true identity of the caller. Fla. Stat. § 501.616(7)(b).

**31.** A commercial telephone seller or salesperson may not transmit more than three commercial telephone solicitation phone calls from any number to a person over a 24-hour period on the same subject matter or issue, regardless of the phone number used to make the call. Fla. Stat. § 501.616(6)(b).

**32.** In addition to any other penalties or remedies provided under law, a person who is injured

by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or punitive damages, including costs, court costs, and attorney's fees. No provision of this part shall be construed to limit any right or remedy provided under law. Fla. Stat. § 501.625.

## FACTUAL ALLEGATIONS

**33.** Plaintiff's personal cell phone ending in 9650 has been registered on the National Do-Not-Call Registry for more than thirty-one (31) days prior to the first automated robocall received from Defendant HONEST.

**34.** Plaintiff personally registered the cell phone at issue in this case on the National-Do-Not-Call Registry on August 05, 2021.

**35.** Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

**36.** Defendant HONEST operates as a Tax Relief company.

**37.** Defendant is aware of the requirements of the TCPA and the National Do Not Call Registry, as they were sued multiple times before for this very matter, *See cases – Johnson-Grunver v. Honest Tax LLC, No. 3:2022cv00046 (E.D.AR., Feb. 25, 2022), Crews v. Honest Tax LLC et al No. 2:2022cv02120 (D.AZ., Dec. 15, 2022)*, however, continue to willfully ignore these requirements as it benefits them financially.

**38.** Defendant HONEST called Plaintiff a total of twenty (20) times. Thirteen (13) calls were unauthorized direct sales calls, and seven (7) calls were made using a pre-recorded message.

**39.** **Calls #1, DNC Request #1,** *See Table A.* On August 11, 2022, at 2:50 PM Plaintiff received an automated call from 205-846-2021 stating **"This is a notification call from the**

**"Tax Group" Do you owe 4 to 5 thousand dollars in back taxes?...".**

**40.** Plaintiff answered with "hello" and after going through the automated message he was connected to a live representative by the name of "Jay from Tax Group", Plaintiff immediately told him he was in the hospital and to not call back.

**41.** **Call #2, DNC Request #2,** See Table A. On August 16, 2022, at 5:48 PM Plaintiff received a call from (573) 266-9894. Plaintiff answered the phone with "hello" and was greeted by an interactive robot stating: **"This is a notification call from the "Tax Group"...".** *See Paragraph 40.*

**42.** Plaintiff engaged the automated message out of frustration and for the sole purpose of identifying the intrusive calls. Eventually, Plaintiff was connected to Darrel from "Tax Group".

**43.** Darrel asked Plaintiff qualifying questions and transferred him to George Ortiz, his manager.

**44.** George asked Plaintiff more qualifying questions and quoted him a price to "eliminate" his taxes. George then sent Plaintiff a contract via his cell phone, *See Exhibit A.*

**45.** After reviewing the contract, Plaintiff stated he wasn't interested anymore, that's when Defendant's agent Jorge became belligerent with Plaintiff and cursed him out. Plaintiff told George to not call him again and hung up the phone.

**46.** DNC Request #2 was disregarded.

**47.** **Call #3, DNC Request #3,** *See Table A*, on August 17, 2022, at 12:07 PM, Plaintiff received a call from 725-210-5941. Plaintiff answered with "hello" and was greeted by "Darrel from Call #2, See paragraphs 42-44. Darrel informed Plaintiff that he was following up from the previous day.

**48.** Plaintiff told Darrel that his company was extremely unprofessional and to never call him

again, Darrel unleashed a bombardment of insults and slurs towards Plaintiff. Plaintiff disconnected the phone.

**49.** DNC Request #3 was disregarded.

**50.** **DNC Request #4**, *See Table A*, Plaintiff sent George a text message stating:

> **"I want to make it very clear that I do not want you or your company contacting me no more."** *See Exhibit A.*

**51.** **Calls #4-10**, *See Table A*, Plaintiff received seven (7) calls from Defendant HONEST, and each time Plaintiff heard who was calling Plaintiff hung up the phone.

**52.** DNC Request #3 was disregarded.

**53.** DNC Request #4 was disregarded.

**54.** **Call #11**, *See Table A*, on September 23, 2022, Plaintiff received a missed call, and a voicemail was left from "Luke from Honest Tax"

**55.** **Calls #12-13**, *See Table A*, Plaintiff received two (2) missed calls from Defendant HONEST.

**56.** **Call #14**, *See Table A*, on September 28, 2022, at 4:28 PM Plaintiff received a call from 725-216-7672. Plaintiff answered with "hello" and was greeted by "Noel from Tax Group". Noel said he was following up on a call Plaintiff had with Jorge from last month.

**57.** Plaintiff hung up the phone.

**58.** **Call #15**, *See Table A*, on November 16, 2022, at 4:16 PM Plaintiff received a call from 925-474-4288. Plaintiff answered with "hello" and was greeted by "Nathan from Tax Group" calling for "Joshua". Plaintiff hung up the phone.

**59.** **Call #16, DNC Request #5**, *See Table A*, on December 21, 2022, at 12:00 PM Plaintiff received a call from 838-339-9275. Plaintiff answered with "hello" and was greeted by an

automated message stating:

**"Hello, this is Ron from the National Tax Assistance Group.."**

**60.** Plaintiff engaged the robot so that he could speak with a live agent. Once he was connected to a live agent Plaintiff told him "Stop calling my phone!".

**61.** **Calls #17-19**, *See Table A*, Plaintiff received the same "Ron from National Tax Assistance Group" automated message as call #16. Paragraph 59.

**62.** Plaintiff disconnected the call both times before the robot could finish.

**63.** DNC Request #5 was disregarded.

**64.** **Call #20**, *See Table A*, on January 26, 2023, at 4:22 PM Plaintiff received a call from 832-632-3958. Plaintiff answered "hello" and was greeted by "Ron from National Tax Assistance Group" automated message.

**65.** Plaintiff engaged the robot out of frustration for the continued harassment of calls and for the sole purpose of identifying the responsible party. Plaintiff was eventually connected to "Stephen from the Tax Group".

**66.** Stephen asked Plaintiff qualifying questions and went over the program with Plaintiff.

**67.** Stephen sent Plaintiff a contract on January 26, 2023, via email which detailed Defendant HONEST as the responsible party for the calls. *See Exhibit B*.

**68.** Table A below displays the calls received from Defendant HONEST.

**Table A**

| NO. | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | Aug 11, 2022 | 2:50 PM | (205) 846-2021 | Automated message from "Tax Group" DNC Request #1 |
| 2 | Aug 16, 2022 | 5:48 PM | (573) 266-9894 | Automated messaged from "tax Group" received documents, DNC |

| NO. | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| | | | | Request #2 |
| 3 | Aug 17, 2022 | 12:07 PM | (725) 210-5941 | Direct follow up call from Darrel, cursing Plaintiff out, DNC Request #3 |
| | Aug 17, 2022 | 10:45 AM | (725) 210-5941 | Plaintiff sent George DNC Request #4 via text |
| 4 | Sep 08, 2022 | 1:02 PM | (725) 241-8568 | Direct solicitation from Honest Tax |
| 5 | Sep 08, 2022 | 7:45 PM | (725) 216-7985 | Direct solicitation from Honest Tax |
| 6 | Sep 08, 2022 | 7:46 PM | (725) 216-7985 | Direct solicitation from Honest Tax |
| 7 | Sep 09, 2022 | 12:33 PM | (725) 210-5941 | Direct solicitation from Honest Tax |
| 8 | Sep 09, 2022 | 12:35 PM | (725) 210-5941 | Direct solicitation from Honest Tax |
| 9 | Sep 14, 2022 | 5:59 PM | (725) 241-8568 | Direct solicitation from Honest Tax |
| 10 | Sep 22, 2022 | 7:49 PM | (725) 231-8249 | Direct solicitation from Honest Tax |
| 11 | Sep 23, 2022 | 3:20 PM | (725) 228-5033 | Voice mail from Luke from Honest tax |
| 12 | Sep 28, 2022 | 12:43 PM | (725) 216-7672 | Missed call from Honest Tax |
| 13 | Sep 28, 2022 | 2:58 PM | (725) 216-7672 | Missed call from Honest Tax |
| 14 | Sep 28, 2022 | 4:28 PM | (725) 216-7672 | Direct solicitation from Honest Tax |
| 15 | Nov 16, 2022 | 4:49 PM | (925) 474-4288 | Direct solicitation from Honest Tax |
| 16 | Dec 21, 2022 | 12:00 PM | (838) 339-9275 | interactive robotic message "Ron from National Tax Assistance Group" DNC Request #5 |
| 17 | Jan 25, 2023 | 12:50 PM | (832) 632-3955 | interactive robotic message "Ron from National Tax Assistance Group" |
| 18 | Jan 25, 2023 | 1:56 PM | (936) 504-7061 | interactive robotic message "Ron from National Tax Assistance |

| NO. | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| | | | | Group" |
| 19 | Jan 26, 2023 | 3:06 PM | (409) 900-5456 | interactive robotic message "Ron from National Tax Assistance Group" |
| 20 | Jan 26, 2023 | 4:22 PM | (832) 632-3958 | interactive robotic message "Ron from National Tax Assistance Group" received documents via email |

**69.** Plaintiff did not have an established business relationship with Defendant HONEST, nor did Plaintiff consent to the automated prerecorded robocall or direct solicitation calls sent to his cell Phone.

**70.** Plaintiff did not provide his phone number to Defendant HONEST at any point.

**71.** Plaintiff sent an internal do-not-call policy request to Defendant HONEST to email info@honesttax.com, on January 26, 2023, which is an email listed on their website honesttax.com. and sthompson@honesttax.com, which is the email Plaintiff received the contract from discussed in *Paragraph 67*, on January 26, 2023.

**72.** Despite these requests for their internal DNC policies, Defendant HONEST failed and/or refused to send Plaintiff a Do- Not-Call policy request.

**73.** Upon information and belief, Defendant HONEST did not have a written do-not-call policy while they were sending Plaintiff the calls.

**74.** Upon information and belief, Defendant HONEST did not train their employees who engaged in telemarketing on the existence and use of any do-not-call list.

**75.** Such conduct violates the TCPA and its implementing regulations, 47 CFR §

64.1200(d)(3) (requiring telemarketers to honor and record DNC requests when made).

76. Defendant knew or should have known that its conduct would violate the TCPA and its regulations because Defendant HONEST has been sued prior to Plaintiff's filing of this Complaint, and prior to all calls relevant in the Complaint.

77. Defendant knew or should have known the requirements for making TCPA & FTSA compliant telemarketing calls and thus knew or should have known that the automated prerecorded message, the multiple disregarded DNC requests, and many unauthorized direct sales calls complained of herein violated the TCPA & FTSA and both of their regulations.

78. No emergency necessitated these calls.

**<u>INJURY, HARM, DAMAGES, and ACTUAL DAMAGES</u>**

**<u>AS A RESULT OF THE CALLS</u>**

79. Defendant HONEST's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

80. Defendant HONEST's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

81. Defendant HONEST's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

82. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of Plaintiff's cell phone.

**<u>PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER</u>**

83. The calls were to Plaintiff's cellular phone number 713-804-9650 which is Plaintiff's

personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phones registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**CAUSES OF ACTION:**

**COUNT ONE:**

**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent**

**84.** Plaintiff re-alleges and re-adopts paragraphs 1 through 83 of the Complaint as if fully set forth herein.

**85.** Defendant HONEST and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least seven (7) times by placing non-emergency telemarketing automated prerecorded messaged calls to Plaintiff's cellular telephone number without prior express written consent.

**86.** Plaintiff was statutorily damaged at least seven (7) time under 47 U.S.C. § 227(b)(3)(B) by Defendant HONEST by the calls described above, in the amount of $500.00 per call.

**87.** Plaintiff was further statutorily damaged because Defendant HONEST willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and

every willful and/or knowing violation.

**88.** Plaintiff is also entitled to and does seek an injunction prohibiting Defendant HONEST and their employees, affiliates, and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing automated prerecorded messaged calls to any cellular telephone number without prior express written consent.

**COUNT TWO:**

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

**89.** Plaintiff re-alleges and re-adopts paragraphs 1 through 83 of the Complaint as if fully set forth herein.

**90.** Defendant HONEST called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

**91.** Plaintiff was statutorily damaged at least twenty (20) times under 47 U.S.C. § 227(c)(3)(F) by Defendant HONEST by the telemarketing automated prerecorded message calls and direct calls described above, in the amount of $500.00 per call.

**92.** Plaintiff was further statutorily damaged because Defendant HONEST willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

**93.** Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

**COUNT THREE:**

**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**

**94.** Plaintiff re-alleges and re-adopts paragraphs 1 through 83 of the Complaint as if fully set forth herein.

**95.** The foregoing acts and omissions of Defendant HONEST and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following.

a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2]

b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

**96.** Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

**97.** Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

**COUNT FOUR**

**(Violations of Florida Statutes § 501.059)**

**98.** Plaintiff re-alleges and re-adopts paragraphs 1 through 83 of the Complaint as if

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order)
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order)
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order).

fully set forth herein.

**99.** Defendant HONEST and/or their affiliates and authorized representatives called Plaintiff using automated means without Plaintiff's express written consent. Fla. Stat. § 501.059(8)(a).

**100.** Defendant HONEST did not have Plaintiff's prior express written consent when making the telephonic solicitation calls. Fla. Stat. § 501.059(1)(g).

**101.** Plaintiff is entitled to an award of at least $500 in damages for each such violation of Fla Stat § 501.059(8)a) pursuant to Fla Stat. § 501.059(10)(a)(2).

**102.** Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Fla. Stat. § 501.059(10)(a)(b)

**COUNT FIVE**

**(Violations of Florida TELEMARKETING ACT)**

**103.** Plaintiff re-alleges and re-adopts paragraphs 1 through 83 of this Complaint as if fully set forth herein.

**104.** Defendant HONEST called Plaintiff more than three times within a 24-hour period. Fla. Stat. 501.616(6)(b).

**105.** Defendant HONEST and/or their affiliates and authorized representatives called Plaintiff using automated dialing equipment that intentionally transmitted false caller identification information. Fla. Stat. 501.616(7)(b).

**106.** In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or penalties and/or punitive damages, including costs, court costs,

attorney's fees. No provision of this part shall be construed to limit any right or remedy provided under law. Fla. Stat. 501.625.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against Defendant HONEST as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violates the TCPA and Fla. Stat. 501.059 and Florida Telemarketing Act;

C. An award of $1500 per call in statutory damages arising from the TCPA 54 U.S.C§227(b) intentional violations jointly and severally against the corporations for 7 calls.

D. An award of $1500 per call in statutory damages arising from the TCPA 47 U.S.C §227(c) intentional violations jointly and severally against the corporations for 20 calls.

E. An award of $1500 per call in statutory damages arising from the TCPA 47 U.S.C § 227(c)(5) intentional violations jointly and severally against the corporations for 20 calls.

F. An award of $1,500 per call in statutory damages arising from Fla. Stat. § 501.059(1)(g) intentional violations, pursuant to Fla. Stat. § 501.059(10)(a)(b) for 20 calls.

G. An award of $50,000 in punitive damages arising from intentional violations

of Fla. Stat. 501.616(6)(b).

H. An award of $50,000 in punitive damages arising from intentional violations of Fla. Stat. 501.616(7)(b).

I. An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity.

J. Such further relief as the Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

~~Aug 01, 2023,~~ 08/07/2023 JC.

Respectfully submitted,

Josh Cacho

Joshua Cacho
Plaintiff, Pro Se
164 Estella Rd
Lake Mary, Florida
jcacho1848@gmail.com