**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JOSHUA CACHO,

Plaintiff,

v.

USHEALTH ADVISORS, LLC and
USHEALTH GROUP, INC.,

Defendants.

______________________________ /

Case No.**:** 6:23-cv-737-CEM-UAM

**DEFENDANTS' RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO DISMISS WITH PREJUDICE**

## PRELIMINARY STATEMENT

Plaintiff and his counsel have resorted to using extreme tactics in the desperate hopes of avoiding the ramifications of their sanctionable conduct. On the heels of his counsel's cursory motion to withdraw, Plaintiff filed a motion to dismiss the case with prejudice, *without any conditions*. Considering the ***three*** pending motions for sanctions (including for continuing non-compliance with Court orders and for filing a frivolous motion to compel arbitration and stay proceedings as an initial tactic to escape this Court's discovery and sanctions rulings), the determination of attorneys' fees regarding the already granted motion for sanctions, and Plaintiff's and his counsel's continuing non-compliance with Court orders and other sanctionable, vexatious, and frivolous conduct, they should not be allowed to simply dismiss the case with prejudice, without any conditions

and without the Court first resolving the pending motions for sanctions. That would allow them to avoid the consequences of the chaos they created, the repeated disregard of this Court's orders, and the significant attorneys' fees they caused Defendants to incur, all by design. A motion to dismiss, even with prejudice, is not a "get out of jail free card," scot-free.

That Plaintiff's obstructiveness, refusal to comply with discovery and Court orders, and overly-aggressive and frivolous tactics – all of which started two months ago, in December 2024, when he retained counsel – were intentional and designed to run up his and Defendants' fees cannot be disputed. One of Plaintiff's lawyers, Mr. Thomasson, casually commented, two weeks into the case, that the parties' "respective fees will exceed $120k in January alone and I know we both have other cases far more deserving of our time." Dkt. No. 112-2, PageID 2478. Around the same time, his colleague, Mr. Zermay, boasted online about employing such tactics:




Ex. A at 1.

In this case, that has included a complete failure to comply with discovery orders (producing only documents showing no search results in his e-mail and

suggesting he deleted all of his browsing history, and the very same interrogatory responses that the Court already ruled were incomplete), Plaintiff's bad faith refusal to appear for a longstanding, noticed deposition (that his lawyers used as a basis to obtain an extension of time in another lawsuit Plaintiff filed against Defendants because of the need to travel to Orlando for the deposition), and unilaterally noticing ten depositions to occur over the last nine days of the discovery period in California, Texas, Pennsylvania, Ft. Myers, and Orlando. *See generally* Dkt. Nos. 81-83, 100. Plaintiff's counsel even stated, during a meet and confer on January 13, 2025, that Plaintiff would be moving to disqualify Defendants' counsel and would be suing them personally in the Western District of Texas for fraud and breach of contract (on grounds that are totally false and frivolous relating to another lawsuit between Plaintiff and a different client). *See* Dkt. No. 89-12, PageID 1174-1185.

In his e-mail, Mr. Thomasson also stated "there are aspects of this case that are about to unfold that you may not see coming . . . ." Dkt. No. 112-2, PageID 2478. Defendants could not have expected such brazen disobedience and misconduct. Clearly, in a case with statutory damages of no more than $31,500, (after Defendants were successful in obtaining dismissal of two Florida statutory claims, including one that could have included an award of punitive damages), Plaintiff's counsel had a strategy of running up their fees for a fee award, and running up Defendants' fees to create leverage for settlement. Given the maximum exposure, what Defendants "saw coming" was for Plaintiff to produce the

documents and responses ordered by the Court, appear for his deposition, and maybe take a few depositions to be coordinated with the other side (as Defendants did to set Plaintiff's deposition).

Clearly, that was not Plaintiff's and his lawyers' strategy for this lawsuit, the second one filed by Plaintiff against Defendants, later joined by another one in the Western District of Texas. In that third case, Plaintiff and his lawyers sought an extension of thirty-five days to respond to a motion to dismiss an amended complaint because of their commitments in other cases, while they implemented a strategy of obstructing discovery of Plaintiff (court orders be damned) and maximizing offensive discovery and driving up Defendants' expenses. This strategy was plainly based on the belief that Plaintiff had a potential entitlement to an award of attorneys' fees under the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA"). His lawyers said so on the meet and confer of January 13, 2025. To their seeming surprise, Defendants' counsel quickly informed them they were mistaken, as the FTSA claim was dismissed months earlier. *See* Dkt. No. 52.

A string of filings and adverse Court rulings, including the imposition of sanctions, followed. Indeed, the number of entries on the docket have nearly doubled in the two months since Plaintiff retained counsel and adopted the strategy of refusing to engage in discovery and driving up fees through frivolous and vexatious conduct. Even now, while everyone on his side is looking for the exit doors, Plaintiff has failed to comply with discovery orders, and has even disregarded an order directing him to respond to yet another motion for sanctions,

this time for refusing to appear for Plaintiff's noticed deposition on baseless grounds just a few days before the deposition. In addition to all the discovery misconduct, Plaintiff further occupied the time and resources of the Court and Defendants by filing a frivolous motion to compel arbitration and stay proceedings, and then a meritless "emergency objection" to the District Judge to challenge the denial of the stay request, an objection Judge Mendoza quickly dispatched.

With that exit path blocked, Plaintiff seeks to escape his discovery obligations and the consequences of his repeated disobedience of discovery rulings and other misconduct by filing a cursory motion to dismiss with prejudice, without any conditions whatsoever to end this case that he filed. Given the egregious circumstances in this case, which were solely caused by Plaintiff's and his counsel's vexatious and frivolous conduct, the Court should not allow a dismissal without conditions. Instead, any dismissal should be conditioned on Plaintiff and his counsel being jointly and severally responsible and required to pay Defendants the attorneys' fees and costs related to this case that they incurred since December 11, 2025, when Plaintiff's counsel first appeared, and this case was never the same, but at a minimum payment of all sanction amounts determined by the Court, including the recent award against Plaintiff of $3,167.50.

## STATEMENT OF FACTS

Plaintiff brought this case *pro se* on April 21, 2023. *See* Dkt. No. 1. Plaintiff proceeded to litigate this case on a *pro se* basis for one year and eight months before retaining counsel. During such time, Plaintiff and Defendants engaged in

standard motion practice and discovery without any major problems or hiccups. Both parties were able to communicate with one another and conduct amicable telephonic meet and confers. Additionally, while proceeding *pro se*, after more than a month of back and forth correspondence on the subject, Defendants' counsel and Plaintiff coordinated the date and location for Plaintiff's deposition, which was always discussed and scheduled to be in-person in Orlando, Florida. Plaintiff agreed to the date of January 17, 2025 and that it would be conducted in Orlando, FL. *See* Dkt. No. 89-1, PageID 1117-1118. A notice of deposition followed. *See* Dkt. No. 89-2, PageID 1120-1121.

While Plaintiff was still proceeding *pro se*, and after one of those mentioned amicable meet and confers, USHA filed a Motion to Compel, ("First Motion to Compel") (Dkt. No. 60), asking the Court to compel Plaintiff to respond to ten of USHA's document requests and interrogatories, including about Plaintiff's extensive history of making demands and claims under the TCPA. Plaintiff never responded to USHA's Motion to Compel. As such, the Court granted the Motion to Compel, and Plaintiff was ordered to fully respond to the discovery requests on or before December 16, 2024. Dkt. No. 62 at 1. Plaintiff's counsel filed their appearance five days before that deadline.[1]

It quickly became apparent that Plaintiff did not hire attorneys to help him comply with the discovery order. On December 16, 2024, counsel for Plaintiff e-

[1] Plaintiff is currently represented by two attorneys. Mr. Zermay filed his Notice of Appearance on December 11, 2024, (Dkt. No. 63), and Mr. Thomasson filed an unopposed Motion to Appear Pro Hac Vice on December 15, 2024, (Dkt. No. 64).

mailed to advise that, rather than serve the documents and responses ordered by the Court, Plaintiff would be filing a motion for reconsideration "imminently." *See* Dkt. No. 78-1, PageID 915-916. In response, USHA filed a Motion for Sanctions ("First Motion for Sanctions").[2] Dkt. No. 69. On January 2, 2025, more than two weeks after stating the motion would be filed "imminently," Plaintiff finally filed what he titled a Motion for Relief from and Reconsideration of the Court's Discovery Order, ("Motion for Relief') (Dkt. No. 72).

Because Plaintiff refused to supplement his document production as he had agreed to, prior to losing the First Motion to Compel and hiring counsel, USHA filed a second Motion to Compel, ("Second Motion to Compel") (Dkt. No. 70). In his opposition, Plaintiff did not dispute that he agreed to supplement as described. *See* Dkt. No. 75.

While that was pending, Plaintiff unilaterally noticed ten depositions to occur throughout the country in the last nine days of discovery (and in contravention of several rules). *See generally* Dkt. Nos. 81-83; Dkt. No. 100 at 1 & n.1. That precipitated the need for motions for protective orders and a meet and confer that was conducted on January 13, 2025. *See generally* Dkt. Nos. 81-83. On that meet and confer, Plaintiff's counsel refused reasonable requests to

[2] USHA originally sought sanctions by filing a Motion to Compel and for Sanctions, (Dkt. No. 67), but that motion was denied without prejudice on the basis that the motion should be styled only as a motion for sanctions, and not as a motion to compel, (Dkt. No. 68).

withdraw those untimely and unilateral notices and subpoenas.[3] What's more, on that same meet and confer call, just four days before the Plaintiff's long-scheduled and agreed upon deposition date, Plaintiff's counsel emphatically stated that Plaintiff would not be appearing at the noticed deposition and that Plaintiff would be moving for a protective order. *See* Dkt. No. 89-12, PageID 1174-1185. Defendants' counsel had already spent a significant amount of time preparing for the deposition. Plaintiff's asserted grounds for refusing to appear were spurious, especially considering he had agreed to an in-person deposition in Orlando well in advance, his counsel never objected upon receipt of the deposition notice – to the contrary, he used the need to travel to Orlando for the deposition as a reason for a thirty-four day enlargement of time to respond to a motion to dismiss in another (*third*) lawsuit Plaintiff filed against Defendants, (*see* Dkt. No. 89-3, PageID 1124 at ¶ 6) – and there was no valid basis to claim confusion from an amended notice about whether the deposition was still to be conducted in-person in Orlando, (*see* Dkt. No. 89-9, Page ID 1163-1164; Dkt. No. 91). In the face of Plaintiff's improper, frivolous, and harassing notices, Defendants were forced to file three motions for protective orders preventing the depositions from taking place and barring subpoenas issued to third parties setting response and deposition dates, (Dkt. Nos. 81-83). On the other hand, Plaintiff filed his motion for a protective order at midnight on the day of the noticed deposition, January 17, 2025. *See* Dkt. No. 85.

[3] Having now had the benefit of all of the tactics employed since Plaintiff's counsel appeared, it is hard to believe that they were actually intending to prepare and travel across the country to conduct and attend all of those depositions.

That same day, the Court entered an order granting all three of Defendants' motions for protective order and denying Plaintiff's motion for protective order. *See* Dkt. No. 87. The Court also entered an order granting the First Motion for Sanctions, denying the Motion for Relief, and granting the Second Motion to Compel. *See* Dkt. No. 88. The Court ordered Plaintiff "to pay to USHEALTH Advisors, LLC the reasonable expenses and attorney's fees incurred by counsel in preparing and filing the motion to compel (Doc. 60) and both motions for sanctions. (Docs. 67, 79)." *Id.* at 5. Plaintiff was also ordered to fully respond to the six requests for production by January 27, 2025. *See id.* at 6.

In response to Plaintiff's refusal to attend his noticed deposition, especially considering the significant amount of attorney time (and thus money) spent in preparing for the deposition, Defendants filed another motion for sanctions ("Second Motion for Sanctions"). *See* Dkt. No. 89. In an endorsed order regarding the Second Motion for Sanctions, the Court directed Plaintiff to "respond as to why sanctions should not be imposed on or before the close of business on January 28, 2025." Dkt. No. 91. Plaintiff never respond as ordered and the Second Motion for Sanctions is still pending.

Instead of working on that Court-ordered response, complying with the Court's discovery orders, or providing alternative dates and times for an in-person deposition in Orlando, Plaintiff and his lawyers prepared and filed a "Motion to Stay Proceedings and Compel Arbitration and/or Plaintiff's Notice of Consent to Entry of Judgment as to Defendants' Affirmative Defense No. 27." *See* Dkt. No.

92. Plaintiff also filed a separate (additional) Time-Sensitive Motion to Stay, seeking a stay of all deadlines and of the status conference pending the outcome of the Motion to Compel Arbitration ("Motion to Stay"). Dkt. No. 93. Given the time-sensitive designation, Defendants began researching and drafting an opposition brief in response to the Motion to Stay.

Just a day later, the Court denied the Motion to Stay, and the portion of the Motion to Compel Arbitration seeking a stay of proceedings, largely because "it appears, at least on its face and without a chance yet to review a response from the defendants, that the motion may lack merit." *See* Dkt. No. 97. That same day, Plaintiff filed an "Emergency Rule 72(a) Objection to Denial of Motion to Stay (Dkt. Nos. 87, 88, 90, 91, & 97) and Motion to Stay. Dkt. No. 98. Before Defendants could file their brief, Judge Mendoza issued a seven-page decision rejecting each of Plaintiff's arguments as well as his

> allegations about the propriety of Defense counsel's motions for sanctions about emails from Defense counsel communicating their intentions of seeking further actions in light of Plaintiff's continued failure to comply with the Court's orders compelling discovery and in light of what Defendants perceive as a frivolous Motion to Compel Arbitration.

Dkt. No. 102 at 6 n.3.

The next day, January 31, 2025, with no possibility of a stay based on the dubious Motion to Compel Arbitration and after ignoring multiple emails from the undersigned explaining why the motion was baseless, asking that it be withdrawn, (*see* Dkt. No. 99-1, PageID 1396, 1399, 1405, 1406), and only after causing Defendants' to incur the time and expense in preparing their response to these

baseless and frivolous motions, Plaintiff withdrew the motion, (*See* Dkt. No. 105). Defendants' counsel had been working for nearly a week on its opposition, and its response was in the final stages. *See* Dkt. No. 108-8, PageID 1595-1725.

Due to the frivolous and baseless nature of the Motion to Compel Arbitration, Defendants drafted and filed a motion for sanctions ("Third Motion for Sanctions"). *See* Dkt. No. 108. Unlike Plaintiff's Motion to Compel Arbitration, which was copied nearly verbatim from a similar motion Defendants' counsel had filed in a separate and unrelated case, (*id.* at Exs. A & B), Defendants' counsel did their own research and drafting and had to do the work and expend the necessary time to do so. As of today, Plaintiff has yet to respond and the Third Motion for Sanctions is still pending.

Further, in response to Plaintiff and his counsel's continued noncompliance with this Court's discovery orders, specifically Dkt. Nos. 62 and 88, and only after multiple attempts to get them to comply, USHA filed yet another motion for sanctions ("Fourth Motion for Sanctions"). *See* Dkt. No. 109. As detailed in that motion, Plaintiff and his lawyers went out of their way to serve the discovery responses not by e-mail, but by the slowest possible method of "express" delivery from FedEx to arrive when counsel was expected to be in Ocala for a conference before the Court and, far from providing complete responses, he effectively produced nothing. As with the Third Motion for Sanctions, Plaintiff has yet to respond to the Fourth Motion for Sanctions and it is still pending.

Plaintiff and his counsel's most recent filings consist of a Motion to

Withdraw as Counsel for both of Plaintiff's lawyers, (Dkt. Nos. 103 & 104), and a Motion to Dismiss with Prejudice, (Dkt. No. 107).[4] Once again, Defendants are forced to respond to such motions. Otherwise, Defendants risk the case being dismissed after Plaintiff and his counsel forced Defendants to incur significant expenses, the vast majority within the two months Plaintiff's counsel participated, in a case where the maximum damages are $31,500.

## ARGUMENT

Federal Rule of Civil Procedure 41(a) governs a plaintiff's ability to dismiss an action voluntarily and with or without prejudice. The Rule states, in relevant part, that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). A district court enjoys broad discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2). *Arias v. Cameron*, 776 F.3d 1262, 1268 (11th Cir. 2015); *Pontenberg v. Boston Scientific Corp.,* 252 F.3d 1253, 1255 (11th Cir. 2001) (per

---

[4] Interestingly, at the same time that Plaintiffs' lawyers state to the Court they *must* withdraw because they can no longer continue to represent Plaintiff, ***they continue to represent Plaintiff***. Mr. Thomasson and Mr. Zermay have recently filed four federal court actions to enforce judgments Mr. Cacho obtained (in the combined amount of $375,234.74). *See Cacho v. RBM Insurance, Inc.*, No. 3:25-mc-00001-TJC-LLL (M.D. Fla.) (commenced January 14, 2025); *Cacho v. Amity One Debt Relief*, No. 8:25-mc-00003-UA (commenced January 15, 2025) (C.D. Cal.); *Cacho v. United Tax Defense LLC*, No: 8:25-mc-00004-UA (commenced January 15, 2025) (C.D. Cal.); *Cacho v. Live Transfers, Inc.*, No. 1:25-mc-00034-DEH (S.D.N.Y.) (commenced January 17, 2025). As the docket reports in those cases confirm, Plaintiff's counsel has not moved to withdraw in any of those cases. *See* Exs. B-E. To the contrary, they have made filings even *after* filing their Motion to Withdraw in this case, as recently as yesterday (at the same time they contend they are unable to communicate with or act on Plaintiff's behalf). *See* Exs. F-G; Ex. J. Apparently Plaintiff's counsel has decided that, like the lawsuit Plaintiff filed against Defendants in the Western District of Texas, those other cases do not require withdrawal, even though the same attorney-client relationship applies in all of them. Only this case, apparently, presented the "conflict" that required them to break away from Plaintiff.

curiam).

The purpose of Rule 41(a)(2) "is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *McCants v. Ford Motor Co., Inc.,* 781 F.2d 855, 856 (11th Cir. 1986). The court "must consider the crucial question of whether 'the defendant [would] lose any substantial right by the dismissal.'" *Arias*, 776 F.3d at 1268 (quoting *Pontenberg,* 252 F.3d at 1255). While the district court "should keep in mind the interests of the defendant, for Rule 41(a)(2) exists chiefly for protection of defendants," (*Fisher*, 950 F.2d at 1503), the court should also weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate. *Arias*, 776 F.3d at 1269 (citing *McCants,* 781 F.2d at 857).

While attorneys' fees are often imposed as a condition of a voluntary dismissal without prejudice, courts are authorized to impose such conditions even for dismissals with prejudice when faced with "exceptional circumstances" such as "vexatiousness or the case is of a kind in which attorney's fees otherwise might be ordered after termination on the merits." 9 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2366 (4th ed. 2024). *See also Carroll v. E One Inc*, 893 F.3d 139, 140 (3d Cir. 2018) ("[S]uch an award may be granted when exceptional circumstances exist."); *Andrews v. Am.'s Living Centers, LLC*, 827 F.3d 306, 311 (4th Cir. 2016) (holding a court may, in exercising its discretion under Rule 41, "award attorneys' fees where it makes a specific finding that the

plaintiff has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons'"). This case presents such exceptional circumstances.

Plaintiff lost two discovery motions that required him to produce documents and interrogatory responses that would have unmasked the extent of his business of making pre-suit demands under the TCPA and filing such lawsuits, including the compensation he has earned, and the logs of telephone calls and text messages that he maintains to later sue over. Plaintiff has either acknowledged having these documents and information, initially saying he would not be producing them regardless of the Court's orders based on some purported "irreparabl[e] harm [to] [Plaintiff] or certain absent third-parties until the Court can rule on his Objection," (Dkt. No. 93 at 2 n.1), or he falsely states there are none. *See* Dkt. No. 109 at 10-11. Even though his "Emergency Objection" was denied, Plaintiff ***still*** has not produced any of these documents or information.

Instead, with his frivolous arbitration and stay tactic having failed spectacularly, with sanctions having been awarded and only the amount remaining to be determined, with one *unopposed* motion for sanctions over Plaintiff's unilateral refusal to appear for deposition pending, knowing others were about to be filed for a frivolous, copy-and-paste Motion to Compel Arbitration and continued disobedience with discovery orders, and with the Court having made clear that Plaintiff would not be able to avoid his deposition,[5] Plaintiff suddenly decided to give up and moved to dismiss with prejudice (on the same day his

[5] *See* Dkt. No. 100 at 2 ("Certainly, Plaintiff will be required to sit for a deposition.").

lawyers claimed they had to withdraw due to some unexplained conflict that apparently had only recently materialized).[6] That flurry of activity all occurred in the last two months, and Plaintiff is trying to avoid the consequences of his and his lawyers' conduct by this latest tactic.

These circumstances are quite similar to those in *In re Asbestos Products Liability Litigation*, No. 09-MC-103, 2010 WL 2034636 (E.D. Pa. May 14, 2010). In that case, there were extensive proceedings and conferences before the court regarding discovery, and the court ultimately set forth a detailed protocol involving the use of an outside consultant to segregate potentially privileged documents pending the resolution of various motions. *See id.* at *2-3. As the court described,

> Defendant and Plaintiffs worked for over four months to develop a plan for document production that would go into effect once Plaintiffs' motion for remand and Motley Rice's motion to intervene and objection were finally decided. Once time came for document production to occur and the Court was to hold a telephone conference to resume discovery (09–MC–103, Doc. 98), Plaintiffs' counsel suddenly dismissed those cases involving Dr. Segarra's medical opinion, explaining that these individuals "no longer desired to prosecute[.]" (09–MC–103.) The timing of Plaintiffs' motion and the explanation provided convince us that Plaintiffs' counsel was motivated to avoid impending discovery obligations. As Justice Holmes has observed, "the character of every act depends upon the circumstances in which it is done." *Schenck v. U.S.*, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919). The circumstances in which this act was done—the sudden and unexplained dismissal, which effectively nullified the substantial efforts undertaken by the Defendant and the Court to accommodate the various interests potentially impacted by the Segarra Production Order—guide us to our conclusion that an

---

[6] Further casting doubt on the validity of the alleged conflict is the same lawyers' representation of Plaintiff in the third lawsuit Plaintiff filed against Defendants (in the Western District of Texas) and, even now, four recently-filed federal court actions seeking to enforce judgments in the combined amount of $375,234.74, with filings as recently as yesterday. *See* Exs. F-I.

assessment of costs is proper.

*Id.* at *10.

The court found that this conduct constituted "the 'exceptional circumstances' that permit the conditioning of a dismissal with prejudice upon the payment of attorneys' fees and expenses because "Plaintiff's counsel abused the judicial process and acted in bad faith." *Id.* at 9. Thus, the court conditioned dismissal with prejudice upon the assessment against the plaintiffs' counsel of "the attorneys' fees and costs associated with Defendant's participation in the development of the document segregation protocol that was to be used to facilitate discovery of Dr. Segarra's litigation screening materials." *Id.* at *10.

Similarly, in *Tesma v. Maddox-Joines, Inc.*, 254 F.R.D. 699, 702 (S.D. Fla. 2008), the court granted the motion for voluntary dismissal with prejudice but only on the condition that "Plaintiff shall bear the cost of Defendant's reasonable costs and attorney's fees incurred in the defense of this action." The court reasoned that "Defendant has been forced to litigate this case without reason," and "[i]n fairness to Defendant, . . . this action cannot be dismissed without some protection afforded to it." *Id.*

Here, too, Defendants have been forced to litigate this case without reason under Plaintiff's and his counsel's design and strategy of refusing to provide discovery, flouting discovery orders, unilaterally noticing ten depositions to occur in the last nine days of discovery, threatening personal lawsuits against Defendants' counsel, and vexatiously multiplying proceedings through the (at

best) reckless filing of frivolous motions to compel arbitration and stay proceedings. When Plaintiff's attempts to avoid adverse discovery failed, and Plaintiff would have to sit for a deposition in Orlando and produce the documents and information he hired lawyers to avoid, the lawyers filed a cursory (and quite dubious) motion to withdraw and then filed a motion to voluntarily dismiss Plaintiff's claims with prejudice. Plaintiff and his lawyers do not get to engage in such bad faith and vexatious conduct, intentionally causing Defendants to incur significant expenses without reason, taking up the Courts' time and resources, too, and get out scot-free, as if nothing had happened in just a two-month period, simply by writing the words "with prejudice" in the Rule 41(a) motion.

The purpose of Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions, and the Court should do that here. This case presents ample evidence of the exceptional circumstances that justify conditioning a dismissal with prejudice upon payment of attorneys' fees and costs. Defendants submit that the appropriate condition would be for Plaintiff and his attorneys to be jointly and severally liable for payment of the attorneys' fees and costs their vexatious conduct caused starting on December 11, 2024, when counsel first appeared in this case. *See* Dkt. No 116. For the twenty months before then, Defendants' counsel and Plaintiff *Pro Se* had no major incidents. Since then, however, Defendants have had to deal with vexatious, frivolous, and bad faith conduct that should not allowed to be washed away. As discussed at length above, virtually every filing in the last two

months by Defendants was in reaction to frivolous and sanctionable filings by Plaintiff and his counsel, unilaterally noticed depositions in the last nine days of discovery and across four states on opposite ends of the country, or complete and utter noncompliance with multiple discovery orders. For example, based on his counsel's filings (and presumably their advice), Plaintiff did not produce the documents he was ordered to produce following the First Motion to Compel. And even though Plaintiff had agreed to appear in Orlando, Florida for an in-person deposition, Plaintiff's counsel scotched that on spurious grounds that are the subject of an *unopposed* motion for sanctions. *See* Dkt. No. 89.

Similar to *Tesma,* during the last two months of this case, Defendants were forced to litigate against meritless actions and conduct on the part of Plaintiff and his counsel. 254 F.R.D. at 702. And, even worse than in *In re Asbestos Products*, Plaintiff's and his counsel's attempt to end this case is being done not only to avoid discovery obligations, but sanctions awards for the repeated instances of misconduct and bad faith and frivolous filings.

Because the circumstances of this case are exceptional, the Court is wholly justified in denying the motion to dismiss with prejudice unless Plaintiff and/or his counsel pay the attorneys' fees they caused Defendants to incur since December 11, 2024 arising from their (mis)conduct. The Court already granted USHA's First Motion for Sanctions and determined the amount of fees to be $3,167.50. *See* Dkt. Nos. 88 & 116. The Court, though, has yet to rule on the ***three*** other pending motions for sanctions brought under Fed. R. Civ. P. 26(g) and 37(d), 28 U.S.C. §

1927, and the inherent power of the Court, *one of which is unopposed*. *See* Dkt. Nos. 89, 108, 109. Therefore, considering the already awarded sanctions and the currently pending motions for sanctions, Defendants will suffer legal prejudice from the dismissal of this action without significant conditions applied. Plaintiff and his counsel forced Defendants to incur significant expenses within the last two months of this case and should be required to pay Defendants' reasonable costs and attorney's fees incurred in such defense.[7]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court condition the dismissal of this action on Plaintiff and/or his counsel's payment, on the basis of an obligation held jointly and severally, of the reasonable attorneys' fees and costs Defendants incurred due to Plaintiff and his counsel's engagement in sanctionable, vexatious, frivolous conduct since December 11, 2024, *i.e.*, within the last two months of this action, but at a minimum payment of all sanction amounts determined and to be determined by the Court, including the recent award against Plaintiff of $3,167.50. The Court should not allow Plaintiff and his counsel to slink away from the consequences of their actions by letting them

[7] That Defendants seek as a condition of dismissal with prejudice the imposition of attorneys' fees and costs that overlap with their pending motions for sanctions is not meant to suggest that the Court is foreclosed from awarding such expenses in the event of an unconditioned dismissal. "It is well established that a federal court may consider collateral issues after an action is no longer pending," including the imposition of sanctions, because that would not "signify a district court's assessment of the legal merits." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990). *See also*, *e.g.*, *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020) ("[A] district court may address a sanctions motion based on its inherent powers or § 1927 even if it lacks jurisdiction over the underlying case.").

dismiss their case without substantial conditions.

Dated: February 14, 2025

GREENSPOON MARDER LLP

*/s/ Roy Taub*
Jeffrey A. Backman (Bar No. 662501)
Roy Taub (Bar No. 116263)
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954-491-1120
Facsimile: 954-343-6958
jeffrey.backman@gmlaw.com
mary.torres@gmlaw.com
roy.taub@gmlaw.com
cheryl.cochran@gmlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have filed the foregoing with the Clerk of Court via CM/ECF on February 14, 2025. I further certify that any party that enters an appearance in this matter will receive a copy of this document via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notice of Electronic Filing.

*/s/ Roy Taub*
ROY TAUB